17 CV 01268 (MKB) (SJB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SAMUEL KELLNER,

Plaintiff,

-against-

THE CITY OF NEW YORK, and CHARLES J. HYNES, in his individual capacity,

Defendants.

# DEFENDANTS CITY OF NEW YORK AND CHARLES HYNES' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York and Charles Hynes*
*100 Church Street*
*New York, NY 10007*

*Of Counsel: Susan P. Scharfstein*
*Tel: (212) 356-2355*

## TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 2

A. Plaintiff's Allegations Concerning the Underlying Events ........ 2

B. Plaintiff's Monell Allegations ........ 3

C. Procedural Background and the Allegations of a Conspiracy ........ 4

ARGUMENT

POINT I

PLAINTIFFS CANNOT PURSUE A CLAIM AGAINST HYNES FOR MALICIOUS PROSECUTION ........ 6

POINT II

THE COURT SHOULD DISMISS PLAINTIFF'S ALLEGATIONS AS TO A CONSPIRACY ........ 13

POINT III

AT A BARE MINIMUM, HYNES IS ENTITLED TO THE BENEFIT OF QUALIFIED IMMUNITY TO SUIT ........ 17

POINT IV

PLAINTIFF HAS FAILED TO ALLEGE A MONELL CLAIM AGAINST THE CITY ........ 18

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Cases** **Pages**

Anderson v. Creighton,
483 U.S. 635 (1987)....17

Anilao v. Spota,
774 F. Supp. 2d 457 (E.D.N.Y. 2011)....9, 10

Arroyo-Horne v. City of New York,
07 CV 5213 (RJD), 2011 U.S. Dist. LEXIS 23904 (E.D.N.Y. Mar. 9, 2011)....20

Ashcroft v. Iqbal,
556 U.S. 662 (2009)....5, 6, 19, 20, 24

Baez v. Hennessy,
853 F.2d 73 (2d Cir. 1988)....21, 22

Bell Atlantic v. Twombly,
127 S. Ct. 1955 (2007)....5, 11, 24

Bellamy v. City of New York,
12 CV 1025 (AMD) (PK),
2017 U.S. Dist. LEXIS 75306 (E.D.N.Y. May 17, 2017)....21

Bermudez v. City of New York,
790 F.3d 368 (2d Cir. 2015)....7

Bernard v. County of Suffolk,
356 F.3d 495 (2d Cir. 2004)....10, 12

Bertuglia v. City of New York,
133 F. Supp. 3d 608 (S.D.N.Y. 2016)....11

Black v. Coughlin,
76 F.2d 72 (2d Cir. 1996)....7

Blessinger v. City of New York,
17 CV 47 (WHP), 2017 U.S. Dist. LEXIS 142397 (S.D.N.Y. Sept. 1, 2017)....8, 9, 23

Bordenkircher v. Hayes,
434 U.S. 357 (1978)....8

Bradley v. City of New York,
08 CV 1106 (NGG), 2009 U.S. Dist. LEXIS 51532 (E.D.N.Y. June 18, 2009)....20, 24

**Cases** **Pages**

Brewster v. Nassau County,
349 F. Supp. 2d 540 (E.D.N.Y. 2004) ....................................14

Broich v. Inc. Village of Southampton,
650 F. Supp. 2d 234 (E.D.N.Y. 2009) ....................................16

Buckley v. Fitzsimmons,
509 U.S. 259 (1993)....................................12, 17

Buell v. Brennan,
98 CV 1567 (ARR), 1990 U.S. Dist. LEXIS 23336 (E.D.N.Y. Aug. 6, 1998) ....................10

Burns v. Reed,
500 U.S. (1991)....................................10

Ciambriello v. County of Nassau,
292 F.3d 307 (2d Cir. 2002)....................................14

City of Canton v. Harris,
489 U.S. 378 (1989)....................................19

City of Los Angeles v. Heller,
475 U.S. 796 (1986)....................................23

City of St. Louis v. Praprotnik,
485 U.S. 112 (1985)....................................19

Colson v. New York Police Dep't,
13 CV 5394 (JG), 2014 U.S. Dist. LEXIS 179282 (E.D.N.Y. Dec. 15, 2014)....................10

Cuevas v. City of New York,
07 CV 4169 (LAP),
2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. Dec. 7, 2009) ....................................20, 24

Danielak v. City of New York,
02 CV 2349 (KAM), 2005 U.S. Dist. LEXIS 40901 (E.D.N.Y. Sept. 26, 2005)....................16

Demosthene v. City of New York,
14 CV 816 (SJ) (VMS),
2015 U.S. Dist. LEXIS 114902 (E.D.N.Y. June 26, 2015) ....................................16

Deronette v. City of New York,
05 CV 5275 (SJ), 2007 U.S. Dist. LEXIS 21766 (E.D.N.Y. Mar. 27, 2007)....................8

Doe v. Phillips,
81 F.3d 1204 (2d Cir. 1996)....................................10

**Cases** **Pages**

Dorman v. Higgins,
821 F.2d 133 (2d Cir. 1987)....................16

Dory v. Ryan,
25 F.3d 81 (2d Cir. 1994)....................12

Eisenberg v. District Attorney of County of King,
93 CV 1647 (ILG), 1996 U.S. Dist. LEXIS 22469 (E.D.N.Y. July 17, 1996)....................21

Gallop v. Cheney,
642 F.3d 364 (2d Cir. 2011)....................14

Giraldo v. Kessler,
694 F.3d 161 (2d Cir. 2012)....................11, 12

Griffin v. Breckenridge,
403 U.S. 88 (1971)....................14

Gu v. Municipal Gov.,
No. 96-2857, 1997 U.S. App. LEXIS 12330 (RKW) (FXA) (JAC),
(2d Cir. 1997)....................10

Harlow v. Fitzgerald,
457 U.S. 800 (1992)....................17

Hartman v. Moore,
547 U.S. 250 (2006)....................12

Hill v. City of New York,
45 F.3d 653 (2d Cir. 1995)....................9, 10

Imbler v. Pachtman,
424 U.S. 409 (1976)....................9

Jenkins v. City of New York,
478 F.3d 76 (2d. Cir. 2007)....................23

Jones v. City of New York,
988 F. Supp. 2d 305 (E.D.N.Y. 2013)....................21

K.D. v. White Plains School Dist.,
921 F. Supp. 2d 197 (S.D.N.Y. 2013)....................15

Kinzer v. Jackson,
316 F.3d 139 (2d Cir. 2003)....................7

**Cases** **Pages**

Linda R.S. v. Richard D.,
410 U.S. 614 (1973)....8

Little v. City of New York,
487 F. Supp. 2d 426 (S.D.N.Y. 2007)....16

Mahon v. Namani,
15 CV 2032 (CM) (GWG),
2016 U.S. Dist. LEXIS 81184 (S.D.N.Y. June 17, 2016)....23

Malley v. Briggs,
475 U.S. 335 (1986)....17

McClellan v. Smith,
439 F.3d 137 (2d Cir. 2006)....7

Miller v. County of Nassau,
467 F. Supp. 2d 308 (E.D.N.Y. 2006)....21

Mitchell v. Forsyth,
472 U.S. 511 (1985)....8

Monell v. Department of Social Servs.,
436 U.S. 658 (1978)....2, 19

Morpugo v. Inc. Village of Sag Harbor,
697 F. Supp. 2d 309 (E.D.N.Y. 2010)....14

Norton v. Town of Islip,
97 F. Supp. 3d 241 (E.D.N.Y. 2015),
aff'd, 678 Fed. App'x 17 (2d Cir. 2017)....12

Oklahoma City v. Tuttle,
471 U.S. 808 (1985)....19

Padavan v. United States,
82 F.3d 23 (2d Cir. 1996)....6

Pangburn v. Culbertson,
200 f.3d 65 (2d Cir. 1999)....14

Parkinson v. Cozzolino,
238 F.3d 145 (2d Cir. 2001)....12

Pearson v. Callahan,
555 U.S. 223 (2009)....17

| Cases | Pages |
| --- | --- |
| Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) | 19 |
| Perfetto v. City of New York, 14 CV 02682 (ILG) (RML), 2015 U.S. Dist. LEXIS 16658 (E.D.N.Y. Feb. 11, 2015) | 10, 11, 12 |
| Pinaud v. County of Suffolk, 52 F.3d 1139 (2d Cir. 1995) | 16, 21 |
| Ramashwar v. Espinoza, 05 CV 2021 (AJP), 2006 U.S. Dist. LEXIS 721 (S.D.N.Y. Jan. 6, 2006) | 16 |
| Romer v. Morgenthau, 119 F. Supp. 2d 346 (S.D.N.Y. 2000) | 14 |
| Rothstein v. Carriere, 373 F.3d 275 (2d Cir. 2004) | 6, 7 |
| Saucier v. Katz, 533 U.S. 194 (2001) | 17 |
| Schnitter v. City of Rochester, 556 Fed. App'x 5 (2d Cir. 2014) | 22 |
| Shmueli v. City of New York, 424 F.3d 231 (2d Cir. 2005) | 8, 9, 10, 12 |
| Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127 (2d Cir. 2013) | 16 |
| Swinton v. City of New York, 08 CV 3278 (RJD) (RML), 2011 U.S. Dist. LEXIS 32384 (E.D.N.Y. Mar. 28, 2011) | 20 |
| Thomas v. Roach, 165 F.3d 137 (2d Cir. 1999) | 14 |
| Van de Kamp v. Goldstein, 555 U.S. 335 (2009) | 9, 10, 18, 21 |
| Vippolis v. Vill. of Haverstraw, 768 F.2d 40 (2d Cir. 1985) | 19 |
| Warney v. Monroe County, 587 F.3d 113 (2d Cir. 2009) | 10, 18 |

**Cases** **Pages**

Williams v. Smith,
781 F.2d 319 (2d Cir. 1986)....................7

Wray v. City of N.Y.,
340 F. Supp. 2d 291 (E.D.N.Y. 2004),
reversed on other grounds, 490 F.3d 189 (2d Cir. 2007)....................22

Zahrey v. Coffey,
221 F.3d 342 (2d Cir. 2000)....................17, 18

**Statutes**

42 U.S.C. §1983.................... *passim*

42 U.S.C. § 1985(3)....................14

Fed. R. Civ. P. 12(b)(6)....................1, 14, 15, 20, 24

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

SAMUEL KELLNER,

Plaintiff,

-against-

17 CV 01268 (MKB) (SJB)

THE CITY OF NEW YORK, and CHARLES J. HYNES, in his individual capacity,

Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS CITY OF NEW YORK AND CHARLES HYNES' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants City of New York and Charles Hynes submit this memorandum of law in support of their motion to dismiss the Amended Complaint ("AC") in its entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This action, brought pursuant to 42 U.S.C. §1983, arises out of the plaintiff's alleged prosecution, beginning in 2011, on charges of conspiracy, grand larceny by extortion, perjury, and criminal solicitation. Plaintiff alleges that he was falsely accused of making repeated monetary demands, between March 2008 and March 2010 – through five unindicted co-conspirators – in exchange for which he would, inter alia, cause the dismissal of pending criminal charges against a sexual predator, Baruch Lebovits, by influencing the testimony of several victims, including plaintiff's son. Plaintiff alleges further that Lebovits received favorable treatment in his own ongoing criminal prosecution on child molestation charges because of his family's connections to powerful and wealthy interests in the Orthodox

community in Brooklyn, which had access to Hynes. According to plaintiff, he was prosecuted in order to him from encouraging sexual assault victims from testifying truthfully against Lebovits and to undermine Lebovits' conviction. (See AC at ¶¶ 1, 55).

In this ensuing lawsuit, plaintiff asserts two federal claims for relief against the defendants: a § 1983 claim for malicious prosecution against Hynes, who is sued in his individual capacity, and a claim for municipal liability pursuant to Monell v. Department of Social Servs., 436 U.S. 658 (1978), against the City. (See generally AC). The malicious prosecution claim is barred, among other things, because, in his role as the Kings County District Attorney, Hynes is entitled to absolute prosecutorial immunity from suit. Moreover, the claim for municipal liability against the City, which appears to be predicated on Hynes' role as policymaker for the City, is fatally flawed, for the reason that Hynes, in his prosecutorial capacity as district attorney, acted, if anything, for the State and not for the City. As more fully discussed below, each of these claims – and this entire case – should be dismissed with prejudice at this time.

## STATEMENT OF FACTS

### A. Plaintiffs' Allegations Concerning the Underlying Events

Plaintiff alleges that Hynes, who is sued in his individual capacity, attempted and conspired with others to influence the prosecution of a serial predator and pedophile, Baruch Lebovits, a prominent member of Brooklyn's Hasidic Jewish community. (AC at ¶¶ 1, 8). According to plaintiff, Lebovits, who had molested plaintiff's son and other children, was extended favors by the district attorney's office in exchange for continued political and financial support. (See AC at ¶ 25). Towards this end, Hynes surreptitiously dismissed criminal charges against Lebovits, tolerated witness tampering and intimidation, conspired to overturn a conviction of Lebovits, encouraged persons to influence witnesses to change their stories,

counseled the Lebovits family on witness statements to gather to be used as evidence, coordinated with Lebovits and his family to cause victims to recant, and orchestrated pay-offs of one or more of Lebovits' victims. (AC at ¶¶ 22, 24, 31, 32, 34, 35-39, 51). Hynes also purposely excluded from the handling of plaintiff's criminal matter assistant district attorneys from the Sex Crimes Bureau, who were knowledgeable about the Lebovits matter and who would have known of inquiries that would have cast doubt on whether plaintiff should be prosecuted, (AC at ¶ 33), and "denounced" plaintiff and his son in the media. (AC at ¶ 44).

Plaintiff alleges that he was subjected to criminal charges based on false accusations that he had made monetary demands in exchange for a promise to cause the dismissal of charges against Lebovits through his ability to control his son and other child sexual assault victims of Lebovits. (AC at ¶¶ 40-43). Plaintiff alleges that he was arrested on April 12, 2011, and prosecuted based on the perjured testimony of three grand jury witnesses, until Hynes lost the 2013 election, after which the new administration reviewed the case against plaintiff. (AC at ¶¶ 40, 44, 52). As a result, on March 7, 2014, all charges against plaintiff were dismissed. (AC at ¶ 53).

**B. Plaintiff's Monell Allegations**

Plaintiff alleges that the violations of plaintiff's constitutional rights result from policies, customs, or practices of the City in the management and administration of the Brooklyn District Attorney's office under Hynes. (AC at ¶ 62). These policies, customs, or practices took place with respect to investigation activities with regard to plaintiff, deliberate indifference to witness tampering and intimidation, and in the opportunity afforded to a convicted pedophile to undermine his conviction. (AC at ¶ 62). Hynes possessed final policy-making authority with respect to these activities. (AC at ¶ 62). According to plaintiff, Hynes had final decision-making

authority in the area of policy that encompassed his conduct, and that the City is therefore responsible for his actions. (See AC at ¶ 63).

The purported policy claim is grounded in plaintiff's allegations that there existed "policies, customs or practices [of the City] in the management and administration of the Brooklyn District Attorney's office under Hynes, including with respect to the investigative activity pursued and procedures followed in the case of [p]laintiff, in its deliberate indifference to witness tampering and intimidation, and in the opportunity it afforded to a convicted pedophile to undermine his conviction, respectively. In each of these regards, Hynes possessed final policy-making authority." (AC at ¶ 62).

**C. Procedural Background and the Allegations of a Conspiracy**

Plaintiff instituted this action on March 6, 2017, a single day short of three years to the day that the criminal charges against him were dismissed. (See Docket Entry ("DE"), # 1; AC at ¶ 53). On July 17, 2017, defendants filed their application for a pre-motion conference as to all claims asserted in the original complaint. (DE # 12). On August 29, 2017, defendants moved to stay discovery and adjourn the initial scheduling and discovery planning conference sine die, on the premise that the proposed motion would, if successful, be fully dispositive of the case. (DE # 13). On August 30, 2017, the motion to stay was granted by the then-assigned magistrate judge.

On August 31, 2017, the Court held a pre-motion conference. A lengthy discussion was held concerning the legal merits of plaintiff's claims. The Court recognized that that the claims asserted by plaintiff were factually attenuated, particularly with regard to plaintiff's allegations with respect to Hynes' personal involvement. Plaintiff was afforded an opportunity to amend his complaint. The Court also directed the parties to meet and confer to ascertain whether they could resolve informally their differences to avoid motion practice. In a

vain attempt to salvage this lawsuit, plaintiff added allegations concerning a purported § 1983 conspiracy via the AC. Although the parties endeavored in good faith to avoid motion practice, both before and after the amendment was filed on October 2, 2017, it became clear that they would be unable to do so.

The primary amendment to the original complaint was to add the allegations of a purported conspiracy via paragraphs 55 to 57 of the AC. In those paragraphs, plaintiff alleges, in essence, that Hynes entered into an agreement with members and associates of the Lebovits family and the district attorney's office to work together to undermine Lebovits' conviction by creating evidence against plaintiff to foster his prosecution. (See AC at ¶ 55). He alleges that Hynes took part in directing an "investigation" which fabricated allegations and evidence of extortion and payments to witnesses by plaintiff to give false testimony against Lebovits and took steps to ensure that a witness was forced into making false accusations against plaintiff on behalf of Lebovits. (AC at ¶ 55). Plaintiff alleges that Hynes implemented a plan to do so through his direct participation, via his "lieutenant," Michael Vecchione, and through meetings with co-conspirators in the Brooklyn district attorney's office. (AC at ¶ 56). By manufacturing fabricated evidence in this manner, Hynes and his co-conspirators are alleged to have deliberately brought about plaintiff's prosecution. (AC at ¶ 23).

**ARGUMENT**

To survive a motion to dismiss for failure to state a claim, a plaintiff must satisfy the "facial plausibility" pleading standard set forth in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), by pleading facts that give rise to a plausible inference that the defendant may be liable. A pleading must be supported by allegations that are not merely conclusory, but put forth underlying facts so as to make a claim plausible on its face. Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1974 (2007). That standard is not satisfied here. A motion to dismiss should be

granted where, as here, it is beyond doubt that a plaintiff can prove no set of facts that would entitle him to relief. See Padavan v. United States, 82 F.3d 23, 26 (2d Cir. 1996). As plaintiffs have failed to plead facts that give rise to a plausible inference that each of the defendants violated one or more of plaintiff's rights, Iqbal, 556 U.S. at 678, the AC is legally insufficient and should be dismissed at this stage.

Without conceding the truth of plaintiff's factual contentions, defendants, rather, assume them to be true solely for the purposes of this motion to dismiss. From that perspective, it is clear that all of plaintiff's claims lack legal merit.

## POINT I

## PLAINTIFFS CANNOT PURSUE A CLAIM AGAINST HYNES FOR MALICIOUS PROSECUTION

Plaintiff's claim for malicious prosecution against Hynes is barred, because Hynes is entitled to absolute prosecutorial immunity where, as here, the facts as alleged support that, if anything, he acted in a prosecutorial role. This assumes that plaintiff states a claim for malicious prosecution and the facts are sufficient to establish that Hynes had personal involvement in the alleged wrongs to which plaintiff claims that he was subjected. As demonstrated below, both propositions are doubtful.

First, the law imposes a heavy burden on a malicious prosecution plaintiff. Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004). To succeed on a malicious prosecution claim pursuant to §1983, a plaintiff must establish all of the essential elements of a malicious prosecution claim under federal law: that the defendant commenced or continued a criminal proceeding against plaintiff; that the proceeding was terminated in the plaintiff's favor; an absence of probable cause for the proceeding; actual malice as a motivation for defendant's

actions; and a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights. See, e.g., Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003).

The existence of probable cause is a complete defense to a claim for malicious prosecution. Savino, 331 F.3d 63, 72 (2d Cir. 2003). A grand jury indictment creates a presumption of probable cause that can be overcome only by evidence that the indictment was the product of fraud, perjury, the suppression of evidence by police officers, or other police conduct undertaken in bad faith. Bermudez v. City of New York, 790 F.3d 368, 377 (2d Cir. 2015). Plaintiff bears the burden of rebutting the presumption of probable cause. McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006). Mere conjecture and surmise are insufficient to rebut the presumption afforded by a grand jury indictment. Savino, 331 F.3d at 73. The burden of rebutting the presumption of probable cause requires the plaintiff to establish not only what occurred in the grand jury, but also to further establish that the circumstances warrant a finding of misconduct sufficient to erode the premise that the grand jury acts in a judicial role. Rothstein, 373 F.3d at 284. Plaintiff alleges that he was indicted by a grand jury, after three witnesses committed perjury. (See AC at ¶¶ 40- 41). There are no facts alleged from which it can plausibly be inferred that Hynes presented evidence in the grand jury, misled the grand jury, or otherwise acted in bad faith. He has therefore failed to allege facts to rebut the presumption of probable cause created by the indictment.

Further, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. See, e.g., Black v. Coughlin, 76 F.2d 72, 74 (2d Cir. 1996). This Circuit has long held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Conspicuously absent here are substantial facts to show that Hynes was

directly or personally involved in initiating or continuing a wrongful prosecution against plaintiff.[1] Indeed, the malicious prosecution claim against Hynes is based on few and sparse allegations that attribute wrongful conduct to Hynes. Plaintiff alleges only that Hynes purposely excluded from the handling of plaintiff's criminal matter assistant district attorneys from the Sex Crimes Bureau, who were knowledgeable about the Lebovits matter and would have known of inquiries that would have cast doubt on whether plaintiff should be prosecuted, (AC at ¶ 33), that Hynes encouraged a convicted felon to continue in his attempts to influence a witness to implicate plaintiff in a bribery scheme, which efforts proved unsuccessful, (AC at ¶¶ 35-39), and that Hynes "denounced" plaintiff and his son in the media. (AC at ¶ 44).

As if all of this were not enough, plaintiff cannot, in any event, pursue a malicious prosecution claim against Hynes, because, in his capacity as the district attorney, Hynes is entitled to absolute immunity. Absolute immunity protects prosecutors not only from liability, but also from the lawsuit itself, such that the defense should be addressed at an early stage of the lawsuit. Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005). The district courts therefore are to assess this defense at the earliest possible stage, before discovery commences, because this defense defeats a suit at the outset. Deronette v. City of New York, 05 CV 5275 (SJ), 2007 U.S. Dist. LEXIS 21766, at *12 (E.D.N.Y. Mar. 27, 2007) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (citation omitted)); Blessinger v. City of New York, 17 CV 47 (WHP), 2017 U.S. Dist. LEXIS 142397 at *6, 7 (S.D.N.Y. Sept. 1, 2017). Accordingly, the prosecutorial

---

[1] Significantly, plaintiff appears to take the view throughout the AC that the district attorney's office's actions with regard to the Lebovits prosecution somehow constituted a violation of plaintiff's rights. A prosecutor's decision as to whether to bring charges and, what charges to bring, however, rests in the prosecutor's discretion. See, e.g., Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). Related to this, plaintiff has no entitlement to have another person criminally prosecuted. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).

immunity defense should be resolved on the present pleading, particularly where, as here, plaintiff has had an opportunity to amend to cure any defects.

A state prosecutor who acts within the scope of his responsibilities vis-a-vis a criminal prosecution is immune from a § 1983 civil suit for damages. Shmueli, 424 F.3d at 238 (citing Imbler v. Pachtman, 424 U.S. 409, 410, 431 (1976)). The rationale for this immunity is that the public trust in the prosecutor's office would be eroded if his decision-making were constrained by the specter of his own potential liability. Shmueli, 424 F.3d at 237 (citing Imbler, 424 U.S. at 424-25); Blessinger, 2017 U.S. Dist. LEXIS 142397 at *7. Furthermore, in civil suits against prosecutors, complex, close, fair-trial questions often would require a virtual retrial of the criminal offense in a new forum, and the resolution of technical legal issues by a lay jury. Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009). A prosecutor inevitably makes decisions that could engender colorable claims of constitutional deprivation, the defense of which, years after they were made, could impose intolerable burdens on a prosecutor who is responsible for innumerable indictments and trials. Imbler, 424 U.S. at 425-26. These considerations, among others, counsel against the lesser protection of qualified immunity and in favor of absolute immunity for prosecutors. Van de Kamp, 555 U.S. 342.

The courts apply a "functional approach" in assessing whether the defendant was acting in a prosecutorial role. Hill v. City of New York, 45 F.3d 653, 663 (2d Cir. 1995). Prosecutors are entitled to absolute immunity for conduct that is "intimately associated with the judicial phase of the criminal process." Anilao v. Spota, 774 F. Supp. 2d 457, 476 (E.D.N.Y. 2011) (citations omitted). A prosecutor is entitled to the benefit of this defense when he acts in his role as an advocate, such as when he presents evidence to attempt to secure an indictment.

See, e.g., Anilao, 774 F. Supp. 2d at 475. Based on plaintiff's allegations, it is clear that Hynes acted, if anything, as an advocate and absolute immunity would apply here.

The breadth and scope of immunity is broad and extends to a wide array of allegations. See, e.g., Gu v. Municipal Gov., No. 96-2857, 1997 U.S. App. LEXIS 12330 (RKW) (FXA) (JAC), at *7 (2d Cir. 1997) (subornation of perjury); Hill, 45 F.3d at 662 (suppression of evidence required to be disclosed under Brady); Van de Kamp, 555 U.S. at 341 (knowingly introducing false or misleading trial exhibits; Burns v. Reed, 500 U.S. at 485, 490-91 (1991) (eliciting false testimony at a pre-trial hearing and knowingly using false testimony before a grand jury); Colson v. New York Police Dep't, 13 CV 5394 (JG), 2014 U.S. Dist. LEXIS 179282, at *15 (E.D.N.Y. Dec. 15, 2014) (threatening plaintiff's witnesses and bribing others to testify falsely); Shmueli, 421 F.3d at 236-38 (commencing a prosecution to carry out a personal vendetta); Bernard v. County of Suffolk, 356 F.3d 495, 507 (2d Cir. 2004) (commencing a prosecution to neutralize a political opponent); Perfetto v. City of New York, 14 CV 02682 (ILG) (RML), 2015 U.S. Dist. LEXIS 16658, *8 (E.D.N.Y. Feb. 11, 2015) (same); Warney v. Monroe County, 587 F.3d 113, 123-25 (2d Cir. 2009) (withholding post-conviction, exculpatory DNA test results).

Plaintiff's allegations as to Hynes fall squarely within the scope of this immunity. Determining whether to press forward with a prosecution is a classic prosecutorial function. See, e.g., Buell v. Brennan, 98 CV 1567 (ARR), 1990 U.S. Dist. LEXIS 23336, at *8 (E.D.N.Y. Aug. 6, 1998) (citing Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir. 1996) (prosecutor has absolute immunity for a claim for damages for commencing a prosecution)). Plaintiff vainly attempts to circumvent the law by inserting conclusory language in the AC to the effect that Hynes acted in an investigative rather than a prosecutorial capacity. The mere averment that Hynes acted in an

investigatory capacity is insufficient to pursue a claim. Plaintiff has provided no more than "labels and conclusions," plainly not enough to raise a right to relief above the speculative level. Twombly, 550 U.S. at 555.

Moreover, even assuming that some of the acts attributed to Hynes could be properly characterized as "investigatory," this is not, in itself, enough to avoid prosecutorial immunity. As at least one court has recognized, effective prosecutors necessarily engage in some acts that could be reasonably characterized as investigative at all phases of a criminal proceeding. Giraldo v. Kessler, 694 F.3d 161, 166 (2d Cir. 2012). Accordingly, investigative acts that are "reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution" are similarly shielded by immunity. Giraldo, 694 F.3d at 166; see also Bertuglia v. City of New York, 133 F. Supp. 3d 608, 645 (S.D.N.Y. 2016) (collecting evidence and preparing to present it to a grand jury are protected by absolute immunity – even where the charges are never presented).[2]

Perfetto is notably similar to this action. In Perfetto, plaintiff sued Hynes, among others, alleging they selectively prosecuted him for the unauthorized practice of law in order to prevent him from being re-elected to his position of leadership in the Democratic party.. Perfetto held that Hynes was entitled to prosecutorial immunity in the face of allegations that he, along with others, orchestrated the plaintiff's arrest and prosecution to embarrass him and prevent his re-election to a leadership position in his party. 2015 U.S. Dist. LEXIS 16658, at *9. The court found that such allegations are assertions of improper motive, which are irrelevant to the absolute immunity analysis. Perfetto, 2015 U.S. Dist. LEXIS 16658, at *8. Not only did the

[2] Making statements to the press, as Hynes is alleged to have done, should not be analyzed under the rubric of a malicious prosecution claim, as such activities would not affect any of the requisite elements of such a claim. Any claim arising from alleged false statements to the media may well also be time barred.

court dismiss the claims dismissed, but the court also took note that the lawsuit was frivolous. Perfetto, 2015 U.S. Dist. LEXIS 16658, at *9.

Where a prosecutor acts as advocate, a defendant's motivation in performing such advocacy functions as deciding to prosecute is irrelevant to the absolute immunity analysis. Shmueli, 424 F.3d at 237. Accordingly, a prosecutor's motivation and judgment in pursuing a prosecution and the manner in which he does so are both irrelevant as factors. Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (citing Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994)). So long as the acts complained of were within a prosecutor's role, this immunity affords protection in the face even allegations of malicious or corrupt intention. Giraldo, 694 F.3d at 166. Absolute immunity protects a prosecutor from liability for virtually all acts associated with his function as an advocate, irrespective of the prosecutor's motives. Dory, 25 F.3d at 83; Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001).

Notwithstanding plaintiff's claim that his prosecution was linked to the prosecution of Baruch Lebovits, a retaliatory or selective prosecution claim cannot be brought against a prosecutor. See, e.g., Hartman v. Moore, 547 U.S. 250, 262 (2006); see also Norton v. Town of Islip, 97 F. Supp. 3d 241, 254-56 (E.D.N.Y. 2015), aff'd, 678 Fed. App'x 17, 20 (2d Cir. 2017) (prosecutors at Town Attorneys' Office immune from First Amendment Retaliation claims); Bernard, 356 F.3d at 505 (irrespective of defendants' political motives, absolute immunity shielded them from suit pursuant to § 1983 for their alleged selective prosecution of plaintiffs).

Hynes should not be tethered to this lawsuit where, as here, he is entitled to absolute immunity from suit. That plaintiff's case may have been assigned to the Rackets Bureau rather than the Sex Crimes Bureau, that witness testimony was evaluated or marshaled,

that evidence was presented to a grand jury, that other evidence or leads may not have been pursued, that preparatory sessions took place between prosecutors and witnesses, or that a prosecution was commenced with political motives, are all activities that fall within the ambit of prosecutorial judgment and discretion. Even assuming that absolute immunity did not dispose of this claim, the claim for malicious prosecution is lacking. Based on plaintiff's allegations, Hynes' personal involvement is tenuous. Moreover, plaintiff alleges that he was indicted by a grand jury, which creates a rebuttable presumption of probable cause. Yet plaintiff has offered no facts from which it can be plausibly inferred that Hynes lied to or otherwise misled a grand jury. The Court should therefore dismiss the malicious prosecution claim and enter judgment in Hynes' favor.

## POINT II

## THE COURT SHOULD DISMISS PLAINTIFF'S ALLEGATIONS AS TO A CONSPIRACY

Although not expressly set forth as a distinct claim, plaintiff appears to also allege a conspiracy by Hynes and others to bring about plaintiff's prosecution by creating false evidence and influencing witnesses. Plaintiff's factual allegations to the effect that Hynes was a party to a conspiracy are sparse as well as conclusory. Most importantly, they attribute no specific conduct to Hynes to evince any agreement or participation in an effort to violate one or more of plaintiff's rights. They are insufficient to sustain a claim under the heightened pleading standard that applies to conspiracy claims. Also, as plaintiff has failed to allege an underlying violation of a right, he cannot state a derivative claim for conspiracy so as to survive this motion to dismiss.

To sustain a claim for conspiracy pursuant to § 1983, a plaintiff must allege facts that show: (1) an agreement between two or more state actors or between a state actor

and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act in furtherance of that goal causing damages. Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002); Pangburn v. Culbertson, 200 f.3d 65, 72 (2d Cir. 1999).[3] To withstand a motion to dismiss a conspiracy claim, a plaintiff must provide a factual basis to support a meeting of the minds, such that the defendant entered into an agreement to achieve the unlawful end, and some details of the time and place and alleged effects of the conspiracy. Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000). The complaint also must adequately allege a violation of a right that defendants conspired to violate. Romer, 119 F. Supp. 2d at 363.

Claims alleging conspiracy to violate civil rights are held to a heightened pleading standard. Morpugo v. Inc. Village of Sag Harbor, 697 F. Supp. 2d 309, 331 (E.D.N.Y. 2010); Brewster v. Nassau County, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004). A complaint, such as plaintiff's here, that contains only conclusory, vague, or general allegations of conspiracy cannot withstand a motion to dismiss. See, e.g., Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (affirming dismissal of conspiracy claim where plaintiff offered no facts to corroborate her allegation of an agreement among the conspirators); Ciambrello, 292 F.3d at 325 (affirming dismissal of § 1983 conspiracy claim under Rule 12(b)(6) because of conclusory allegations, where plaintiff had not provided any details of time and place, and had failed to specify in detail the factual basis of the claim). Courts have thus dismissed

[3] Although plaintiff does not indicate in the AC that he so much as attempts to allege a conspiracy pursuant to 42 U.S.C. § 1985(3), any such claim would necessarily fail. That is, plaintiff does not allege facts to support that he is a member of a protected class and that Hynes had a class-based invidiously discriminatory motive as is required to sustain such a claim. See, e.g., Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); see also Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999) (recognizing that, to state a valid claim under § 1985(3), a plaintiff must allege a conspiracy for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws, an overt act in furtherance of the conspiracy, and an injury to plaintiff's person or property or deprivation of a right or privilege of a citizen of the United States).

conspiracy claims where the plaintiffs have failed to set forth in their pleadings specific facts to indicate a meeting of the minds of the alleged conspirators. See, e.g., K.D. v. White Plains School Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013) (granting Rule 12(b)(6) motion to dismiss §1983 conspiracy claim where complaint failed to set forth specific facts to reflect a meeting of the minds, let alone an agreement to violate plaintiffs' rights).

Similarly, here, plaintiff has alleged no facts to support a meeting of the minds with any specifics as to time and place, an overt act in furtherance thereof, or a willful purpose to violate a constitutional right. The narrative offered in paragraphs 55 through 57 of the AC states, in unadorned fashion, that Hynes "directly participated in the conspiracy," and met with [ADA] Vecchione and co-conspirators on numerous occasions in the Brooklyn district attorney's office, after initial meetings on April 14, 2010, and April 27, 2010, to "plot" its "course." (AC at ¶ 56). Notably, elsewhere in the AC, it is alleged that the April 27, 2010 meeting concerned Baruch Lebovits and not plaintiff. (See AC at ¶ 28). The sole allegations with regard to the April 14, 2010 meeting, was that a man named Moshe Friedman visited the Brooklyn district attorney's office and "demanded action." (AC at ¶ 25). There is no indication that Hynes attended any meeting on either of those dates, let alone one in which there was an agreement to unlawfully prosecute plaintiff. (See AC at ¶¶ 25, 28-30).

Plaintiff's other allegations are mere generalities. They amount to no more than conjecture and surmise. Plaintiff alleges that Hynes "personally ensured" that his co-conspirators were able to force a witness into making false accusations against plaintiff. (AC at ¶ 56). He asserts that Hynes was not only a participant in the conspiracy, but was also the "sine qua non for its success." (AC at ¶ 56). Any details that would render plausible Hynes' participation in a conspiracy are conspicuously absent from the AC. If anything, it would

appear that Hynes lacked personal involvement in the alleged conspiracy, which is a prerequisite to a damages award pursuant to §1983. See, e.g., Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013).

Nor has plaintiff alleged that Hynes violated a federally-protected right, another essential prerequisite to a claim. As a claim for a conspiracy is derivative, see, e.g., Ramashwar v. Espinoza, 05 CV 2021 (AJP), 2006 U.S. Dist. LEXIS 721, *3, 18 (S.D.N.Y. Jan. 6, 2006), plaintiff must successfully allege an underlying violation of a right to survive a motion to dismiss. The theory espoused in the present case is that the purpose of the conspiracy was to maliciously prosecute plaintiff. (AC at ¶ 1 ("[t]he cornerstone of this conspiracy was the malicious prosecution of [p]laintiff.")). As explained above, however, plaintiff cannot sustain any such claim. Any derivative conspiracy claim therefore necessarily fails. Additionally, to the extent that plaintiff claims that Hynes conspired with other members of the district attorney's office, the settled intra-corporate conspiracy doctrine bars the claim, because members of a government agency cannot be held liable for conspiring with one another.[4] Nor can plaintiff circumvent the doctrine of absolute prosecutorial immunity where the acts complained of are associated with the prosecutor's function as an advocate. See, e.g., Pinaud v. County of Suffolk, 52 F.3d 1139, 1148-49 (2d Cir. 1995); Dorman v. Higgins, 821 F.2d 133, 139 (2d Cir. 1987).

In sum, the AC is devoid of any allegations as to when or where Hynes willfully entered into an agreement with any other individual, who was not a member of the Brooklyn district attorney's office, to wrongfully prosecute plaintiff. Nor are there allegations to support specific acts

---

[4] See, e.g., Demosthene v. City of New York, 14 CV 816 (SJ) (VMS), 2015 U.S. Dist. LEXIS 114902, at *18-19 (E.D.N.Y. June 26, 2015); Little v. City of New York, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007); Broich v. Inc. Village of Southampton, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009); Danielak v. City of New York, 02 CV 2349 (KAM), 2005 U.S. Dist. LEXIS 40901, at *42 (E.D.N.Y. Sept. 26, 2005).

performed by Hynes in furtherance of any such conspiracy. Again, plaintiff cannot base this or any other claim on an alleged failure to prosecute another party, such as Baruch Lebovits. Absent a specific agreement to violate a right of plaintiff's, this claim, to the extent that plaintiff has alleged one, must fail. Any § 1983 conspiracy claim should therefore be dismissed.

## POINT III

## AT A BARE MINIMUM, HYNES IS ENTITLED TO THE BENEFIT OF QUALIFIED IMMUNITY TO SUIT

Qualified immunity protects government officials when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1992). Where reasonably competent officials could disagree as to whether the conduct at issue would violate clearly established rights, the defendant is entitled to qualified immunity. Malley v. Briggs, 475 U.S. 335, 341 (1986). The main "concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints" on government actors' conduct. Saucier v. Katz, 533 U.S. 194, 205 (2001), overruled on other grounds, Pearson v. Callahan, 555 U.S. 223 (2009); see also Anderson v. Creighton, 483 U.S. 635, 641 (1987) (recognizing that it is inevitable that officials will sometimes reasonably but mistakenly take actions that are later found to be illegal, and should not be held personally liable in such circumstances).

When a prosecutor acts as "investigator" or "administrator," he is entitled to qualified rather than absolute immunity. Zahrey v. Coffey, 221 F.3d 342, 346-47 (2d Cir. 2000) (citations omitted); see also Buckley, 509 U.S. at 273 (qualified immunity applies when a prosecutor performs the investigative functions typically performed by a detective or police officer) (citation omitted). As the Circuit has recognized, however, the line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw. Zahrey, 221

F.3d at 347 (citations omitted); Warney, 587 F.3d at 121-22. Drawing these distinctions, therefore, is often "unhelpful" in determining whether absolute or qualified immunity applies. Warney, 587 F.3d at 123; cf. Van de Kamp, 555 U.S. at 344 (absolute immunity applies to "administrative" functions "directly connected with the conduct of a trial").

Here, even assuming that Hynes is not entitled to absolute immunity, he is nonetheless entitled to qualified immunity. That is because it was reasonable for him to investigate and prosecute plaintiff for making monetary demands to cause the dismissal of criminal charges and influence witnesses, on receiving reports of such activities. Indeed, plaintiff concedes that three witnesses testified against plaintiff in the grand jury. (AC at ¶ 40). To evade the qualified immunity defense, plaintiff would have to establish that no reasonably competent prosecutor would believe that there was probable cause to prosecute an individual under these circumstances. Surely this is an untenable conclusion, considering that plaintiff was indicted by a grand jury. Given the circumstances alleged in the AC, there was, at the very least, arguable probable cause for plaintiff's prosecution. Hynes is therefore entitled, at a minimum, to qualified immunity.

## POINT IV

## PLAINTIFF HAS FAILED TO ALLEGE A MONELL CLAIM AGAINST THE CITY

Plaintiff's claim for municipal liability against the City is lacking for a variety of reasons. As a threshold matter, the purported Monell claim fails to articulate a coherent theory of municipal liability. As if that were not enough, Hynes is alleged to have acted in his prosecutorial capacity, and, in that role, is not a policymaker for the City. The claim is flawed for the additional reason that the pleading is threadbare and therefore does not satisfy the Iqbal

plausibility standard. This derivative claim is also fatally flawed for plaintiff's failure to allege an underlying constitutional violation.

To hold a municipality liable as a "person" within the meaning of § 1983, a plaintiff must establish that the municipality itself was somehow at fault. Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985); Monell, 436 U.S. at 690-91. "The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused him injuries . . . . Second, the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted).

A plaintiff must plausibly allege and prove one of four types of violations: (1) the existence of a formal policy, officially promulgated or adopted by a municipality, Monell, 436 U.S. at 690; (2) the official responsible for establishing policy, with respect to the subject matter in question to the specific action, caused the alleged violation of the plaintiff's rights, Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) the existence of an unlawful practice by subordinate officials so permanent and well settled to constitute "custom or usage," with proof that this practice was so manifest as to imply the acquiescence of policy-making officials, City of St. Louis v. Praprotnik, 485 U.S. 112, 127-30 (1985) (plurality opinion); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employee's interact, City of Canton v. Harris, 489 U.S. 378, 388 (1989).

In the absence of plausible, specific allegations that a municipality was the cause of a constitutional violation, a plaintiff's theory of municipal liability cannot survive a motion to

dismiss. Cuevas v. City of New York, 07 CV 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *10 (S.D.N.Y. Dec. 7, 2009) ("Plaintiff's boilerplate allegations against the City ... satisfy neither the elements [for municipal liability], nor the pleading requirements set forth in Iqbal"); Bradley v. City of New York, 08 CV 1106 (NGG), 2009 U.S. Dist. LEXIS 51532, at *10 (E.D.N.Y. June 18, 2009) (dismissing boilerplate allegations of municipal liability pursuant to Fed. R. Civ. P. 12(b)(6)). Indeed, if the contrary were true, any plaintiff could simply paste similar scattershot-style language into his or her complaint, thereby surviving a motion to dismiss and gaining access to costly and burdensome discovery.

Plaintiff relies on broad language that does no more than recite the elements of a cause of action. (See AC at ¶ 62). He alleges, in unadorned fashion, that violations of plaintiff's constitutional rights resulted from policies, customs, or practices of the City in the management and administration of the Brooklyn district attorney's office under Hynes, including the investigative pursued and procedures followed in the handling of plaintiff, in its deliberate indifference to witness tampering and intimidation, and it an opportunity that it afforded to Lebovits to undermine his conviction. (AC at ¶ 62). He attributes each of these wrongs to Hynes, asserting that Hynes possessed "final policy-making authority." (AC at ¶ 62). The conclusory nature of these allegations alone warrants dismissal of this claim. See Swinton v. City of New York, 08 CV 3278 (RJD) (RML), 2011 U.S. Dist. LEXIS 32384, at *15-17 (E.D.N.Y. Mar. 28, 2011) (dismissing as conclusory claim that [ADA's] inflate charges); Arroyo-Horne v. City of New York, 07 CV 5213 (RJD), 2011 U.S. Dist. LEXIS 23904, at *30 (E.D.N.Y. Mar. 9, 2011) (granting summary judgment on claim that the City has a policy of "blackballing" employees who complain of discrimination).

Given these generalities, it is difficult to ascertain the basis for this claim. It appears that it may rest on the theory that Hynes acted as a policymaker for the City. (See AC at ¶ 62, 62). Yet the sparse facts proffered to advance this theory, here, too, fall far short of supporting it. If anything, based on plaintiff's allegations, Hynes acted in his prosecutorial role as advocate for the People of the State of New York. When prosecuting a criminal matter, the district attorney acts for the state and not for the municipality. Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988); see also Miller v. County of Nassau, 467 F. Supp. 2d 308, 316 (E.D.N.Y. 2006) (plea bargaining is intertwined with prosecutorial decisions concerning criminal matter and trial and the County therefore cannot be held liable for such decisions); Eisenberg v. District Attorney of County of King, 93 CV 1647 (ILG), 1996 U.S. Dist. LEXIS 22469, at *19 (E.D.N.Y. July 17, 1996) (City cannot be held liable under §1983, for decision by district attorney to prosecute plaintiff). Indeed, the City cannot be liable for the decisions of a district attorney's office regarding the handling of a prosecution. See, e.g., Bellamy v. City of New York, 12 CV 1025 (AMD) (PK), 2017 U.S. Dist. LEXIS 75306, at *105 (E.D.N.Y. May 17, 2017) (citing Pinaud, 52 F.3d at 1153 n.14) (other citations omitted); Van de Kamp, 555 U.S. at 345-48. A district attorney acts as municipal policymaker only when he acts in an administrative or managerial role, but not in his role as an advocate. See, e.g., Van de Kamp, 555 U.S. at 345-348 (acts taken related to a prosecutor's basic trial advocacy role are treated as prosecutorial decisions); cf. Jones v. City of New York, 988 F. Supp. 2d 305, 314 (E.D.N.Y. 2013) (district attorney acts as municipal policymaker when he or she acts as the manager of the office, such as with regard to decisions relating to building management, maintenance, or discrimination against employees).

The City cannot be held liable for a district attorney's actions in carrying out his prosecutorial activities, because a municipality does not – and indeed, cannot, as a matter of law – control those activities. A district attorney alone decides when, and in what manner, to prosecute a suspected offender. Baez, 853 F.2d at 77. In Baez, the Circuit held that a local government – there, the County of Onondaga – could not be subjected to municipal liability for the district attorney's actions in signing an improperly-issued indictment, because the district attorney's prosecutorial acts did not represent the official policy of the county. 853 F.2d at 76-77. The Court cited the settled principle that, when prosecuting a criminal matter, a district attorney in New York State represents the state and not the county. 853 F.2d at 76-77. Taking into account of the constitutional and legislative history of the office of the district attorney in New York from its 1801 inception, Baez emphasized the importance of the district attorney's independence from control by local governments in carrying out its statutory and constitutional duties. 853 F.2d at 77.

Plaintiff's Monell claim against the City fails because no municipal liability can arise from a district attorney's decision to prosecute. See, e.g., Wray v. City of N.Y., 340 F. Supp. 2d 291, 304 (E.D.N.Y. 2004), reversed on other grounds, 490 F.3d 189 (2d Cir. 2007) (citing Baez, 853 F.2d at 77). The district attorney's alleged wrongdoing here, which relates solely and directly to his prosecutorial role, does not give rise to a policy claim against the City as a matter of law.

In the present case, the areas for which plaintiff alleges that Hynes acted improperly – specifically, influencing witnesses and improper motivation for bringing criminal charges – are all connected with the prosecution of criminal matters. Schnitter v. City of Rochester, 556 Fed. App'x 5, 7 (2d Cir. 2014) (absolute immunity attaches to a prosecutor's

failure disclose exculpatory information because it involves a "core prosecutorial function"); Mahon v. Namani, 15 CV 2032 (CM) (GWG), 2016 U.S. Dist. LEXIS 81184 at 3 (S.D.N.Y. June 17, 2016) (absolute immunity attaches to falsification of evidence and witness coercion). Accordingly, Hynes acted as a state official with respect to the supervision and discipline functions at issue in the present case and therefore there can be no liability against the City for his alleged failures.

Nor has plaintiff plausibly alleged facts to support the existence of a widespread illegal policy, custom, or practice of the City, an underlying violation of a federally-protected right by Hynes, or deliberate indifference to training and supervision, and his Monell claim fails for these additional reasons. As far as a deliberate indifference theory, plaintiff must show that a policymaker knows to a moral certainty that its employees will confront a given situation; the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and the wrong choice by the city employee will frequently cause the deprivation of a constitutional rights. Jenkins v. City of New York, 478 F.3d 76, 94 (2d. Cir. 2007). There is no reason to believe that any ADA would have required specific training to know not to engage in "witness tampering and intimidation." (See AC at ¶ 62). Moreover, the alleged deliberate indifference to the "witness tampering and intimidation" was not, according to the AC, directed towards plaintiff, but, rather, towards victims of pedophiles and their families within the Hasidic community. (AC at ¶ 22). Accordingly, plaintiff cannot claim a violation of his own rights on this basis.

Further, absent plausible allegations of a violation of an underlying right, a Monell claim necessarily fails. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986);

Blessinger, 2017 U.S. Dist. LEXIS 142397, at *8. As noted above, plaintiff has not pled facts sufficient to rebut the presumption of probable cause that arose as a result of his indictment or that Hynes was personally involved in assessing the evidence, the decision to prosecute him, or the presentation of the allegedly perjured testimony to the grand jury.

Plaintiff claims that Hynes, as a policymaker for the district attorney's office, had a policy or practice of wrongfully prosecuting individuals in order to allow pedophiles to undermine their convictions. Plaintiff, however, has provided no examples of other allegedly similar instances. He therefore cannot sustain a claim based on a purported widespread custom, policy, or practice. That is, a plaintiff cannot rely on generalized allegations of municipal liability such as these to avoid a motion to dismiss. Cuevas, 2009 U.S. Dist. LEXIS 114984, at *10 ("Plaintiff's boilerplate allegations against the City ... satisfy neither the elements [for municipal liability], nor the pleading requirements set forth in Iqbal"); Bradley, 2009 U.S. Dist. LEXIS 51532, at *10 (dismissing claim pursuant to Fed. R. Civ. P. 12(b)(6)). His pleading is therefore conclusory and inadequate to meet the "facial plausibility" standard established by Twombly and Iqbal. Of the hundreds of thousands of cases (if not more) prosecuted by the Kings County district attorney's office under Hynes, plaintiff has identified no others which he alleges were prosecuted as part of a policy or custom of the type alleged here.

Plaintiff has offered no facts from which it may plausibly be inferred that the City had a widespread illegal custom or policy; that Hynes acted illegally in his role as policymaker for the City rather than the State; or that plaintiff was injured as a result of deliberate indifference. In these circumstances, no fair inference can be drawn that plaintiff was prosecuted as a result of a municipal policy or custom, and this claim should be dismissed at this stage.

**CONCLUSION**

For the reasons set forth above, defendants' motion to dismiss should be granted in all respects and this action should be dismissed in its entirety with prejudice at this time.

Dated: New York, New York
May 8, 2018

ZACHARY W. CARTER
Corporation Counsel of the City of New York
*Attorney for Defendants City of New York and Charles Hynes*
100 Church Street
New York, NY 10007
(212) 356-2355
sscharfs@law.nyc.gov

By: /s/
SUSAN P. SCHARFSTEIN