UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK (BROOKLYN)

| | |
|---|---|
| SAMUEL KELLNER,<br>Plaintiff,<br>v.<br>THE CITY OF NEW YORK, et al,<br>Defendants. | Case No. 1:17-cv-01268-MKB-MMH<br><br>Brooklyn, New York<br>October 13, 2022<br>9:08 a.m. |

TRANSCRIPT OF TELEPHONE STATUS HEARING
BEFORE THE HONORABLE MARCIA M. HENRY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Niall MacGiollabhui, Esq.<br>Law Office of Niall MacGiollabhui<br>171 Madison Avenue<br>Suite 305<br>New York, NY 10016 |
| For the Defendants: | Susan P. Scharfstein, Esq.<br>NYC Law Department<br>100 Church Street Room -119<br>New York, NY 10007 |
| Clerk: | Unknown |
| Court Recorder: | Electronic Sound Recording |
| Transcription Service: | Chris Hwang<br>Abba Reporting<br>PO Box 223282<br>Chantilly, Virginia 20153<br>(518) 302-6772 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(Call to order at 9:08 a.m.)

THE CLERK: Good morning. This is civil cause for a status conference for case number 17-CV-1268, Kellner versus the City of New York, et al.

As a reminder, pursuant to the Local Civil Rule 1.8, the parties may not independently record any court proceeding. A transcript of this proceeding may be ordered from the Clerk's Office.

That being said, counsel for Plaintiff, please state your appearance?

MR. MACGIOLLABHUI: Niall Macgiollabhui for Plaintiff. Good morning, Your Honor.

THE COURT: Good morning.

THE CLERK: And for the City of New York Defendants, please state your appearance?

MS. SCHARFSTEIN: Good morning, Your Honor. It's Susan Scharfstein for the Defendants.

THE COURT: Good morning. All righty, so we're on for a status conference in this case, which is sort of a continuation of the status conference that we had orally a motion hearing and a lengthy one on August 16th.

And at that time, I made a few preliminary rulings on portions of the parties' motion to compel and set some deadlines for the production of various things.

I will note for the record that the Defense has

produced the notes that were in dispute during that call to the Court. And so, I have a copy of them.

The fact discovery deadline was extended to later this month. And I think we're going to talk about what other, if any, extension is needed.

I did receive the letter regarding the subpoenas and the request to so order them. And those were in fact so ordered.

And I believe that there was also -- portions of the transcript were redacted pursuant to probably what I said on the record. And that has been completed.

I would like to hear from you all, what if anything, else has happened since August? And then, talk about what else needs to happen because I think that the motion to compel at 53 Mr. Macgiollabhui filed in July, I think there's still some outstanding portions of it.

If you all could just let me know if the depositions that you wanted to do have been completed?

MR. MACGIOLLABHUI: Judge, in terms of the depositions, from Plaintiff's point of view, there were four -- well, there were -- well, three left to be conducted and one to be completed.

So two of them, we required the -- we requested or I did so ordered subpoenas.

So the first of the witnesses is Mr. Lonuzzi. And

the date of his subpoena was September 30th. He was unavailable that day and we rescheduled to Monday, October 17th. So hopefully --

THE COURT: Okay.

MR. MACGIOLLABHUI: -- that goes. I will say that Mr. Lonuzzi has an unfortunate habit of cancelling things at the last minute, but I don't want to tempt fate in that regard.

I -- it's so ordered, so I expect it will go ahead on the 17th. And it took myself and opposing counsel a long time with him to pin them down to a date, but that was the date he provided. So I expect we'll go ahead.

The other so ordered subpoena was all a gentleman by the name of Moisha (phonetic) Friedman. He was served, too. And I spoke to him last week. He's a member of the Sephardic community that the -- it's one of the facts within the orthodox community in Brooklyn.

And this week is a -- it was a holiday that runs from sundown --

THE COURT: Yes.

MR. MACGIOLLABHUI: -- it runs -- exactly. So he --

THE COURT: Yes.

MR. MACGIOLLABHUI: -- again, in terms of the levels or obviously there are different degrees of observance. What he had indicated to me was that his observance or his method of observance was such that he wouldn't be available today for the

deposition.

And I checked with my client, who's of the same sect. And my client confirmed that what he had represented to me was genuine.

Nonetheless, I said to him on Friday if it's so ordered, you know, I understood he was going to be represented by counsel. I told him if that's the case, you need to have your attorney reach out to us and work out another date.

So he did in fact do that to the extent that I was on -- I think it was Friday, late Friday afternoon, contacted by an attorney on his behalf. Her name is Susan Necheles. She's quite a well-known and somebody who's widely respected.

She contacted me and she told me that we would work out an alternative date. She then contacted --

THE COURT: And to be clear, had I realized at the time that the so ordered date fell within this period, I likely would have changed it because I've had counsel in other cases advise me that this is a period of time when they wouldn't be available, so.

MR. MACGIOLLABHUI: Indeed, Your Honor.

THE COURT: I -- yeah, I didn't realize at the time. And please bring those things to my attention next time because I would have gladly changed the date.

MR. MACGIOLLABHUI: No, no, indeed, Your Honor. And look, not to make light of it, but as I explained to Mr.

Friedman, you know, because you know he asked about that, too. I said look, it wasn't deliberate. And I said whoever else -- I said to him not to blame for this. Don't blame the Irish guy. I didn't know at all.

So but I told him that there would be no problem adjourning it. And I would say he attempt to reach out.

But she, unfortunately, came down with Covid. And I actually spoke to her. She had emailed us and then I -- she called me as well yesterday and she didn't sound good suffice it to say.

But she did again, say look, I will provide -- she told me she has a trial coming up shortly. She said it's not for sure -- she's not sure that she will be the person representing him at the deposition, but she is going to give us alternative dates in November. So, hopefully, we will have that rescheduled shortly. So there --

THE COURT: What was the name of the attorney?

MR. MACGIOLLABHUI: Her name is Susan Necheles. It's N-E-C-H-E-L-E-S.

THE COURT: Necheles.

MR. MACGIOLLABHUI: Yeah, exactly.

THE COURT: Okay.

MR. MACGIOLLABHUI: So they're the two so ordered depositions.

Then, the two others from Plaintiff's point of view,

one is to be completed. That's a prosecutor by the name of Kevin O'Donnell (phonetic). That date has been set for November 2nd, assuming are contingent on the Court extending the discovery deadline, it'll be finished on that day.

And then the final witness from Plaintiff's point of view is Detective Litwin. So this the detective whose notes have been at issue.

THE COURT: Okay. Okay. All right, thank you.

MS. SCHARFSTEIN: May I finish on the deposition?

THE COURT: I would like love to hear from you, Ms. Scharfstein.

MS. SCHARFSTEIN: Thank you. So I just wanted to make the Court aware of the concerns from the Defense side about what has been going on with the depositions.

And in particular, this is of importance to us because I -- we have not yet started Defendant's depositions and I think I relayed at the earlier conference that we anticipated that there would be up to five.

And I do anticipate that they will also be lengthy. And because of the extensive documentary record in this case, there -- it's going to take some doing to prepare for those depositions because the documents are extensive and there are many other transcripts that have been generated to this point and that will continue to be generated.

And candidly, I have some concerns that everything

that could have been done has not been done at Plaintiff's end to move this forward.

So, for example, you know, the so ordered subpoenas were at my request, because I was concerned about the number of dates that I was having to hold for this case in scenario where Plaintiff is exceeding the presumptive limit of 10.

And that each last minute or close to last minute adjournment means a date that can't be used for another case because there's not sufficient notice. And that it's creating a log jam in the scheduling.

And Plaintiff's counsel has been rather assertive about requesting dates and there are numerous emails.

And it's almost -- so there are multiple emails per day. And there are many days when there are emails.

So I just wanted to note for the record with regard to Mr. Friedman's deposition, I've held May 23rd, June 29th, July 12th, October 3rd.

For Mr. Lonuzzi, I've held June 23rd, July 12th, August 12th, September 30th, and now October 17th.

So September -- with regard to the September 30th date that was so ordered, it -- there were emails from Plaintiff's counsel as late in the day as September 29th, saying that he intended to go forward with the deposition. So there was uncertainty until the very last minute.

And there were some rather heated emails between Mr.

Lonuzzi and Plaintiff's counsel with regard to communications that they'd had.

For example, the witness claim -- reported or claimed that Plaintiff's counsel had gone to his home and made a scene to speak with him about appearing at the deposition.

He communicated to both counsel by email that he felt uncomfortable dealing with Plaintiff's counsel and that he felt the need to get representation.

And so, I'm hoping that that October 17th date will -- it will finally happen, but you know, there have been concerns expressed.

There was another witness, Mr. O'Donnell. I held April 5th, June 21st, June 29th. So it took three dates to get his deposition.

Then there was another witness, Mr. Freund (phonetic), who apparently is not -- we're not going forward with and there were one or two dates that I was asked to hold for him.

So I communicated to Plaintiff's counsel the difficulty in doing this and that it contributed to my inability to offer him as many dates as he had -- was hoping to get from me and that it was creating a delay.

And you know, again, I'm concerned because there's a lot of discovery that remains to be done. And you know, all of these adjournments collectively has created quite a bit of

delay.

And I'm greatly concerned that the Court's patience is going to run out, that this will be unacceptable, and that my clients will not get the discovery that they need, and will be prejudiced as a result of all this.

So, you know, just to note also, I think I mentioned that the Court had so ordered the subpoenas on August 30th. They had -- Plaintiff's counsel did not serve them until 3 weeks later on the 21st and the first of the depositions was to take place on the 30th.

So that's not very much time for someone to consider, you know, a nonparty to consider their schedule, decide what they want to do about it, express any concerns about the scheduling.

Mr. Friedman didn't ask for an adjournment until October 7th. That was three business days before the deposition was supposed to go forward on 10/13.

It was initially communicated to me that Mr. Friedman had asked for an adjournment because the date fell in the middle of Sukkot. It was not communicated to me even at that time that it was because of a religious observance.

And I did not know the specifics of his religious beliefs nor would I ask or care to ask. That's certainly up to him, but what I needed to know was that his religious observance prevented him from going forward and not just that

it was maybe not his preferred time for the deposition.

And you know, I was not aware that an attorney had appeared until yesterday. So, you know, I previously notified Plaintiff's counsel that I was hoping for his cooperation. I needed his cooperation in scheduling to be able to move the schedule forward and offer him dates that he needed to his satisfaction. And there were emails dated June 15th and August 12th to that effect.

So that's really my concern about the depositions. And I certain hope that my client is not going to be prejudiced because of all these adjournments and all these delays.

MR. MACGIOLLABHUI: Judge, let me just briefly address that. And I (indiscernible) point.

THE COURT: Extremely briefly.

MR. MACGIOLLABHUI: Yes, indeed, Your Honor. Something Ms. Scharfstein to be prejudiced, but you'll note in the last letter that what Ms. Scharfstein has said in relation to me is that I'm -- I've been very anxious throughout this to move things along. And that has been the case.

And then things moved very expeditiously while we went through the paper discovery, while we went through the D.A.'s witnesses.

And in terms of Mr. Aidala, he too -- his son has Covid. It was one adjournment he asked for. He wasn't -- the -- I mean, Ms. Scharfstein mentioned April 5th.

He wasn't served the first date on the subpoena he received I think was in -- it was either late May or early June. So he asked for one adjournment.

Mr. Lonuzzi has been very difficult. And, yes, we engaged in these exchanges because he has spent months trying to get me and I guess by extension Ms. Scharfstein the run-around in terms of the appearing.

You know, he was going to accept service. Then he wasn't. Then he was going to appear. He agreed to appear. He cancelled at the last minute.

He then said he would accept service, but on certain conditions. And eventually, I had to serve him.

So it wasn't that he first became aware of the deposition on September 21st. I emailed him because we had been in constant communication for about three or four months. I emailed him the moment we got the so ordered subpoena.

The reason I had to serve him in person is because he claimed the process server who served him previously was lying about what -- how the service took place, and then, wouldn't accept service.

So I said you know what? I'm going to go and serve him in person. And then, they'll be no dispute that he's been served and he has to appear. So that's in relation to Mr. Lonuzzi.

Mr. Friedman I, you know. --

THE COURT: Hang on, Mr. Macgiollabhui, I don't want to go tit for tat on each witness because --

MR. MACGIOLLABHUI: Sorry.

THE COURT: -- I think that the overarching theme from Ms. Scharfstein's recitation of many factual details and these are things that I think are completely reasonable and consistent with comments that I have made to counsel in this case before, which is that overcommunicating and meeting and conferring in this case is what's going to help to move it forward.

And to the extent that you received information, that of course is relevant to each other. So Mr. Macgiollabhui, I'm not picking on you.

Same applies to you, Ms. Scharfstein.

That information is to be shared with your adversary promptly because I think that doing that might head off what Ms. Scharfstein has diplomatically referred to as confirmed.

And I think you all have generally been working very well together. So that's not to say that I don't think that that is happening in this case.

But as discovery continues on, I just think that it bears repeating. And Mr. Macgiollabhui, again, I don't want to go tit for tat on particular things. I'm saying this as a general what I give to everyone. Now --

MR. MACGIOLLABHUI: Your Honor.

MR. MACGIOLLABHUI: Your Honor --

THE COURT: That said, Mr. Macgiollabhui, you are representing the Plaintiff. And so, yes, some of the burden falls a little bit more on you to move the case forward. It is your case to bring.

But again, I commend the both of you for dealing with a number of difficult situations in this case. I'm just asking for you to do little bit more in that regard.

MR. MACGIOLLABHUI: That's fine.

THE COURT: Mr. Macgiollabhui, is there anything else you want to add?

MR. MACGIOLLABHUI: No, no, that's fine. And again, I'm not going to engage in tit for tat. I will simply say this that everything I learned -- I actually to a fault communicate always immediately with opposing counsel. And if there has been tension between us, it's that I overshare rather than undershare.

So, you know, I have -- I am anxious to move the case along. You know, in terms of dates, I have, you know, the position I take with every witness and with opposing counsel all along has been you tell me what day you're available and I'll make myself available.

And I've had to reschedule multiple things and have people cover things for me so that I accommodate other people's schedules.

No one has accommodated my schedule up until now. And -- but that's what I'm going to continue to do because as Your Honor correctly points out, I represent Plaintiff here. So it's very much in my interest and in my client's interest to move things along.

But I have, you know, I don't want to dwell upon this, but the representations and the impression being given is not an accurate one, Your Honor.

And if there -- if Your Honor is going to do accept it at face value, I'm not -- from my point of view, I'd like to move on, but I certainly do not agree with the impression given in that I think if you look at all the correspondence or all the communications are by emails.

And the emails tell their own story in terms of what I have -- you know, I've done everything in terms of courtesy and in terms of communication to move the case along.

And I'm not faulting opposing counsel, but certainly, you know, I don't think any fault could be lain at my door.

And the one -- the only witness, which we've had difficulty has been Mr. Lonuzzi. And you know, time will reveal in this case, you know, why that is and why he doesn't want to be deposed and what he did that is requiring his deposition.

But I'm not -- I'm very protective of my good name. And Your Honor, I -- you know, I've been practicing quite some

time. I always got along with the attorneys with whom I appear in cases. And I have done my level best in this case as with every case.

Again, I'm not faulting opposing counsel, but Mr. Lonuzzi has been particularly difficult to deal with. And as I just say, we'll see what happens on Monday, but he has been exceptionally difficult.

And if you see the level of abuse that he has directed at me by email, and Ms. Scharfstein is well aware of this, Your Honor would be quite appalled.

So for Ms. Scharfstein to somehow suggest that I'm at fault really is quite unacceptable. But again, I don't want to -- I'd like, you know, I think our common goal is to move forward, but certainly any aspersion being cast that I have not conducted myself in anything but according to the highest standards is simply actually untrue.

THE COURT: Understood, Mr. Macgiollabhui.

And to the extent that you -- I -- put it this way. When you say things, I take them at face value unless proven otherwise.

So I take it at face value that you are acting to the highest standard. And to the extent that my comments are accepted otherwise, let me just dispel that misconception right now.

Now in terms of actually moving forward with the

discovery here, there were two components that I wanted to check in on. One was the depositions, which excuse me I now have a more fulsome picture of what is happening there and what remains to be outstanding.

And to the extent that Mr. Lonuzzi continues to be a problem, that is something that you should bring to my attention because he may be required to appear before this Court and explain what his problem is, but we haven't gotten there yet.

MR. MACGIOLLABHUI: Right, and hopefully we don't, Your Honor. Hopefully, he just appears on Monday and that will be the end of it.

THE COURT: Correct. The second portion of this are the Litwin notes that Ms. Scharfstein provided to the Court. And the original subject of the motion to compel was to compel production of these notes or that was one of the original acts in the motion to compel.

So, Ms. Scharfstein, I think that you received them. You provided them to the Court. Have you had an opportunity to review them for the either relevant questions and in terms of responsiveness to the demands and in terms of any redactions that may need to be had?

MS. SCHARFSTEIN: Your Honor, I did review the notes and I did produce to Plaintiff's counsel yesterday the material that I considered responsive.

And it appears now that the scope of the request is changing. And if I may, I would like to explain that.

So it was my understanding from the motion, which discusses the allegations of witness tampering with regard to the sexual assault victim who with the Court's permission I would call M.T. just for protect his privacy.

THE COURT: Uh-huh, sure.

MS. SCHARFSTEIN: That was what I understood was the subject matter of the notes the Plaintiff was seeking. And it's discussed in the motion to dismiss -- to compel the fact that the victim met with Litwin after he ended this cooperation with the prosecution, told Litwin he had been pressured, and was instructed not to contact the District Attorney's Office or police. And then, Litwin allegedly requested an investigation into witness tampering.

And that was what I understood was the subject matter of the notes. And that was confirmed by Document Number 54-1 on the Court's docket sheet, which I annexed to my response to the motion to compel.

And it was this exchange of email messages between me and Plaintiff's counsel when I was trying to get him to confirm exactly what he wanted, so that we would not be put to the burden of multiple searches.

And what he said in the email is I said I wanted his notes, his meaning Litwin's release to M.T., again using the

pseudonym, including notes of meetings and notes of contact with the D.A.'s office.

The only thing I was unsure about was the time period. And it continues, but not -- to the extent it continues, it's not relevant here.

So, then, I viewed the transcript of the last conference, where there was a rather lengthy discussion of why Plaintiff's counsel believed that he needed the notes and there were numerous references to the allegation of witness tampering and the communication between the victim and Detective Litwin.

And there was no other subject matter discussed. So it was my understanding that that's what Plaintiff wanted.

And I did the review and the response on that basis. And then, for the first time, late yesterday, I learned that that was not satisfactory and that more information was needed.

And in addition to that, there's been some confusion about the dates, which I don't think is really material -- all that material here, but the time period has changed.

So in the conference and in the Court's order that came out of the conference, the period, it was extended to November 30th and apparently it wasn't November 30th, it was November 1st into 2010.

But you know it was of some concern that there was this lack of consistency in what Plaintiff was saying that he needed.

But nevertheless, the period I used was what was reflected in the Court's order. And that went to November 30th. So that's the more inclusive period.

But I would just refer the Court in this regard to pages 7 to 10 of the transcript of the last conference, where there's a discussion of notes concerning Litwin's contact with M.T. and communications about witness tampering and lack of cooperation and communications on that subject with D.A. Hynes.

And then, on pages 24 to 25, Plaintiff's counsel makes a reference to these events having taken place long before Plaintiff Samuel Kellner was even investigated or indicted.

So that in my mind was the parameters of what Plaintiff was asking for. And that's what -- that was the basis for the response.

So my request to the Court now is to leave it at that, meaning that we can take Plaintiff's counsel at his representation. This is what he said was what he was needed and this was why he needed it and to leave it at that.

If the Court's not satisfied with that, I would then ask in -- to avoid any further confusion or successive document reviews, if the Court would have Plaintiff's counsel make a new motion to compel, explaining what he needs and why he needs, so that I can respond in writing.

The Court can issue clear rulings, and if necessary,

a party can file objections with the district judge.

Because I think that I thought this was all memorialized in writing. It was confirmed that's what Plaintiff's counsel had represented to me, when the June 21st emails annexed to my response at docket entry 54-1. And I thought it was resolved.

But apparently, it's not or at least that's what was communicated to me late yesterday.

THE COURT: Okay, now Mr. Macgiollabhui, I'm going to ask you to respond, but let me just take a couple of things here.

So, Ms. Scharfstein, can you just -- I just want to make sure that I understand your scope argument. You believed that the scope of what needed to be produced was specifically regarding M.T. -- Detective Litwin's note relating to M.T. including notes of any meetings and notes of contact with the D.A.'s office.

And that was to be between November 2009 and, excuse me, February 2009 because I extended it during the conference from February 1, 2009 to November 30th, 2010. That was your understanding of what you were supposed to be producing?

MS. SCHARFSTEIN: That was my understanding. I stated in Plaintiff's counsel's email of June 21st and confirmed again on June 21st when I meant -- when I told him that I was relying on what he wanted and that was going to be

the basis for the search and as confirmed in the transcript of the conference and the discussion about witness tampering and that witness in Plaintiff's motion to compel, yes.

THE COURT: Okay, all right. Thank you, Ms. Scharfstein.

So here, Mr. Macgiollabhui, let me just make sure that you in fact agree on something that hopefully is not in dispute. You did review -- you did receive some notes yesterday?

MR. MACGIOLLABHUI: Yes, I received, yes, one page of notes relating to -- I mean, reading from the letter I received -- the notes relating to M.T. That was how they were described.

So the dispute between us is actually quite minor in scope, Your Honor. And I explained it. And the time period --

THE COURT: Sure.

MR. MACGIOLLABHUI: -- I have one of email in front of me. I may have said in an email November 1st rather than November 30th, but regardless, the time period is not at issue.

So the email exchange that Ms. Scharfstein is referring to, that pre-dates the dispute. The email -- so they're June emails when not in dispute.

What led to the dispute was, and again, it was an email on July 15th, where I asked for notes relating to M.T. and/or Kellner during the time period in question.

And if you look, Your Honor, at my motion to compel, I referred to my original -- my request. I mean, most Ms. Scharfstein corresponded about this yesterday, where I asked for notes related -- Detective Litwin's notes during the course of his investigation into Mr. Lebowitz's (phonetic) that convicted child molester between those particular dates.

THE COURT: And that's at Document 54 --

MR. MACGIOLLABHUI: Yes, it is.

THE COURT: -- your original motion, right?

MR. MACGIOLLABHUI: Yeah, my original motion.

THE COURT: Okay.

MR. MACGIOLLABHUI: Right, so that was the original request. And I had narrowed it down to those two named individuals.

And the reason being this was we discussed at length the last time. What I want are notes relating to his investigation into witness tampering.

Now in terms of Mr. Lebowitz, he had three victims in respect to when he was being prosecuted. One of them was M.T.

The other one was an individual whose case went to trial. And because it went to trial, my understanding is that I received all his notes relating to that victim from the D.A.'s office because it was Rosario material in the state context.

THE COURT: Uh-huh.

MR. MACGIOLLABHUI: The two remaining victims were M.T. and my client's son.

Now the investigation into witness tampering concerned all three victims. Now the principal -- the person who was successfully paid off at that time was M.T., but the investigation carried out by Detective Litwin was not focused solely on him. It was focused on all three victims because there are efforts been made to tamper with all three of them.

So in terms of our dispute, it is this. And again, the June correspondence predates the dispute. That's not the request that was at issue.

The dispute we have is this. I don't know what the Court has. I don't know how many notes are her or how many pages of notes.

I assume because I got one page, it's not voluminous. But certainly anything in Detective Litwin's notes that relates to his investigation into witness tampering is clearly discoverable.

The language I received the material was not these are Detective Litwin's notes as they relate to witness tampering.

It's that these are the notes that relate to this one individual, which is not what I requested. So it wasn't the purpose of the request in that I wasn't looking for in an isolated sense notes relating to this individually.

What I was looking for is notes relating to his investigation into witness tampering of which --

THE COURT: Of any witnesses.

MR. MACGIOLLABHUI: Indeed, of which this witness was the principal as it were person at issue because he was the one who was successfully tampered with at that point.

And I believe Your Honor, you know, and Ms. Scharfstein's well aware of this context. And I read -- this is an email that was sent to the D.A.'s office because the note that I did get is significant because it has a time on it, which is December, the end of December of 2009.

So there was an email then sent in January 2010 from a different source to the D.A.'s office. And it says he called, that's the other person in question, to say he knows that one of the witnesses in the case has left town and gone to Israel after being offered a significant money by a particular individual. So that's M.T.

He says that another witness, in parenthesis Keller, was offered the same bribe, but declined.

So this is the same period where the witness tampering is in relation to all victims, all three victims in respect to whom Mr. Lebowitz was being prosecuted. So that's what I'm looking for.

What I got -- and again, I don't know, you know, I'd ask Ms. Scharfstein are there more notes related to my client

and my client's son and that have been withheld?

And, in fact, there notes that I -- that you have that I -- you didn't get from the D.A.'s office, but that's essentially what I'm looking for. I'm not looking for this is not re-framing the ask. It's everything that's consistent all the way through. And we went through this by email yesterday.

You know, I asked originally for Detective Litwin's notes of his investigation concerning Mr. Lebowitz. And I know that to say I think I have for one of the victims so I'd like for the other two in terms of attempts to tamper with them.

And what I've got is for one of them, M.T. I should have -- there's no reason -- to give me notes that mention him is not responsive to my request because my request is not about M.T. as such. It's about the investigation into witness tampering as it relates to M.T., but also more broadly. And in particular, as it relates to my client and my client's son.

So I'm assuming based on the fact that I got one page of notes, that we're talking about a small volume. And obviously, the Court has possession of the full set of notes.

But these are, you know, these notes to the extent there are more of them, the one I got is particularly relevant, but to the extent they're more than -- they go to the heart of the case. I mean, they're clearly discoverable.

And for Ms. Scharfstein to say I got to make another motion to compel, I don't, Your Honor. It's -- this is covered

by the one that I made.

And you know the language Ms. Scharfstein has responded, again, I don't know that there are more notes, but I'm assuming that there are because if there are no more notes that are responsive to my actual request, I expect I would have been told that.

So I'm assuming there are more notes. They're clearly responsive to what I'm looking for. And as I say, Your Honor, that's our dispute. I think that's a quite narrow one. And -- but that's what it is.

THE COURT: Okay, so let me just -- and Ms. Scharfstein, I will come back to you to reply to the extent that you would like to, but let me just say that I am not going to encourage additional motion practice at all.

And we're going to deal with this in the next 11 minutes because I have a 10:00 a.m. settlement conference.

And I think that the relevance arguments here are valid ones, but Ms. Scharfstein, I will give you an opportunity to respond, although I will tell you that it likely going to result in production of more of the notes that have been produced, but go ahead.

MS. SCHARFSTEIN: Your Honor, my problem with this is that I have very little understanding of what Plaintiff's counsel has just said.

It's based on a lot of unjustified assumptions. It's

very long and convoluted. None of it was discussed at the last conference.

And I don't know why that is because Plaintiff's counsel spoke for a lengthy period of time. And I don't know what he wants. And I need a clear direction as to how to respond.

It is really not a good use of my office's resources to be having to do this in a series. And I would like to know where in the record the Court specifically directed me to produce the documents, whatever they may be, that Plaintiff's counsel is describing in such a way as I do not even think I can apply that to any review of documents.

In addition, I do not see this as encompassed between the last motion. I appreciate the Court's desire to avoid unnecessary motion practice. And it is not particularly my desire to engage in further motion practice, but that's my client's right under Rule 37.3.

And I really don't have any assurance that we're not going to come back for a third round or a fourth round because this request continues to morph and it's really unclear what it is.

THE COURT: Okay. So, look, here's what I would say. Mr. Macgiollabhui, and Ms. Scharfstein again, I'm not encouraging motion practice, but Mr. Mcacgiollabhui, if you could write what it is that you want from these notes, perhaps

that could change things, although I -- it seems to me that the notes are -- and you're right, Mr. Macgiollabhui, there are more pages of notes than what you received, but it's not a voluminous production at all.

And quite frankly, Ms. Scharfstein, I commend your ability to read the handwriting in those notes. It was a challenge for me to do that.

So perhaps then the solution to this is that if there's a specific ask that you have, Mr. Macgiollabhui, that you, yeah, put that in a letter, not a letter motion, but put it in a letter.

Talk about it with Ms. Scharfstein and put it in a letter because if there's confusion about what should and shouldn't be produced, then it's hard for me to order production.

MR. MACGIOLLABHUI: Yes, well, Judge, that --

THE COURT: And Mr. Macgiollabhui, I would note that you have made arguments about information on the witness tampering being relevant. And you're speaking about your client's son as well as M.T. or anyone else, who would be encompassed in that.

But to the extent that you wanted anything else from the record, because the whole point of this is to get to depose Detective Litwin.

MR. MACGIOLLABHUI: Right.

THE COURT: The whole point of this is to have the records to be able to show to him that is to refresh his recollection or his independent evidence of witness tampering or of the investigation that he may have conducted.

So you need to be able to talk with him about it, but I need to understand and I think Ms. Scharfstein needs to understand exactly what it is you are looking for.

Because the notes, as cryptic as they seem to me, appear to involve things that may not be relevant to those requests. So, you know, that's why I'm --

MR. MACGIOLLABHUI: Your Honor, you -- here's the thing. You have stated there are various things to what I'm looking for. I've stated I said it repeatedly to Ms. Scharfstein I want notes relating to witness tampering in relation with M.T. and Kellner. That's it.

And I don't have -- I've been saying this and the email correspondence began on July 15th. So I keep asking for it and I get responses from Ms. Scharfstein --

THE COURT: Yeah.

MR. MACGIOLLABHUI: -- along the lines of I don't know what you're talking about. When did you ask for this.

THE COURT: Hang on, hang on, hang on, hang on. That was a one declarative sentence of what you want.

MR. MACGIOLLABHUI: Right.

THE COURT: Ms. Scharfstein, is that unclear to you?

MS. SCHARFSTEIN: I think it should be put in writing and it should be stated as exactly as Plaintiff's counsel just said it, so that it doesn't change again.

THE COURT: Why don't you just order the transcript because it will say?

MS. SCHARFSTEIN: Okay, but when -- I can't order an expedited transcript so it may take some time to get it. And in addition to that, I thought that the issue of Detective Litwin's deposition was an issue still to be addressed by the Court?

THE COURT: Well, we had to get through the notes first. We have to get through the notes because that was sort of the precursor to the deposition and whether or not the information would be available to actually depose him.

With respect to the issue of whether or not -- are you saying the issue that I needed to get to was whether or not he was going to be deposed at all?

MR. MACGIOLLABHUI: That was more the understanding, yes, because he was not -- he was not involved in the Plaintiff's prosecution.

THE COURT: Right, this is all relating to any potential witness tampering that may have occurred.

MS. SCHARFSTEIN: And that would have affected Plaintiff's prosecution how is my question -- I mean, it's a rhetorical question. Obviously I'm not --

THE COURT: Right. I don't know is my answer, but Mr. Macgiollabhui?

MR. MACGIOLLABHUI: Yeah, and I can give a succinct answer to that, too. The things that he was investigating in terms of witness tampering and payoffs to victims and being conducted by and on behalf of the child molester are the exact same things for which my client that a year later was indicted.

So the case is -- I mean, the heart of the case is the fact that the D.A.'s office was well aware that this was taking place, but it wasn't being done by my client. It has been done by --

MS. SCHARFSTEIN: There's no evidence that that Detective Litwin was involved in that or had any communications with District Attorney Hynes, who was the only party who's conduct is in issue. That's the point.

MR. MACGIOLLABHUI: Your Honor, let me respond to that. Obviously, we're not claiming that Detective Litwin communicated directly with D.A. Hynes, but there's evidence -- there's substantial evidence in the case from prosecutors within the D.A.'s office that he communicated with them.

And there's a chain of communication within the D.A.'s office. So as it were, he's at the beginning of the chain. We're not going to be able establish that he tells D.A. Hynes this directly.

But this has all been -- this is all in the record. The depositions have been conducted that the information that was being received by sex crimes and including that from Detective Litwin is going to as it were the chain of command all the way up to Hynes. So --

MS. SCHARFSTEIN: Your Honor?

THE COURT: I recall that we started down this road at the last conference. And then, sort of that detoured momentarily by the issue of the note.

So go on, Ms. Scharfstein.

MS. SCHARFSTEIN: I was just going to say I believe that's misrepresentation of the record. That is not what the witnesses testified to that there was a chain of communication certainly.

And I don't understand -- I don't know what Plaintiff's counsel is getting this from because it's certainly not the record in the case.

In any event, I appreciate that the Court has to go. Thank you very much for your time. I guess the only other issue we need to address at this point is scheduling if the Court wishes to do so quickly, because we currently have a discovery deadline in two weeks.

THE COURT: Right, well, that's obviously changing. I mean, you -- what -- we still have this issue of the production of the notes. And then, we have the question of the

deposition of Detective Litwin, which yes, I am inclined to permit in a limited scope because, Mr. Macgiollabhui, you are over your -- you are over the number of depositions.

MR. MACGIOLLABHUI: No, I know but Your Honor he was number 8. He was within the 10. The reason I obviously we haven't -- I haven't been able to depose him yet is because of his notes. He was on my -- he was number 8 on -- in terms of the order in which witnesses were subpoenaed.

MS. SCHARFSTEIN: Your Honor, he's number 14.

MR. MACGIOLLABHUI: He hadn't been deposed yet, but he was number 8 in terms of, you know, he was -- he's a particularly important witness.

I haven't got to him yet because of the notes, but he was meant to be deposed originally back in July. That's when he was subpoenaed.

I think it was July either 12th I think it was adjourned then to the 19th. And then, it was adjourned because of the dispute over the notes.

THE COURT: Okay.

MS. SCHARFSTEIN: Your Honor, I respectfully disagree with that. It's number 14.

THE COURT: I know.

MS. SCHARFSTEIN: Plaintiff's counsel.

THE COURT: I know. I know. I know. So here's where we are.

Mr. Macgiollabhui, I heard what you said in terms of your ask. Ms. Scharfstein heard what you said in terms of your ask.

If I can repeat it is that you want notes relating to Detective Litwin's investigation of witness tampering with respect to your client's son M.T., the third victim. And is it any others, Mr. Macgiollabhui?

MR. MACGIOLLABHUI: No, those (indiscernible) would be it, Your Honor.

THE COURT: Okay. Okay, Ms. Scharfstein, I think that that's specific enough to you to be able to review the not really long -- if it's not voluminous, cryptic handwriting, yes, but not voluminous to review the notes and be able to produce notes that are responsive.

MS. SCHARFSTEIN: Okay, so just to be clear, it's just on the subject of witness tampering, whatever that may mean.

And it relates to those Litwin's investigation of witness tampering with relation to those three people.

And witness tampering defined as offering money as a parent counseling their child as to how to respond to a situation? Is that within the scope of witness tampering? If a parent were to say I'm concerned about your future, so I want to talk about whether you should testify?

THE COURT: Are you asking me or are you asking Mr.

Macgiollabhui?

MS. SCHARFSTEIN: Well, I don't know. I mean, I don't -- at this point, I --

MR. MACGIOLLABHUI: Yeah, Judge, I don't have the (indiscernible).

MS. SCHARFSTEIN: What the -- what we're doing -- I need to do. So I guess the question is directed to the Court because ultimately it's the Court's decision.

THE COURT: Okay. Then, I'm going to turn to Mr. Macgiollabhui because witness tampering, yes, has a legal definition. And so when you say witness tampering, Mr. Macgiollabhui, what are you referring to?

MR. MACGIOLLABHUI: So, I mean, obviously, I'm referring to the legal definition, but in terms of again I don't have the notes and I haven't deposed Detective Litwin, but the -- what we know and the reason M.T. is featured prominently in this is because what we otherwise know about what was going on.

So the effort was being made by and on behalf of Mr. Lebowitz. The effort took a number of different forms. So there were payoffs. There were threats made. There was the removal of M.T. from the country.

A lot of it took place through family members of M.T. So his father was involved and his brother was involved.

Now I -- you know, in terms of all the forms it took,

I don't know if there are more than those three forms, but obviously, if you have, you know, we have -- and Ms. Scharfstein can say what she wants about the record, but all of this will, you know, will come out in the wash in terms of summary judgment.

But there are checks from people acting on behalf of Mr. Lebowitz to both M.T.'s father and his brother.

Now did -- you know, I don't know I know if the notes reflect either or both of them then telling M.T. you shouldn't testify at trial.

We know -- we've an affidavit from Detective Litwin where you know, M.T. tells Detective Litwin according to Detective Litwin that he had been told by his father and his brother that he shouldn't speak --

THE COURT: Well, Mr. Macgiollabhui, I don't want to run through the whole record. What I think --

MR. MACGIOLLABHUI: Right.

THE COURT: -- what needs to be clarified is when you say witness tampering, what are you referring to?

MR. MACGIOLLABHUI: I'm referring to the efforts being made to stop M.T. testifying at Mr. Lebowitz's trial.

MS. SCHARFSTEIN: So how does --

THE COURT: Right, including, right, I got you, Ms. Scharfstein, including payment to M.T. or any of the victims or their family members?

MR. MACGIOLLABHUI: Right.

THE COURT: Written or oral statements to them that they should not participate or otherwise testify? Is it something as innocuous as a parent saying to a child so think about your future. I don't know that you should testify. Are we talking about things like that?

MR. MACGIOLLABHUI: Well, there's nothing -- yes, possibly because it's all about context, Your Honor, in that it's family members --

THE COURT: Okay. All right, all right, all right. Sorry.

Ms. Scharfstein, does clarify what it is you'd be looking for in terms of witness tampering?

MS. SCHARFSTEIN: It defines very broadly certainly broader than the legal definition, but how does that apply to the Plaintiff's son, who is never going to testify or the third victim who did testify?

THE COURT: I think, Ms. Scharfstein, you're continuing to contest relevance. What I've done is narrowed down the scope of the request and clarified what it is that is being sought.

I believe that this information was relevant and that it should be turned over. So please review the notes and turn over this information.

And I'll give you a date by which to do that. I'll

also have to give you all dates for additional discovery because as Ms. Scharfstein has pointed out, there's also defense depositions that need to happen.

Okay. Now the current discovery end date is October 31st. That is clearly going to be extended.

We have one deposition scheduled for November. We have -- I'm assuming, Ms. Scharfstein, that your depositions are going to be also scheduled later in November and December. Is that a fair statement?

MS. SCHARFSTEIN: I think it's probably more likely in December, because it sounds as though Plaintiff has three depositions to take place in November. I am planning to be away for one week and then there's a holiday week.

I can do depositions the beginning of the Thanksgiving week, but I'm not -- I'm anticipating that we'll be hearing that the witnesses are not available.

THE COURT: Sure. Well, I -- before this, thought that based on what we had discussed at the last hearing, I anticipated that discovery was likely going to have to extend to January based on the number of depositions that Mr. Macgiollabhui has indicated and the depositions that I know that you still need to do.

So I am going to set a date in January for the end of discovery. And if there's any objection to that, please let me know.

MR. MACGIOLLABHUI: That's fine, Your Honor.

THE COURT: Ms. Scharfstein?

MS. SCHARFSTEIN: I don't have any objection to a January date that I'm aware of right now.

THE COURT: Okay, fair enough.

MS. SCHARFSTEIN: I certainly hope that it will be -- it will not need to go on longer.

THE COURT: Same, same. I think that that's ample time and it allows for the holidays, it allows for scheduling, and it allows for all of the depositions that need to happen.

So why don't we say January 12th in light of what has been discussed? But folks, you know, I -- again, I don't want to be having an hour long conversation in December about the fact that discovery needs to be extended into March.

I just don't think that it's required. I think getting through a lot of the paper discovery was a big hurdle. There seemed to be this outstanding issue of the notes and I am going to come back to a date for those, Ms. Scharfstein.

MS. SCHARFSTEIN: Sure.

THE COURT: But we're really just in depositions now. And unless the parties believe that there's going to be any expert discovery?

MR. MACGIOLLABHUI: No, Your Honor, I don't anticipate on my end.

THE COURT: Okay, Ms. Scharfstein?

MS. SCHARFSTEIN: I'm not -- I have no reason to believe there will be at this time.

THE COURT: Okay. And then just dealing with the close of discovery, all discovery with no anticipated expert discovery. So we'll make that January 12th.

In terms of the notes, Ms. Scharfstein, I gave you until October 31st to produce the notes as has been defined during today's conference.

Is that something you can do?

MS. SCHARFSTEIN: I --

THE COURT: I hope the answer's yes.

MS. SCHARFSTEIN: I think that's fine yes, thank you.

THE COURT: Okay. October 31st for the production of the notes as stated on the record today and the fact discovery January 12, 2023.

And then, let's set another status conference for December. I know that you all will be busy with depositions, but I think it's helpful for us to check in before things go any further.

So why don't we look at a date in early December? December 12th at 10:00 a.m.?

MS. SCHARFSTEIN: That's fine with me, Your Honor.

MR. MACGIOLLABHUI: Yes, that's fine with me, too, Your Honor.

THE COURT: All right, so December 12th, 2022 at

10:00 a.m. We keep having these lengthy phone conferences. And part of me wants to say come in person, but let's just keep on the phone. December 12th at 10:00 a.m. by phone. And with that, is there anything else, Mr. M.?

MR. MACGIOLLABHUI: No, that's it. And, Your Honor, thank you very much for your patience and the time you spent this morning. Hopefully, we're not going to take up as much of your time again.

THE COURT: Okay, thank you, Mr. M.

Ms. Scharfstein?

MS. SCHARFSTEIN: No, thank you.

THE COURT: All right, with that then, we are adjourned and I will talk to you all in December. Everyone, have a great Thanksgiving.

MS. SCHARFSTEIN: You, too.

MR. MACGIOLLABHUI: You, too, Your Honor.

THE COURT: Okay, thank you, bye bye.

(Proceedings concluded at 9:28 a.m.)

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_________________ October 20, 2022

Chris Hwang Date

Court Reporter