UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SAMUEL KELLNER, * Case No. 17-CV-1268(NRM)

Plaintiff, * Brooklyn, New York
February 16, 2023

v.

THE CITY OF NEW YORK, et al.,

Defendants.

* * * * * * * * * * * * * * * *

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE MARCIA M. HENRY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff: NIALL MacGIOLLABHUI, ESQ.
Law Office of Niall MacGiollabhui
171 Madison Avenue
Suite 305
New York, NY 10016

For the Defendant: SUSAN P. SCHARFSTEIN, ESQ.
New York City Law Department
100 Church Street, Room 6-119
New York, NY 10007

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, CT 06484 (203)929-9992**

(Proceedings commenced at 9:05 a.m.)

THE COURT: Civil cause for status conference in case no. 17-CV-1268, Kellner vs. the City of New York, et al.

As a reminder, pursuant to Local Civil Rule 1.8, the parties may not independently record any court proceedings. The transcript of this proceeding may be ordered from the clerk's office.

That being said, counsel for plaintiff, please state your appearance.

MR. MACGIOLLABHUI: Niall MacGiollabhui for plaintiff. Good morning, Your Honor.

THE COURT: Good morning.

THE CLERK: Counsel for the defendants, please state your appearance.

MS. SCHARFSTEIN: Yes, it's Susan Scharfstein for defendants. Good morning, Your Honor.

THE COURT: Good morning.

So let me start off first by saying that I have to stop this call at exactly 9:27 a.m.

I think we can get through what we need to get through but I just need to say that at the outset.

Since our last status conference in December, there have been a couple of motions to compel, extend discovery, all of which have been granted.

So the primary purpose for today, in my mind, was to

find out which depositions have been completed, which depositions remain.

And I'm going to start with Ms. Scharfstein because you were in the process of doing the plaintiff's deposition most recently and other witnesses.

MS. SCHARFSTEIN: Yes, Your Honor. Thank you.

So I -- there have been some troubling developments with discovery in this case and in particular with what transpired during plaintiff's deposition and the aftermath of that and the applications to the court.

I had hoped to make a record of that during this conference, recognizing that the court has limited time. I don't want to take more than my share.

But I do -- I will try to just say some things briefly to give the court perspective on what's happened and where we are.

So as I had previously indicated to the court and opposing counsel, my goal was to take plaintiff's deposition first and then other depositions only as necessary, and the goal was to streamline the discovery and to conserve resources, which is a matter of some importance to us because these deposition transcripts can be very costly and the depositions are time consuming.

I served subpoenas for additional depositions, and that was primarily to set dates to avoid potential scheduling

issues and I understood that plaintiff wanted that done and we were trying to comply with the schedule that had been set by the court.

Unfortunately, plaintiff's deposition did not go as expected. There was no ability to proceed in any reasonable manner. There was filibuster that went on for hours. There was suggestive objections. There were unfounded claims of privilege. Many of the answers were non-responsive to the questions, which required me to repeat questions.

At times plaintiff would acknowledge that his answers were based only speculation and surmise, which required additional questioning to clarify what he knew and what was guess work.

This went on throughout the first day of the deposition and obstructed any reasonable progress in questioning plaintiff.

When we concluded for the day my understanding was that we were going to continue for a second day and that plaintiff's counsel was going to address this with his client.

Unfortunately, on the morning of the second day of the deposition on January 30th there had been no improvement.

I initiated a call to the court, initiated Your Honor's individual rules of practice, which direct the parties to call the court immediately when there's a conflict that can't be resolved. And I didn't see that it was practical to

continue in the same manner for a second day.

I was unable to obtain the court's assistance and I felt that I had no choice but to continue in the same manner, given that there was a court order in place that the deposition had to be completed that day.

The next day I wrote to the court seeking an additional session to try to make up for the lost time. Plaintiff made it a condition of his consent that I not fully communicate to the court what had transpired during the first two days.

Plaintiff insisted on reviewing my letter twice to ensure that he was satisfied with it and just agreed because I wanted the issue resolved and I was hoping to avoid presenting another dispute to the court.

Much to my surprise, late that night on January 31st, plaintiff files his own letter applications seeking limitations on the continued deposition, namely, a limitation of three hours and also limiting defendants to "areas of inquiry not already addressed."

And counsel failed to inform the court that I told them I wouldn't agree to a limitation and that really should, in my view, have been before the court and no limitation on subject matter had ever been raised with me.

So I then calendared a response for seven days, as provided in the court's individual rules of practice and there

was a ruling two days later on February 2nd. So I had no opportunity to respond.

So now we're left in an untenable position. I would have to expect based on what previously transpired that a three hour clock is going to be run out with lengthy, non-responsive answers that are not based on fact, but are based on surmise, as has happened before.

And there's also an open question as to how any disagreements over whether the topics have already been addressed would be resolved.

In addition, if we didn't get an answer to a question on day one or day two, the subject matter limitation is basically going to assure plaintiff that we'll never get an answer to the question. So that's problematic as well.

And, you know, there has been the possibility discussed of depositions of criminal defense counsel. In our view, there's no doubt that defendants are entitled to those depositions.

The criminal defense attorneys, and there are two of them, were percipient witnesses to the event of which plaintiff complains in this lawsuit, the communications among the actors and the information flow with the D.A.'s office, the witnesses, the media.

Plaintiff took seven depositions of assistant district attorneys and two depositions of defense attorneys in

this case.

We routinely take the depositions of criminal defense counsel on Section 1983 cases to elicit facts about the sequence of events, the communications with the D.A.'s office and witnesses, what was known to who and when and other non-privileged matters to go directly to plaintiff's claims.

There was questioning by plaintiff in this case in the depositions of least two assistant district attorneys concerning their interactions with defense counsel.

In at least two of those depositions, the Batsedis (ph) deposition and the O'Donnell deposition, there was back and forth between plaintiff's counsel and the witness concerning communications with plaintiff's counsel when he was criminal defense counsel in the underlying criminal matter.

Also during plaintiff's deposition I tried to elicit some of these facts that may have been --

THE COURT: Ms. Scharfstein --

MS. SCHARFSTEIN: Hi.

THE COURT: I'm sorry. Are you referring to Mr. MacGiollabhui?

MS. SCHARFSTEIN: Yes, he was criminal defense counsel, along with Mr. Michael Dowd in the underlying criminal prosecution.

THE COURT: Okay. Go ahead.

MS. SCHARFSTEIN: Okay. So I was just saying I also

wanted to note that during plaintiff's deposition, we had tried to elicit some of this information to the extent that it may have been known by plaintiff, and plaintiff's counsel took the position that we not entitled to the inquiry because plaintiff might have learned of the events through their counsel and, therefore, in his view, those matters were privileged. So we couldn't get the information there.

And it's really problematic for us because we're concerned about -- again, about the cost of the transcripts and whether the witnesses will cooperate and what remedies we may have if they don't.

And we're greatly concerned that -- I mean, plaintiffs we know got 14 depositions in this case. We're concerned that we will, in effect, get zero.

So, you know, I'm not sure what to do going forward, I guess is the short answer.

We would like to have more time for questioning of plaintiff. There are some documents outstanding that we were just recently provided releases for and we would like those documents. We would like an opportunity to get the transcripts and see if we can make any productive use of the time, given the limitations that we're faced with.

THE COURT: Okay. So you're presenting to me the concerns. What are you asking me specifically to do?

MS. SCHARFSTEIN: Well, at this point, you know,

given where we are and that we have the three hour limitation and the subject matter limitation in place, what I think I need to do is get the documents. And we had planned tentative dates in mid-March for this deposition.

But what I would like to do is get the transcripts, review the transcripts, get the documents. I don’t know how long that will take because that’s out of my control. They’re in the hands of third parties. There’s a criminal history. There are the medical releases. And we submitted those releases for records.

I guess I want to defer a decision on whether I can make use of that time.

THE COURT: Make us of --

MR. MACGIOLLABHUI: I --

THE COURT: Mr. Macgiollabhui, just a minute.

MR. MACGIOLLABHUI: Excuse me.

THE COURT: Make use of the three hour time you have?

MS. SCHARFSTEIN: That’s what I’m left -- that’s my understanding of what I’m left with, yes.

THE COURT: Okay. It’s just a little difficult for me to understand what you would like me to do. You’re not asking me for more time. I haven’t heard you ask for more time, but you’re trying to figure out what to do with the time you actually have been given?

MS. SCHARFSTEIN: Well, I guess that's the answer. I mean, candidly, I don't want a three-day deposition. That is very costly for us. Those transcripts are at least $1,000 day. So I don't want to prolong this. I am not happy with the three-hour limitation, but I understand that's in place. I don't even understand the subject matter limitation.

I mean, if the court is willing to give me more time, that's fine. If the court is willing to revisit the subject matter limitation, that would be even better, but I don't -- I want to get the deposition done. I don't want to need another full day of questioning because I'm faced with the same circumstances where I have to go around in circles to get a simple answer to a simple question.

And I don't know if that's something that the court can assist with.

THE COURT: Well, that's what I'm trying to determine. And Mr. MacGiollabhui, I know that you would like to be heard on this issue.

MR. MACGIOLLABHUI: Very much so. Very much so, Your Honor. Very much so.

THE COURT: I would just say as an initial matter, the plaintiff is the person who has brought this now nearly six year old case, understanding that there was some level of delay given that the primary defendant's (indiscernible) had to be substituted, et cetera, et cetera.

But at the end of the day, the plaintiff is the primary witness. There's been a lot of other discovery that has happened and if your client is sworn under oath, Mr. MacGiollabhui, then he has an obligation to answer the question as directly and succinctly and to the best of his ability that he can.

MR. MACGIOLLABHUI: Judge, this is completely unfair.

THE COURT: Let me finish. Let me finish. Let me finish, because this would apply to any witness, but specifically applies to the plaintiff.

So I'm putting it on record that this is the duty of a sworn witness at a deposition. Whether or not you agree that your client followed those instructions and fulfilled that duty is another story.

That doesn't change that I'm now putting on the record that that's his duty.

Go ahead, Mr. MacGiollabhui.

MR. MACGIOLLABHUI: That's fine, Your Honor. I certainly would agree entirely with what Your Honor's put on the record.

But the account that Ms. Scharfstein has given is almost completely false. And what is happening in this case, Your Honor, is that Ms. Scharfstein refuses to engage with me. And every time we have a conference, I ask for us to go

through the issues in advance, because I have consented to nearly every request she had made.

I have accepted subpoenas. I have changed my own schedule I don't know how many times to accommodate hers and yet every time we have a conference I'm told no, I'm going to bring it up with the judge.

And every time the same thing happens, which is that Ms. Scharfstein has pre-prepared accounts that -- now on previous occasions I'm not going to go into. But on this occasion is almost completely false.

And I will say this to Your Honor. I have the transcript. The transcript from the first day of plaintiff's deposition was made available a few days ago and I went through it.

Ms. Scharfstein asked 931 questions on the first day. She's at 11 hours of questioning.

I interposed eight objections. That's it. Eight objections. It was one long answer. And I said to her immediately, I said Ms. Scharfstein, I agree that is a very long answer. Whatever the time it took, you can add it on at the end.

Even though we had 11 hours I said to her, look. If you need a little bit more time, that's no problem. If you need to go into a third day, that's no problem.

I have been accommodating to a fault, and yet it

seems that no matter how accommodating I am, I am still faced with these false allegations, this attempt to create a false impression that my client is somehow not being cooperative.

And Your Honor I would say this. You know, I've brought this up before because Ms. Scharfstein has on previous occasion with regards to Mr. (indiscernible), where she put allegations or statements on the record that were simply false. And that's happening again here.

Let me say this too in terms of the depositions. So I had accepted service of subpoena for my client's son who is in Canada, his wife, myself and Mr. Dowd.

His son's deposition was meant to take place today. He traveled here from Canada for the deposition. It was cancelled two days ago by Ms. Scharfstein. His wife took time off from work on February 6th. She came to me on two occasions to prepare for it.

On the Friday afternoon at about 3:00 p.m. I got an email. Now the email had no content. It was just a subject line email. Deposition cancelled.

Ms. Scharfstein speaks about documents. I gave her releases two years ago. One of the releases -- I gave her three releases for medical records. Only one of them was sent out. I gave her releases for his arrest records.

Now during the course of the first day of he deposition, there was some doctors he had seen more recently

and it appeared that maybe the release that he had signed -- I think it was five or six years ago, at the very outset of the case, may not have accomplished everything that Ms. Scharfstein is looking for.

So I said to her, give me the additional releases. They were signed immediately. And if you need more time because you didn't have documents that you should have, I have no problem with extending your time to do so.

I say this too, Your Honor. I don't have a particular -- I'm not going to hold Ms. Scharfstein strictly to the issue of the subject matter, but one of the problems during the 11 hours of questioning is on the second day I don't know how may times the exact same question was asked that was asked the day before.

And, again, in certain circumstances, that's quite fine, but it was happening so often that I said to Ms. Scharfstein, Ms. Scharfstein, you keep asking the same questions. And she said to me, well, I can't quite remember what I asked on the first day. I said okay. I mean, it's your deposition.

But the idea that my client is not being cooperative, or that he's not fully answered questions is simply untrue.

And, Your Honor, to the extent that this continues, you know, I don't want to waste the court's time with

unnecessary briefing and motions.

And let me say in this regard, we spent a lot of time with Detective Litwin's notes last year. What the court doesn't know, and I'm going to tell the court now, we had two rounds of motion practice.

The first round resulted in the production of an additional pages of notes. That was fine. I asked Ms. Scharfstein do I have everything now. And she refused to answer the question, leading to a second round of motion practice. Then there were further documents supposedly produced pursuant to this court's order.

It turned out the additional documents that Ms. Scharfstein wouldn't confirm that I had been given, I had already had them all. All the documents that were supposedly in dispute during the second round I already had all of them.

So it was a complete waste of everybody's time and it seemed to me at that time -- I said to myself, you know, maybe it's a genuine mistake on Ms. Scharfstein's part.

But at this stage I'm past the point of believing any of these mistakes are genuine. This is all about trying to create a false impression about delay, about provocation, about trying to keep pushing at the time.

Ms. Scharfstein says she may only have one deposition of plaintiff. There were two depositions that were ready to go. I have my client's son, who let me say is a --

you know, the reason this all began is because he was abused sexually as a child. He's beyond upset at the fact that he had to take time off work in Canada. His wife is in Canada pregnant. He had to travel down here. And Ms. Scharfstein cancels the deposition at the last minute, even though I don't know many times I told her last week, he's traveling from Canada. Can you please let me know after plaintiff's wife's deposition being cancelled at the last minute, whether or not you're going ahead.

And she said no, I'm still thinking about it. And I said okay. Well, look. It's too late now. He has to travel. At least let me know this week so I don't have to do unnecessary preparation like I have to do for plaintiff's wife. So there is upmost bad faith.

And I think you can tell, Your Honor, from the tone of my voice that I'm -- I feel in a way that I'm playing into the hands of what's been attempted here, which is rather than just proceed with the case, finish out discovery and get summary judgment, this is an attempt to muddy the waters, delay the thing and try to create this false impression that my client is somehow not being cooperation.

And let me say too in terms of myself and Mr. Dowd, I don't -- the prospect of our depositions was brought up about a year ago.

And I said, okay. Well, I said I don't think you're

going to be able to take my deposition. I think the law is quite clear, unless you have a very specific need. Whatever Mr. Dowd -- I don't know.

But can you let me know what the need -- respective needs are and I'm happy to address it and if it's appropriate -- you know, I've already accepted subpoenas. We'll submit to depositions.

To this point, Ms. Scharfstein has not been able to indicate anything suggesting a need for either deposition. And here we are -- they're actually scheduled, Your Honor. Mr. Dowd's is meant to take place on Thursday. Ms. Scharfstein is refusing to confirm whether or not it's going ahead.

Mine is meant to take place on March 1st. The same thing. So everybody is left in limbo and considering the last two were cancelled at the last minute, I'm sure the same thing is going to happen here. And that's not good enough, Your Honor. It's not good enough.

And I know we're about to approach 9:27, but this is completely, completely improper. Ms. Scharfstein is acting with complete bad faith.

And I will say this to Your Honor. It's all documented. We don't speak by phone. Everything is by way of emails. There are transcripts of the depositions. The truth lies there.

So to the extent that Your Honor wants to, again,

waste further time, because that is what we're doing, and get to the bottom of all of this, it's all documented. You don't have to take my word for it, or Ms. Scharfstein's word for it. Everything between us in terms of the depositions is documented. Everything in terms of our exchanges is documented.

And, again, Your Honor, I see we're at 9:27, so I'll stop at this point. But this is wholly improper what's happening here. Wholly improper. Ms. Scharfstein --

THE COURT: Hang on. Give me the last two minutes here because I have a 9:30 commitment and I'm trying to wrap this up in the last two minutes here.

First of all, I do think that we need to continue this conversation. And, in fact, are either of you available this afternoon, because it sounds like there is no deposition happening?

MR. MACGIOLLABHUI: Yes, we're both available.

MS. SCHARFSTEIN: What time would that be, Your Honor.

THE COURT: Some time after 2:00 p.m.

MS. SCHARFSTEIN: I have a meeting at 3:30. Could we get it in before then?

THE COURT: How's 2:30?

MR. MACGIOLLABHUI: That's fine.

MS. SCHARFSTEIN: 2:30 is fine. Thank you.

THE COURT: Okay. So at 2:30 this afternoon we'll reconvene and we'll put up a scheduling order to make sure you have the correct dial in information.

Now this doesn't mean that the next conversation is going to be an hour long. However, I think it's important to try to get this buttoned up today because I'm not sure what the word is to describe how I'm feeling about what's going on, but my ultimate goal here is to keep the case moving forward.

And I think a conversation this afternoon and perhaps some rulings on my part will aid in that.

So until then, we are adjourned until the second call today at 2:30 afternoon. Thank you both very much.

(Case adjourned at 9:28 a.m. and recalled at 2:35 p.m.)

THE CLERK: Good afternoon. This is the second call for case no. 17-CV-1268, Kellner vs. The City of New York, et al.

THE COURT: All right. Thank you, Mr. Castro.

Do we still have Mr. MacGiollabhui for the plaintiff?

MR. MACGIOLLABHUI: We do, Your Honor. And, Your Honor, I noticed there seems to be a background noise. I don't know if it's my line or if everybody's hearing the same noise that I'm hearing, but in case it's me I might try and join from a different line.

THE COURT: Okay. I do not hear any such noise. Ms.

Scharfstein, are you on the line?

MS. SCHARFSTEIN: I am. Good afternoon, Your Honor.

THE COURT: Good afternoon. Do you have the noise on your line?

MS. SCHARFSTEIN: No, I -- the court sounds a little bit muffled to me, but there's no background noise.

THE COURT: Hmm. Okay. Well, this is our same conference line. Mr. MacGiollabhui, are you able to hear the conversation?

MR. MACGIOLLABHUI: Yes. No, I'll continue. It's just when I joined it said there were five or six -- well, before you came on the line, Your Honor, five participants. So I don't know if there's -- I'm not sure what the issue is but nonetheless, it's simply in the background, so I should be fine to continue.

THE COURT: Okay. No problem.

This was a publicly docketed scheduling order so anyone could be on the line.

MR. MACGIOLLABHUI: I see.

THE COURT: All parties are present and are able to hear me and each other.

So, yes, we're on a second call continuing our discussion from this morning. And Ms. Scharfstein, you laid out your -- well, I guess the series of events since the last time we got together and your concerns regarding depositions.

And Mr. MacGiollabhui, you also laid out your view that the recitation by Ms. Scharfstein was not accurate. But here we are, because we need to move forward and I need to understand what else has to happen in this case and if it needs to be that I so order each deposition to prevent them from being cancelled, well, then that's what we'll have to do.

But the depositions have to be completed, because discovery has to be completed because you all need to move on to the next phase of this case, which will either be summary judgment briefing, a settlement conference or something else.

So I'm going to turn back to Ms. Scharfstein and one of my central questions from this morning is what relief, if any, you are seeking from the court.

MS. SCHARFSTEIN: Okay. Well, thank you. I can make a proposal as to what I think should happen, but it puts me in a little bit of difficulty because I said at the last conference and again earlier today, my goal was to really streamline the deposition discovery and that was premised on the cost to the city.

And we now have a couple of thousand dollars into deposition transcripts and that's of concern to us.

So I do want the option of not going forward with a deposition if I don't need it. And I do want the option of not continuing a deposition if it's not productive and I'm going around in circles and I'm just wasting time and money.

And I recognize that the court's ability to supervise what actually goes on in a deposition is very limited.

So here's what I would propose. With regard to the plaintiff, I would like to reconvene that deposition. I would like to have the transcripts of the first two sessions and some time to review them and the documents that are outstanding, because my goal would be to make that time productive and to not be asking the same questions again, because once I have an answer, that's all I need and I want to move forward.

And I would like to do it without time or subject matter limitation. I cannot imagine there would be any scenario in which I would want to go past a day at the most and more likely I would want it to be far less than a day. I just want the answers to my questions and I want the questions to be targeted so that the subject matter will be useful to my clients.

With regard to the two attorneys, I would like to go ahead with those depositions. I do not want to be accused of bad faith if I end the depositions because I'm not getting useful information or cooperation from the witnesses.

I understand that Mr. Dowd has some illness or injury and I don't know when that would be scheduled, but I would certainly want those depositions to be after plaintiff

so that they can be as limited as possible.

MR. MACGIOLLABHUI: Judge, can I -- I think we're going to have a much more productive session this afternoon.

THE COURT: Mr. MacGiollabhui, I was on mute. I was starting to speak.

MR. MACGIOLLABHUI: Excuse me. My apologies, Your Honor.

THE COURT: Sure. Ms. Scharfstein, you want to depose to two attorneys. You want to continue plaintiff's deposition.

For the plaintiff's deposition you want the transcript of the first sessions and you want the outstanding documents. Are these the documents that were mentioned during the deposition for which additional releases were executed?

MS. SCHARFSTEIN: Yes, the new documents that would be coming in. I already have the old ones, obviously and, yes, I would want the transcripts of both of the prior sessions of the deposition of plaintiff.

THE COURT: When -- can you just remind me of the dates of the prior session?

MS. SCHARFSTEIN: It was January 25th and January 30th.

THE COURT: Okay. And then for the attorneys you want -- actually, let me stay with the plaintiff.

You want to continue the deposition. You don't want

a full seven hours, but the four hours -- excuse me. The three hours that I had previously given you is not enough time.

MS. SCHARFSTEIN: Well, Your Honor, it's hard to know exactly how much time is needed. You know, if the deposition were to continue in the same manner as the previous sessions, I don't know what I would do. I certainly wouldn't want to continue in that manner, but that three hours would be run out very quickly without much happening that's productive.

So if I needed a little more time, in view of the circumstances here, I wouldn't want to be limited.

THE COURT: Okay. I still don't have an answer, but I'm going to move forward.

For the two attorneys, you want to proceed with deposing them, but you also want to be able to stop if you think that they're not answering your questions.

MS. SCHARFSTEIN: Well, I'd want to hear what plaintiff has to say. I believe that he will not know all of the answers to the questions, so that the depositions of the two attorneys will be needed.

I do not want a deposition where a witness is not cooperating and I'm not getting information. So yes, I would want the option to end the deposition if I find that it is not a productive use of my client's resources.

I mean -- I'm sorry. Maybe I'm not being clear. I

want the depositions. I just don't want -- I mean, there have been allegations of bad faith here that I cancel depositions and I thought I had been clear at the beginning that the plaintiff was the primary deposition and I was scheduling the other depositions just because of the practicalities of the situation and we needed to have dates in place.

If I took the -- I'm sorry. I didn't mean to interrupt.

THE COURT: Go ahead.

MS. SCHARFSTEIN: I was just going to say, if I took the deposition of one of the attorneys and that was satisfactory for my needs, I don't see a reason to go ahead with the second deposition.

But I believe that the two attorneys were involved in different aspects and they may know different things, and I'm not -- it's not clear to me at this point what areas each of them were involved in.

THE COURT: Well, do you need a full day to depose each attorney?

MS. SCHARFSTEIN: I probably could do it in less than a full day. I'm not sure if it would be -- if I could do in less than half a day. It might go to three quarters of a day.

One of the difficulties I face is that I don't know these people. I know that some people answer questions more

directly. Some people give longer answers. It's very difficult for me to estimate an amount of time.

THE COURT: And besides the three witnesses that you have talked about, who else do you want to depose?

MS. SCHARFSTEIN: I'm not aware of anyone at this time.

THE COURT: Okay. Then what was the scheduling of the other witnesses, just to have them on the calendar. What was that for?

MS. SCHARFSTEIN: Yes, that was because I wanted to see what transpired at plaintiff's deposition, whether there might be any gaps that they needed to fill in.

THE COURT: So who were the depositions -- whose depositions did you cancel?

MS. SCHARFSTEIN: The plaintiff's wife and the plaintiff's son.

THE COURT: And you don't want to depose those people anymore?

MS. SCHARFSTEIN: I cannot use anymore City resources on this.

THE COURT: Okay. Because at the conclusion of this conversation, we are going to delineate exactly who the witnesses are going to be, exactly what the documents are that you're going to get and then everything else is not happening.

So if you're sure that you don't want to talk to

them, then that's fine. But once today the decision is made that you're only deposing the three witnesses that you discussed, you're not deposing anyone else.

MS. SCHARFSTEIN: Okay. Well, I understand the court's desire to bring this to closure. In the normal course of discovery, you start with one deposition and you try to find out what --

THE COURT: Ms. Scharfstein, don't tell me about the normal course of discovery, because the normal course of discovery has not been followed in this case.

There's been a lot of deposing that's been going on and I know that the parties at some point agreed that the plaintiff somehow would not be the first deposition in this case. But you're right, I am trying to bring this to closure and you've talked not extending resources.

So you had witnesses scheduled. You then determined that you didn't need them. So if we determine on this call who the witnesses are, then everyone can set their dates, they'll know that there aren't any other witnesses to come and then you all can then just depose the witnesses.

MS. SCHARFSTEIN: I understand.

THE COURT: Do you want other witnesses besides the two attorneys and the remainder of plaintiff's depositions?

MS. SCHARFSTEIN: No, I'll be satisfied with that.

THE COURT: Okay. Mr. MacGiollabhui.

MR. MACGIOLLABHUI: Yes, Judge. So let me just go through the points and turns. So Ms. Scharfstein mentioned --

THE COURT: Hold on. Hold on.

MR. MACGIOLLABHUI: Excuse me.

THE COURT: Hold on. It wasn't an invitation to respond tit for tat here.

MR. MACGIOLLABHUI: Oh, I'm sorry. I don't mean to do that. I think what I'm going to say is going to be productive in terms of -- I'm not looking back. I'm looking forward in terms of the logistics with regard to plaintiff's deposition and the two attorney depositions. I'm not --

THE COURT: Sure. Sure.

MR. MACGIOLLABHUI: We've said our pieces this morning and I don't intend to continue with that.

THE COURT: Let me ask my question. Let me ask my question, which is confirming that you do not need any further depositions.

MR. MACGIOLLABHUI: Yes. Confirmed.

THE COURT: Confirmed. No more for you. Okay. So we're down to three witnesses, one of whom is really a continuation of a deposition that has now had two dates and is heading to a third.

All right. What would you like to say, Mr. MacGiollabhui, that you believe will help to move this along.

MR. MACGIOLLABHUI: So in terms of plaintiff's

deposition Ms. Scharfstein had mentioned the transcripts.

So they're both available. I didn't get it this morning. I had been told that the one from the 25th was available. I got back in touch with Veritext, the court reporting company today, and I now have the two of them. So all transcripts are not available.

In terms of the other documents, yes, there were a couple of things that came up during the deposition. It's recent doctor's visits. So it's a handful of documents and along with that the release for my client's prior arrests that he signed I think it was five years ago.

It wasn't -- it didn't encompass everything that Ms. Scharfstein wanted so I agreed to give her another release to that effect.

But, again, whatever will come in response to it will be little, if anything.

And an issue I've had is -- and, again, it may better clarify where we stand in terms of documents. For example, my client's primary care doctor, for whom we'd given a release two years ago called my client this week -- or last week I should say, to say he got a subpoena for the record.

So I haven't got notice of that and I'd ask Ms. Scharfstein, look, even if I've given you a release, if you're serving a subpoena, you have to give me notice of it.

But in terms of the documents that will be

encompassed by the recent releases, I also offered this. You know, my client is willing to go to the doctor's office and get the records in question to the extent that it will move things along.

So I don't see any reason once they're diligently pursued, meaning that subpoenas, if necessary, are sent, the releases are sent. There's no reason -- they were given the releases on February 1st. There's no reason we wouldn't have them by the end of the month.

And then in terms of the time -- and, again, I'm not going to retread the ground from this morning, but I didn't get it. There were 900 plus questions on the first day. There were 1,400 on the second day.

And we agreed to a day. Then we agreed to two days. Then we agreed to 11 hours. Then I agreed to a third day. And in terms of the three hours, I have said this, and if you were to look at the transcripts, you'll see me repeatedly say to Ms. Scharfstein, look, if you need more time, within reason I will agree to it. And I've done that all along, and I will do that again on the third day.

You know, if Ms. Scharfstein tells me I need four hours, that's fine. I need five hours. That's fine too. Once it's within reason.

And my difficulty has been that the characterization of the way it has gone so far is, again, without repeating the

points from this morning, wholly inaccurate and it's very I find unfair. That was the word I used this morning, where I think we've been cooperative to a fault and to be then accused of uncooperative.

So in terms of the time and, again, in terms of the subject matter, you know, I've said this all along to Ms. Scharfstein, even though I was held strictly to my time limits. I'm not going to do the same with her.

And in terms of the subject matter, again, once it's not asking the same question over and over again from prior depositions, you know, I'm not going to nitpick on what was covered and what was not.

And, you know, my client -- one of the reasons that it is taking time is that he has quite a prodigious memory for what happened to him.

So most of the witnesses I deposed, understandably a lot of them couldn't remember a lot of what happened. But he remembers pretty much everything. So that -- and in fairness to all concerned, including Ms. Scharfstein, you know, that makes for a lengthy deposition.

And the irony here is that the person most frustrated at the length of time is me. My client is only too happy to answer her questions, however many they are.

But from my point of view, we're into a third day and I think what I said to Ms. Scharfstein this is not an open

ended commission of inquiry. There has to be some -- it has to come to an end at some point.

And so far there have been far too many questions that are just being asked again and again, not -- you know, not for strategic purposes. Just because, as I said, if you ask 2,500 questions, chances are you're going to repeat a few of them.

And then in terms of the other two depositions -- and now look. The bad faith in terms of my client's wife and son is that the day -- the second day of client's depositions, that's January 30th. His wife was confirmed that day. It's on the record that it would take place the following Monday. She took time off. I took time off from my other work to prepare and then we get an email at the last minute saying cancelled.

Something similar to with regard to my client's son who came here from Canada.

The issue with regard to the attorneys, that's myself and Mr. Dowd, is not going to be the same one. The issue there is that at least in terms of me, you know, what I foresee here is an attempt to disqualify me as counsel for plaintiff. That's the purpose of the deposition.

In terms of Mr. Dowd, you know, he's in his 80's at this point. I've spoken to him. I accepted service of subpoena. He had an accident recently which landed him in the hospital and then he was in a rehab facility when last I spoke

to him.

But he's ready, willing and able to be deposed. You know, he indicated that his recollection may not be a hundred percent because of his age and the passage of time, but he has no issue with being deposed.

Once the subject matter is appropriate, and you know, I've said this I don't know how many times to Ms. Scharfstein. There's a rule, Local Rule 26.4. We're supposed to engage on these issues, try and work things out.

I have agreed to, I think, every single request made of me in this litigation. And yet this morning and on prior occasions there's a refusal to engage and then I'm ambushed with a pre-written script containing things that are just not true.

And I would ask the court to ask Ms. Scharfstein to just engage with me because I don't know that she'll be able to point to a single thing, a single request that she's made of me that I've consented to because my -- you know, I'm happy to -- whatever she wants I told her she's welcome to.

I'm not going to object and -- unless -- and this is the point. During the plaintiff's deposition he was asked about conversations that he had with counsel.

And the position taken by Ms. Scharfstein if there's was factual matter relayed or exchanged in the course of those conversations, that was not privileged.

And my position, and it is the law, is that the facts themselves are not privileged, but they have to be elicited separate and apart from the privileged communication. You can't ask about a privileged communication -- well, you can leave it at the legal aspect. Just tell me about the facts. It's all privileged.

So my objection was simply you're free to ask them about those facts, but you can't do it via a privileged conversation.

So there was -- there were a few questions along those lines and a few objections. And my concern here is that -- with regard to Mr. Dowd -- again, there'll be an attempt to elicit privileged communications. With regard to me the same thing.

But more so that this is setting me up as somehow a necessary witness such that I have to be disqualified, even though I represented Mr. Kellner for a very long time. And you know in terms of the -- whether it's one or both, but in terms of Mr. Dowd -- I mean, all I have asked for for months now -- actually longer than that, because this was first raised as a prospect a year ago.

And I said look. If you can proffer to me a genuine need to take these depositions, which, again, is what the Second Circuit requires. They're not available on request.

Again, if you're deposing a party's attorney,

there's a particular sensitivity that applies there and even more so when it's acting counsel, or acting opposing counsel in the case itself.

But so far -- and, again, I think I've been very reasonable in terms of saying to Ms. Scharfstein, and I understand you want to depose plaintiff first, but we've had 11 hours so far. We've had 2,500 questions. There's nothing so far that would even remotely suggest that either my deposition of Mr. Dowd's would be appropriate in this case.

And my concern is this. Ms. Scharfstein wants to wait until the middle of March to resume plaintiff's deposition, which is fine in and of itself.

But then we're in a position where we have a very, very short window within which to address the issue as to whether my deposition or Mr. Dowd's should go ahead.

And what I have asked for over and over again is for us to engage on that issue now and see if we can reach agreement certain with regard to Mr. Dowd, which I think might well be possible.

And then at least we know, you know, where the dispute may lie. We can bring it to the court's attention and we can have it ruled upon rather than waiting, holding our breath for another month until plaintiff is deposed and then in a very compressed space of time between then and the end of March addressing this issue.

And again the theme is this. As with plaintiff's wife and his son, I mean, the rules require basic courtesy. And it is just completely -- I mean, let me say this. Obviously, this is not the first time you have squabbling attorneys.

You know, I am sure I have been unkind to Ms. Scharfstein and she has been to me, and all of that is fine. You know that goes with the territory at times.

But to do this to his wife and his child, after what his child was through and bring him here from Canada is utterly outrageous. It's outrageous.

And, Your Honor I don't want to belabor this but let me just say this point. I spoke to his son about it and I apologized. I said I'm very sorry that this has happened.

You know what he said to me? After -- because he was treated abominably by the system when he was molested originally.

And he blames himself for what happened to his father because it all started with his abuse.

Do you know what he said to me? He said because of what happened to him in the past, he doesn't expect anything from the system. And I'll be honest with you, Your Honor, it broke my heart to hear that.

And I said to him, you know, I didn't represent you back then but I represent you now and there's no way that I'm

going to tolerate to have somebody that I represent, a non-party in a case -- a child -- well, he's an adult now. But a survivor of a childhood sexual abuse to be treated in that way. It's outrageous, Your Honor.

And I'm very sorry to have to hear it, but it's the truth.

THE COURT: Okay. Let me just take a step back. You've both said quite a bit.

Ms. Scharfstein, let me just go back to the subpoenas that you -- you recently issued subpoenas to these third parties with documents?

MS. SCHARFSTEIN: I did issue a subpoena for the criminal records history.

With regard to the Rule 45 notice, my understanding is that all of our paralegals are trained and instructed to provide notice to opposing. I did not instruct the paralegal to serve subpoenas for medical records and I can only assume from what I've heard that that was a mistake.

THE COURT: Okay. Well, the mistake -- well, when was the subpoena for medical records issued, the one for which notice wasn't provided?

MS. SCHARFSTEIN: I wasn't even aware of it until plaintiff's counsel raised it. So I don't know anything about it. But it would have been presumably some time after he gave me the releases, which if I remember correctly, would

have been within several days after the second session of the deposition on January 30th.

THE COURT: All right. So some time in --

MR. MACGIOLLABHUI: It's not true that Ms. Scharfstein didn't know about this. I emailed her about it. She's well aware of it.

THE COURT: Mr. MacGiollabhui, stop.

MR. MACGIOLLABHUI: I'm sorry, Your Honor.

THE COURT: So Ms. Scharfstein, this would have been in the last two weeks.

So have you since emailed a copy of the subpoena to Mr. MacGiollabhui?

MS. SCHARFSTEIN: I have not.

THE COURT: Has anyone from your office emailed a copy of the subpoena to Mr. MacGiollabhui?

MS. SCHARFSTEIN: I am not aware of that.

THE COURT: That should happen today.

MS. SCHARFSTEIN: Okay.

THE COURT: Any other subpoenas that were issued without notice?

MS. SCHARFSTEIN: There certainly should not have been. And may I just inquire -- I have to find it. Was that for Mt. Sinai?

MR. MACGIOLLABHUI: No, I believe it's a doctor -- I think it's Jacobowitz. It's my client's primary care doctor.

So I had given three releases two years ago.

So is was Maimonides, Mt. Sinai and this doctor. I got a notice for Mt. Sinai and then Ms. Scharfstein provided me with a copy of the records when they were received.

But the other two I don't know if subpoenas were sent but I got no copies. And let me say too, Your Honor, there were three other releases for medical records given two weeks ago.

The whole purpose of giving them to her back then is so that she would send subpoenas pretty much right away and have the documents in time for the resumption of my client's deposition.

Now it's two weeks later and the subpoenas haven't even been sent yet.

THE COURT: Okay. Ms. Scharfstein, any subpoenas that been sent in the past two weeks to providers, or any other third parties, need to be sent to Mr. MacGiollabhui today.

MS. SCHARFSTEIN: Understood.

THE COURT: A --

MS. SCHARFSTEIN: I just wanted to make sure -- I'm sorry. I didn't mean to interrupt but I just want to make sure that I understand what he thinks happened so that no spots are missed. And I really didn't understand what he said.

THE COURT: Hold on. Hold on. Hold on. So there's

a lot of conflating of the past -- the further distant past with the recent past.

I'm talking about the fact that there were subpoenas issued after the second day of plaintiff's deposition, which subpoenas were not provided to Mr. MacGiollabhui in advance of them being served on the third parties.

Those are the subpoenas that need to be turned over today.

With respect to any releases for other subpoenas, to the extent that there are any subpoenas that have been served on any third parties that have not already been provided to Mr. MacGiollabhui, those need to be provided to him today because that is something that should have happened before the subpoenas were served on the third parties.

So now everything has to be done today.

MS. SCHARFSTEIN: I understand.

THE COURT: And no, you're not going to ask him which ones did you not get because that's nonsensical. Your records show which subpoenas you issued and there should be a record of having sent them to Mr. MacGiollabhui. He can't tell you what he didn't get if he doesn't know what was sent.

So that's point one. Point two, getting back to these depositions, while I understand that there were concerns about the depositions themselves, again, I am asking what it is that you all would like me to do about this, because I've

confirmed that Ms. Scharfstein wants to depose these two witnesses -- three witnesses. One of them being a continuation of plaintiff.

Mr. MacGiollabhui in theory doesn't appear to disagree with the continued deposition -- I'm sorry. He doesn't object to the continued deposition of plaintiff.

Plaintiff's deposition transcripts are available as of today for the previous two sessions, which was a large part of, Ms. Scharfstein, what you asked about, which is the ability to review the transcripts. Fine.

We're now getting to the bottom of the documents that have been requested and whether or not those documents will be here soon. Fine.

Now, Mr. MacGiollabhui, you're raising concerns about Mr. Dowd's deposition and whether or not he will be deposed about privileged information, which is difficult for me to make some kind of ruling on without knowing what questions are being asked.

I can't tell if you're asking for a protective order for your deposition, for Mr. Dowd's deposition.

Again, besides airing your grievances and me setting deadlines for things what, if anything else is being asked of me here.

MR. MACGIOLLABHUI: So, Your Honor, I think in respect to my own potential deposition I will be seeking a

protective order there.

In terms of Mr. Dowd's, I'd like to be able to try and work it out with Ms. Scharfstein because I'm certainly open in theory to that deposition. I just would like to have some sense of what the purpose of it is, because -- and I understand from the court's point of view until the court knows that, it's impossible to rule in the abstract.

But until I know it, it's impossible for me to be able to indicate if this is something that I'm agreeable to. I mean, I think -- I mean, I can certainly foresee my being agreeable to it, once I have some idea as to its purpose.

In terms of my own -- you know, I think it would be clearly inappropriate here.

So with regard to that one I will be seeking a protective order. I mean, I had hoped -- I had accepted subpoenas for myself and Mr. Dowd and I'd hoped with Ms. Scharfstein that we could engage on both of them and maybe -- you know, I think Ms. Scharfstein indicated a little earlier that it may be that in questioning plaintiff and Mr. Dowd she may conclude that she doesn't need me.

But if we have some kind of understanding as to why she might need me or why she might need Mr. Dowd, we might be able to work through the issues.

Because even in terms of me, I have no problem -- would have no problem answering questions, but I'm not going

to set myself up to be disqualified. And that's my big concern as to my own deposition.

And I think Mr. Dowd -- I've spoken to him --

THE COURT: Okay. Okay. All right. Let me interrupt you because Ms. Scharfstein at some point -- either it was this morning or this afternoon, I honestly don't remember.

At some point Ms. Scharfstein indicated that she believed that you and Mr. Dowd were involved in the case either at different times or in different ways such that it became necessary to perhaps depose each of you.

And, Ms. Scharfstein don't let me put words in your mouth. If you said something different than that, please speak up. But that is what I heard, or at least understood.

MR. MACGIOLLABHUI: Your Honor --

MS. SCHARFSTEIN: Your Honor, that --

MR. MACGIOLLABHUI: Excuse me.

THE COURT: That was to Ms. Scharfstein, Mr. MacGiollabhui.

MR. MACGIOLLABHUI: Excuse me.

THE COURT: You'll have an opportunity to move on.

MS. SCHARFSTEIN: Your Honor, that is my understanding based on the records, including transcripts of court conferences that there is at least a good possibility that they were not side by side at all times and actually did different things.

My belief -- and this is not confirmed, was that Mr. MacGiollabhui had more direct involvement in certain activities than Mr. Dowd, but I'm not certain of that.

THE COURT: Okay. And Mr. MacGiollabhui, what briefly would you like to say next, because I'm about to set some deadlines for some things. So what would you like to add?

MR. MACGIOLLABHUI: I'll be very brief, Your Honor. So the period at issue in the case in terms of malicious prosecution is a period before my client's indictment and arrest in April, 2011.

Now Mr. Dowd, after he was arrested, Mr. Kellner had another attorney and Mr. Dowd came into the case as his defense counsel later in 2011. At that time I worked for Mr. Dowd. And I wasn't involved in the case at the initial stages.

I came into the case somewhere around he end of 2012, 2013. And I mean I can -- my assumption is that Ms. Scharfstein wants to ask me -- or ask us about conversations we had with a number of the ADA's in the case. And neither of us spoke to former DA Hynes and neither of us spoke to the senior people within the office.

We had dealings with -- almost exclusively with, as you would expect, the prosecutors who were handling Mr. Kellner's prosecution. So there's a -- or there's an ADA

Batsedis (ph) and an ADA Alexis. ADA Batsedis has taken a note of all the conversations. You know, he has what he calls his action sheet.

And then there was another prosecutor that took over from him, ADA O'Donnell. Again, he made notes of the various conversations.

Again, to the extent Ms. Scharfstein wants to ask us about our interactions with the ADA's, I'm at a little bit of a loss as to what the purpose of it is in that the malicious prosecution, as in the prosecution without probable cause, happened -- the operative period is before my client was arrested.

So to the extent that -- again, I'm open to a proposal, but I am at a little bit of a loss as to what exactly is to be -- I mean ADA Batsedis and ADA O'Donnell have both been questioned at length about their interactions with both me and Mr. Dowd, and other contemporaneous notes. I don't have contemporaneous notes and I know Mr. Dowd doesn't.

So I'm at a little bit of a loss as to -- you know, there are some conversations, parts of which I remember. I don't know about Mr. Dowd, but I really don't know how it would add in any way to what's already known in the case because the content of these conversations, none of them are in dispute. I mean, everybody agrees in terms of the testimony so far and the notes that were taken, there's no dispute as to

what was discussed. They were just regular conversations that you would find in the criminal prosecution.

So that's why -- again, I'm struggling a little bit to -- you know, as I've said if Ms. Scharfstein doesn't want to go ahead with my deposition, I look for a protective order.

But with regard to Mr. Dowd's, you know, I'm very much open to working something out. I just have to have some idea as to what the topics are that Ms. Scharfstein proposes to address.

And even if I think they're somewhat of a waste of time, you know, to the extent that they're unobjectionable, I'll have no problem with it. You know, I just don't want privilege issues and I don't want disqualification issues.

THE COURT: Okay. So here's what I propose, because I would like to move this along. I would like to get things scheduled.

Ms. Scharfstein, is it correct that you're seeking to continue the deposition of the plaintiff after you received the documents responsive to the subpoenas?

MS. SCHARFSTEIN: Yes.

THE COURT: All right. Then those subpoenas having already been sent out -- what I don't want here is us sitting around and waiting for documents, because you now have two days of transcript to review, and you can start reviewing that.

Whatever additional documents you're receiving are going to be, frankly, a drop in the bucket compared to the thousand and thousands of pages of documents that have already been exchanged in this case.

So I don't think you need weeks and weeks to review all of that. I think you can get started on it and be ready to depose the plaintiff in March.

So let's pick a date for the plaintiff's deposition. Mr. MacGiollabhui, do you know your client's availability for a deposition?

MR. MACGIOLLABHUI: Yes. Well, actually, I had -- Ms. Scharfstein asked if we would set aside either the 15th or the 16th. I've set both dates aside. So it's a matter for Ms. Scharfstein to pick one of them.

THE COURT: Ms. Scharfstein, those dates work for you?

MS. SCHARFSTEIN: I would prefer March 16th, if that will work.

MR. MACGIOLLABHUI: That's fine, Your Honor.

THE COURT: All right. So plaintiff's deposition will be on March 16th.

With respect to the remaining depositions, as to Mr. Dowd, so Ms. Scharfstein are you able to articulate the topics about which -- the topics that you'll be asked Mr. Dowd about?

MS. SCHARFSTEIN: Well, Your Honor, I think it did

that this morning, perhaps not as in as much detail as the court would like, but it's basically about communications with the District Attorney's Office. Communications with other people in the community that might have had an interest in the case.

It's certainly not going to be about communications with the client. Those would obviously be privileged. But it might be about the exchange of information. When was he aware of certain events, not his analysis of the evidence, but just awareness. When did certain information come to light. Those sorts of things.

THE COURT: Okay. And Mr. MacGiollabhui, does that address your concerns regarding Mr. Dowd's deposition?

MR. MACGIOLLABHUI: Yeah, I think that should be fine. I'm not entirely sure what the third category is. If it's when Mr. Dowd became aware of certain things, that's fine. But not --

THE COURT: That's the only testimony he can give. He can't testify to someone else's awareness. He's --

MR. MACGIOLLABHUI: Right, but if it's a case of making my client -- his client at that time of certain things, that would be privileged. But he, personally, that's --

THE COURT: About his knowledge of an event happening, i.e., Mr. Dowd, are you aware of X?

MR. MACGIOLLABHUI: Right. Right.

THE COURT: And then --

MR. MACGIOLLABHUI: And then otherwise --

THE COURT: And an objectionable question would be was so and so aware, because Mr. Dowd can't talk about someone else's awareness.

MR. MACGIOLLABHUI: Okay.

THE COURT: That's not a blanket objection to deposing him. If you want to object to a specific question, that's your prerogative in the deposition, if the objection has a basis in the law.

MR. MACGIOLLABHUI: Right.

THE COURT: So Mr. Dowd's deposition is going to continue and I am going to set a date for Mr. Dowd's deposition, subject, of course, to his availability, which you, Mr. MacGiollabhui, apparently are going to confirm.

MR. MACGIOLLABHUI: I am. Otherwise, I was going to say, Your Honor, I'm fine with the topics as set forth by Ms. Scharfstein. So if we want to agree to a date subject to Mr. Dowd's availability, I'm happy to do that too now.

THE COURT: Ms. Scharfstein?

MS. SCHARFSTEIN: That would be fine with me.

THE COURT: Okay. And it has to be after the plaintiff's deposition, or can it be before the plaintiff's deposition? You don't have transcripts of his to review.

Ms. Scharfstein?

MS. SCHARFSTEIN: I'm sorry. Was that -- I didn't hear exactly what the court said.

THE COURT: The question is whether or not this needs to be before or after the plaintiff's deposition?

MS. SCHARFSTEIN: I would ask that it be after.

THE COURT: Any objection, Mr. MacGiollabhui?

MR. MACGIOLLABHUI: No. No objection, Your Honor.

THE COURT: Fine. What's everyone's availability the week of March 20th?

MR. MACGIOLLABHUI: I think it's good, Your Honor, on my end.

THE COURT: Ms. Scharfstein?

MS. SCHARFSTEIN: March 23rd. Would that work?

MR. MACGIOLLABHUI: That's fine.

THE COURT: All right. We're going to make it March 23rd but if Mr. Dowd is somehow not available on that date, then it can be scheduled to another date that week. But that's only if Mr. Dowd for some reason that we do not know at this moment is unavailable on March 23rd. That's the only reason why that deposition should be moved.

Now with respect to Mr. MacGiollabhui's deposition, Mr. MacGiollabhui it sounds like you're making a request for a protective order.

MR. MACGIOLLABHUI: Yes, I am, Your Honor.

THE COURT: Okay. Well, Ms. Scharfstein, are you

opposing that?

MS. SCHARFSTEIN: I think, Your Honor, I need to hear more. I don't understand why plaintiff's counsel thinks that this might lead to his disqualification in a way that he would not otherwise be disqualified if the deposition did not take place.

THE COURT: Okay. Well, here's what I'm going to say.

You all need to confer about that. You really need to talk to each other about that, which would be required before any motions were filed.

So the next deadline that I'm going to set has to do with when the two of you confer, using contemporaneous means. I'm not talking about firing emails off at each other because I think you need to have a conversation about it. You're welcome to email each other afterwards to memorialize the conversation.

But I think there needs to be some real time response here so that you can work through this. And if, Ms. Scharfstein, you can articulate the topics about which you want to depose Mr. MacGiollabhui as clearly as you did the topics about which you want to depose Mr. Dowd, I think that would be helpful to your meet and confer. That would allow Mr. MacGiollabhui to either agree that his deposition should go forward, or at the very least, if he plans to seeks relief

from the court, it would narrow the request, because, again, I think, Mr. MacGiollabhui, what you're objecting to is not necessarily being deposed overall. It's the subset of topics about which you would be asked, because not everything would disqualify you.

MR. MACGIOLLABHUI: No, indeed. And, Your Honor, I would even go a step further in that I don't mind being deposed at all, once it's not being used to disqualify me.

And I don't want to put Ms. Scharfstein on the spot, but, you know, I would be willing to agree on those terms. I know it's difficult for her to agree to something in the abstract along those lines, but I don't mind being deposed. I don't want to set myself up. It would be malpractice on my part to set myself up for disqualification.

I don't think there's a basis for it but, again, I have to be proactive about it.

THE COURT: Well, there's a fine line between pro-activity and engaging in speculation. So that is why I think the conferring will help to narrow what the objection is. Because to say that you don't want to be deposed about topics that are going to set you up to be disqualified is too vague for there to be any sort of action taken.

So if today is February 16th then by March 2nd, the two of you should confer about this topic, which is the subjects that will be covered in the deposition of Mr.

MacGiollabhui. And yes, try to work it out.

And if there is any area of inquiry in which you think being deposed, Mr. MacGiollabhui, is problematic and you all can't come to an agreement then, yes, I would like you to file a letter seeking a protective order.

Let's keep it to our favorite three pages and preferably it would be a letter in which you both just state your positions in a very succinct manner.

MR. MACGIOLLABHUI: That's fine. And by what day.

THE COURT: Yes, I'm getting to that.

Ms. Scharfstein, is that clear to you?

MS. SCHARFSTEIN: Yes, it is.

THE COURT: Okay. All right.

So you're conferring by March 2nd and then if there is any issue remaining, you're filing a letter by the 9th. And it's a joint letter of three pages. I don't want too much more briefing and I don't want to encourage a lot more motion practice, because I think we're getting close to the finish line in discovery here and I'd like to get us over it as smoothly as possible.

MR. MACGIOLLABHUI: That's fine, Your Honor.

THE COURT: This is a very narrow topic of disagreement and so you should be able to get your positions in in three pages.

MS. SCHARFSTEIN: Your Honor, may I raise one issue

about the depositions?

THE COURT: Yes.

MS. SCHARFSTEIN: I would like to ask that they begin in the morning, preferably by no later than 10:00 a.m. I could start a little bit earlier because I'm just concerned that if the witnesses are not available until the afternoon or late morning, we may encounter scheduling issues.

THE COURT: Mr. MacGiollabhui, is there any objection to that?

MR. MACGIOLLABHUI: No, it's not. I'm fine with that.

THE COURT: Okay. All right. Then for every deposition they will start no later than 10:00 a.m. And I'll put that in the minute entry and order following this conference.

All right. I said this wasn't going to be an hour. We're at a solid 51 and a half minutes.

So, Mr. MacGiollabhui, is there anything else for plaintiff?

MR. MACGIOLLABHUI: Nothing, Your Honor, other than to -- I know I thanked you before for your patience. I'm going to add perseverance this time. I thank you very, very much. I know this is trying for the court and I just want to let you know that I very much appreciate what the court is doing in terms of moving this forward.

THE COURT: All right. Thank you, Mr. MacGiollabhui. Ms. Scharfstein?

MS. SCHARFSTEIN: Yes, Your Honor. I just wanted to note for the record -- obviously, I don't want to belabor this by responding point to point that I -- with regard to everything that plaintiff has said, but I'm sure the court understands that my silence in that regard is not necessarily acquiesce and there were many points which I don't agree. But I thank you as well for your time and patience.

THE COURT: Yes. Subject -- thank you, Ms. Scharfstein.

Subject to everyone objecting to the things that they continue to object to, and everyone not agreeing to the things that they still don't agree to, it appears as though we are moving forward in that there are dates set for depositions. There's a date set for you to all discuss Mr. MacGiollabhui's deposition and there's a process to bring to me an actual dispute, if one still exists, regarding Mr. MacGiollabhui's deposition.

So with that I am going to adjourn this conference and (indiscernible) let's say that you don't have a dispute after you meet and confer. Then instead of a joint letter on March 9th telling me that you're disputing, that letter can say we've resolved the dispute and Mr. MacGiollabhui's deposition is scheduled for -- insert the date there.

Okay?

MR. MACGIOLLABHUI: Very well, Your Honor.

MS. SCHARFSTEIN: Yes. Thank you.

THE COURT: All right. Thank you very much. Have a good day, everyone.

MR. MACGIOLLABHUI: You too.

(Proceedings concluded at 3:25 p.m.)

I, CHRISTINE FIORE, court-approved transcriber and certified electronic reporter and transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

February 26, 2023

Christine Fiore, CERT