UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMUEL KELLNER, Plaintiff, | Case No. 17-CV-01268(MMH) |
| v. | Brooklyn, New York |
| THE CITY OF NEW YORK, et al., Defendants. | April 28, 2023 |

* * * * * * * * * * * * * * * *

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE MARCIA M. HENRY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff: NIALL MacGIOLLABHUI, ESQ.
Law Office of Niall MacGiollabhui
171 Madison Avenue, Suite 305
New York, NY 10016

For the Defendants: SUSAN P. SCHARFSTEIN, ESQ.
New York City Law Department
100 Church Street, Room 6-119
New York, NY 10007

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, CT 06484 (203)929-9992**

(Proceedings commenced)

THE CLERK: Status conference for Case No. 17-CV-1268, Kellner vs. The City of New York, et al.

As a reminder, pursuant to Local Civil Rule 1.8, the parties may not independently record any court proceedings. A transcript of this proceeding may be ordered from the clerk's office.

That being said, counsel for plaintiff please state your appearance.

MR. MacGIOLLABHUI: Niall MacGiollabhui, 171 Madison Avenue, New York, New York 10016 for plaintiff. Good afternoon, Your Honor.

MS. SCHARFSTEIN: It's Susan Scharfstein for the defendants. Good afternoon, Your Honor.

THE COURT: Good afternoon. Okay.

So I've actually heard from you since our last conference a couple of times. I resolved one deposition dispute during Mr. MacGiollabhui's deposition. I then got a phone call regarding Mr. Dowd's deposition.

Ms. Scharfstein then filed -- I'm going with documents -- I think you filed two motions to compel. One was a corrected copy. That was the one at document 75.

MS. SCHARFSTEIN: Yes. I apologize for that, Your Honor. It was just a mistake in a date and I thought it best to correct it.

THE COURT: Okay.

MS. SCHARFSTEIN: But it's essentially the same.

THE COURT: Okay. Then we can strike document 74 because that's technically not the motion before the Court. 75 is the one that you are indicating is the appropriate one. So we'll just -- we'll just terminate 74, the motion, and strike it from the docket.

So look, I mean, Mr. Dowd's deposition is the last one that is left in this case as I understand it. And, you know, when I granted additional time to allow for Mr. Dowd to be deposed it was really around his health issues and the fact that he had just gotten out of surgery and he was undergoing rehab, and he was in a facility at one point. Those are all of the reasons why I allotted additional time for his deposition. So it was a bit surprising when he was not available for his deposition because he had another court appearance.

And Mr. MacGiollabhui, I'd like you to address that first before we go any further. Because while I certainly understand that he's also an attorney and clearly has clients and court appearances, this was a deposition that he was scheduled to sit for. And so I don't understand how it is that he couldn't either reschedule that appearance or work around it. Was it an in-person -- was it a remote appearance?

MR. MacGIOLLABHUI: It was, Your Honor. Obviously,

it's most unfortunate and it was something he overlooked.

The problem with rescheduling is this, I mean, the only cases he still appears in are Child Victims Act cases. A lot of them are clients that he's had for decades. And it wasn't one case. There were 18 cases.

Because of the volume of cases, the cases are being grouped according to institutional defendants and also perpetrators. So he had -- I don't know how many of the cases were his, but he had multiple cases. But it wasn't just his cases. The judge, actually, there were two judges who had organized as I said 18 different cases on that same morning.

Now, when I spoke to him, I spoke to him I think it was March 31st and I let him know that the date was April 26th and he told me at that that should be fine. And obviously he just -- when he had been released from the rehab facility a day or two earlier and he simply overlooked it.

And, you know, when Ms. Scharfstein asked me in private to confirm and I reached out to him to confirm, he realized the oversight.

Now, again, you know, I'm -- it's most unfortunate. You know, I'm not going to say anything beyond that. Certainly had it been a, you know, a single case, a single client, he would have rescheduled. The problem here was that he couldn't. I mean, it wasn't within his power to do so. And, as I said, Your Honor, he has -- these are clients -- I

mean, they're child victims or victims of children of sexual abuse. And you're talking about multiple clients and multiple victims who he's represented for a very long period of time. That was the difficulty.

And, you know, I mean, I've -- I understand Ms. Scharfstein's position. She wanted to go ahead at 10 o'clock. And I was available. I had set aside the whole day. He was available in the afternoon. And I know that that didn't work. Ms. Scharfstein didn't want to begin in the afternoon. So be it.

The only thing I would say at this point is that --

THE COURT: She shouldn't have had to have done that. I mean --

MR. MacGIOLLABHUI: Excuse me?

THE COURT: I understand that there was an oversight on Mr. Dowd's part and that he had these pressing matters to attend to, but there was an agreed-upon date and time.

MR. MacGIOLLABHUI: Right.

THE COURT: And, you know, short of me issuing a written order that requires him to appear that you then serve on him, which I hope would then get it calendared for him, he should have been available.

MR. MacGIOLLABHUI: I agree. I agree, Your Honor.

THE COURT: You know. Ms. Scharfstein gets her seven hours to depose him. It may not have taken seven hours,

but that's besides the point. She gets the seven hours. There was a date certain. There was a time certain. It had been scheduled a month prior. And, you know, on a dime, she's being asked to rearrange her schedule in order to accommodate this person and that is not okay.

And unfortunate is one word, yes, to describe it. But ultimately, you know, based on that and for the reasons stated in Ms. Scharfstein's letter, then, yeah, I am granting her motion to compel.

And I need for us to decide a date certain. I am going to so order that date. And, yes, I can issue a written order that directs Mr. Dowd to appear to be deposed.

Now, understanding that he has had ongoing health issues relating to his surgery, it's also unclear to me why this issue about his physical therapy and his need to rest and all of these other things also were not made clear. And I would like to understand how specifically that impacts a deposition.

How does this impact his deposition? Does that mean that he may need to, if he's sitting, take a break? That he may, you know, during the lunch hours, when he does his physical therapy and then there's a break for another half an hour because he has to rest? I don't understand how his physical limitations affect his ability to sit for a deposition.

So I would like to get them out on the record now so that we can build that into whatever needs to be done for his deposition because he has to be deposed. And if you need to get him on the phone to answer these questions, you should do that.

MR. MacGIOLLABHUI: So let me say, obviously, he's a non-party. The only reason I'm representing him -- I mean, in terms of me and my client, I mean, this is not something we asked for. He's a non-party. The reason I'm representing him is that he's somebody that I worked for for ten years. You know, I have a lot of respect and affection for him. You know, I'm stuck somewhat in the middle of this.

I had -- I went to see him on Monday to his home and it was apparent to me that, you know, he -- I guess he's trying to put a brave face on, but when I saw him on Monday, you know, we -- I mean, we spoke. I mean, we didn't speak about the case, but we were catching up as it were. And after about an hour, he told me that he had to rest. He had to lie down. And it was very, you know, it was apparent to me on Monday that, you know, he's -- that it's a struggle for him physically.

You know, he's in his 80s. He's got a lot of health issues. And he had -- he told me the spine surgery, his spine was operated on in three different places. And so what he --

THE COURT: I know. But all of that was the case,

Mr. MacGiollabhui, when this deposition was scheduled.

So, again, I understand your position here. Your position meaning that you are, as you said, in the middle of this and that he is a non-party. I certainly understand all of that.

What I'm trying to do is given all of these issues that have now come to the fore or at least have been shared, because they appear as an ongoing issue, now that these issues have been shared, I am trying to work in how a deposition can be completed.

First, let me ask Ms. Scharfstein this question. Was this intended to be a remote deposition or an in-person deposition?

MS. SCHARFSTEIN: It was intended to be remote, Your Honor.

THE COURT: Okay. So he's already accommodated in that respect in that he does not have to appear at a place outside of his home. He can be in his home.

And, Mr. MacGiollabhui, are you aware does he need to -- as you said, he needed to rest. Was the expectation that he would need rest periods during the deposition? These are the kinds of logistics that need to be discussed with Ms. Scharfstein in advance.

And, again, if it requires getting him on the phone to do that, then let's do that. But I would like to get this

all buttoned up so that we can set a date and a time and he can be deposed.

MR. MacGIOLLABHUI: Well, this is my understanding. And I spoke to him on Monday about this. I spoke to him again this morning.

So I believe that he can sit for two to three hours at a time. And it may be that we start before 10 o'clock. So let's say if he goes from 9:30 or 9:00 o'clock to noon and then he has his physical therapy. And I think that's what he needs a rest afterwards. And then we start up again in the afternoon. Or we do it -- probably a better idea would be to do it on two consecutive mornings to the extent that Ms. Scharfstein would have the time.

THE COURT: Mr. MacGiollabhui, I understand that you want to cut this over a couple of days. That's really going to be up to Ms. Scharfstein because that seemed to be the issue, which is that you kept proposing doing it over two days and she had set aside one day.

So, again, we're trying to accommodate the witness as much as possible, but the deposition needs to be completed and the attorney doing the deposition, who is Ms. Scharfstein, her schedule also needs to be taken into consideration here. This is the last deposition in the case.

MR. MacGIOLLABHUI: Well, Your Honor, can I propose this? If we set a particular day -- and I spoke to Ms.

Scharfstein's folks this morning. So she had said she's available after the 23rd. I can't do that. I'm in court the 23rd. But I am available the 24th and the 25th. If we were to set the 24th as the -- as the day.

And then to the extent that, you know, there are any issues on that day where more time is required, and hopefully that won't be the case, we can go to -- I mean, I don't think it's going to take a whole day or anything close, but obviously that's for Ms. Scharfstein -- we have -- we have a second day, if needed, meaning the 25th.

THE COURT: Ms. Scharfstein?

MS. SCHARFSTEIN: Yes, Your Honor. I thought I was clear about this in my letter. But in case I was not, I just want the Court to be aware that I am now in the midst of a family health problem of my own. My schedule at this point is very uncertain. I may know more towards the end of the week of May 8th. But unfortunately at this point I have to leave open the possibility that I am going to be needed for my family. It is a serious problem and this situation is developing.

I had proposed in my letter that May 23rd was the first date that I would realistically be available. But depending on how things develop, I cannot assure that. The 24th I am certainly not available. You know, we're getting close to the Memorial Day weekend and I had planned to take

some time off.

You know, I really would like this to come to a conclusion, but I don't want to make any representations that I will be available unless I know that I can be available and the Court -- and I can feel comfortable if the Court is going to issue an order accordingly.

So I would agree that it probably makes sense to pick a date and to have all the necessary parties available on the following date in case something goes awry, but at this point I just cannot say that it's going to be the week that plaintiff's counsel would like it to be.

MR. MacGIOLLABHUI: Your Honor, that's not the way I would like it to be. I'm just going by Ms. Scharfstein's letter.

I mean, I spoke to Mr. Dowd in terms of his immediate availability. I know he's available on Monday and also Thursday next week, but I understand Ms. Scharfstein is not available next week. So I'm trying to --

As I said, Your Honor, I'm stuck in the middle of this. I'm trying to accommodate everybody. This is far from ideal for me and for my client. And we're -- he and I are blameless in this. We're literally stuck in the middle trying to facilitate on all sides.

And, you know, as you've seen from my correspondence earlier in the week, that it's been difficult at times. But,

you know, I have done my best. I will continue to do my best to facilitate everything.

But it seems that for the past year, you know, I have been flexible as I said before to a fault, you know. I've accommodated myself I don't know how many times to how many people and it has not come back to me a single time throughout this entire case. But, you know, so be it. But that's, you know --

This is a non-party. You know, again, there's no one to blame for what happened on Wednesday morning other than Mr. Dowd overlooking the fact that he had the court appearance. But otherwise we've resumed our positions for well over a year at this point.

And, you know, there were dates that I had proposed. I had proposed March 30th, you know, in that my deposition was to be March 30th and Mr. Dowd's on the 23rd. I proposed switching those dates. That was not acceptable.

And, you know, we tried to do it obviously this week. It hasn't happened.

But this is a case, you know, the problem here is that he's not the only person who is advanced in age. You know, a defendant here has passed away in the course of the case. And the longer it goes --

THE COURT: All right, Mr. MacGiollabhui. I don't want a chapter and verse recitation of all this --

MR. MacGIOLLABHUI: Okay.

THE COURT: -- coming to the fore.

MR. MacGIOLLABHUI: I've got it.

THE COURT: I want to talk about what --

MR. MacGIOLLABHUI: I've got it.

THE COURT: The motion to compel is granted.

Now, in terms of the dates, here is -- here is one proposal that can accommodate somewhat.

Ms. Scharfstein, in your letter you indicated May 23rd, although you just told me that you're not entirely sure that that date remains certain given your personal circumstances.

Can we set May 23rd as the date now with the same sort of one week in advance I guess heads-up if that date is not going to be able to be met?

MS. SCHARFSTEIN: Okay. Well, the obstacle to that, Your Honor, is that I'm not available on the 24th in case Mr. Dowd's health problems require the deposition to go over. And I --

THE COURT: I understand. I understand. I understand. And I'm not asking you to be available on the 24th. I'm just asking if we can set the 23rd as the date that you are available and get through what can be gotten through on May 23rd?

MS. SCHARFSTEIN: Well, my concern about that is

that we tried that during -- for plaintiff's deposition and we encountered some difficulty because there were, you know, there's some disruption in doing that, which is why I would prefer, if anything, consecutive dates. There were -- there were objections asked and answered.

I mean, it's difficult to do this in an orderly way when it spans more than one day because it's difficult to remember everything that transpired. And what the result of that was was that there were many objections based on asked and answered and we had to sort that out and that was a bit disruptive.

And then there was an order that I was not permitted to return to any topics that had been addressed in the first -- in previous sessions. And that I find difficult as well because ordinarily a deposition takes place on one day.

And before the end of the deposition attorneys review their notes and they try to determine whether there's anything they might have missed, or in some cases they planned to ask questions out of order. And those are things that an attorney conducting a deposition is ordinarily entitled to do.

And I don't want to be in a position of having to forego any of that because there's a -- there's a disconnect between the sessions of the deposition and I can't remember specifically what questions were asked. And then I'm not permitted to return to topics, however one might define that,

and maybe there's even a disagreement about what that means.

THE COURT: Okay.

MR. MacGIOLLABHUI: Judge, let me just say --

THE COURT: Mr. MacGiollabhui, no.

What I'm trying to do here is make sure that the deposition goes forward. You're telling me that May 23rd you would rather not schedule because you aren't available on May 24th. You've also told me that you don't know when you're going to be available.

So I'm stuck a little bit here because I'm trying to get the deposition scheduled. And frankly the consecutive day is only if you don't get through all topics in one day.

Your example of the plaintiff's deposition I certainly understand, but that's the plaintiff, right, who's expected to take a long period of time because that's the primary witness in the case. I don't see Mr. Dowd as being the type of witness that would require a day-long deposition under -- based on the topics that you would be asking him about.

THE CLERK: Sorry, Judge. I believe we've lost Mr. MacGiollabhui's connection.

THE COURT: Okay. Ms. Scharfstein, are you still there?

MS. SCHARFSTEIN: I am.

THE COURT: Okay. Let's see if we can get Mr.

MacGiollabhui back. Pause in my thoughts there.

(Pause.)

THE COURT: Mr. MacGiollabhui?

MR. MacGIOLLABHUI: Yes, Judge. Your Honor, I'm not sure what happened there. I was disconnected so I'm not sure at what point I -- I don't -- you heard me fall off the call, but I --

THE COURT: Yes.

MR. MacGIOLLABHUI: -- you had started speaking in response to Ms. Scharfstein and I got disconnected at that point.

THE COURT: Yes. I heard a beep mid-sentence and my deputy informed me that you had dropped off the call. Let me start over and summarize.

Essentially I'm trying to schedule a deposition. We're trying to make sure that there's a deadline by which the deposition happens, probably that's a better way of saying it.

And the reason why I'd like to try to nail this down is because I'm a little concerned that we get off this call and then there are emails and then there are miscommunications and I want to be clear on what the path is going to be going forward.

Ms. Scharfstein, your concern is that you may not be able to get through all topics in a day, therefore, you would like to have consecutive days available.

At the same time, you're managing a personal situation that precludes you from nailing down two specific dates.

I would like to set a deadline by which this deposition happens. Even more preferable is to set a date certain. If you're telling me the date certain is something that can't be determined, that's one thing, but I still need to set a deadline for this to happen. It can't just be that we sort of indefinitely figure out the deposition will happen at some point, but then it never actually does. This is the last deposition in the case.

MS. SCHARFSTEIN: Yes, I --

MR. MacGIOLLABHUI: Excuse me.

THE COURT: That was for Ms. Scharfstein to respond to.

MR. MacGIOLLABHUI: Oh, excuse me, Your Honor.

THE COURT: I'll come back to you.

MS. SCHARFSTEIN: Okay. So I just wanted to note that in my letter what I indicated was that I believe that May 23rd would be the first date that I'm available, but I didn't feel prepared to guarantee that.

I would prefer two consecutive days and I would prefer also to have dates certain so there's no further issue or need to involve the Court. What I would propose and what I would feel comfortable with at this point is if those two

dates could be June 5th and 6th.

And I would say also, if I may, that I don't -- I don't necessarily agree that Mr. Dowd's deposition will be short. Obviously I've never met him. I don't know him. I don't know what kind of witness he will be. But this is a rather complicated case.

And I -- Mr. MacGiollabhui's deposition took nearly the full seven hours. And there were -- there were a lot of I think areas to go over, so I'm not assuming that it will be a short deposition.

THE COURT: All right. Fair enough.

Mr. MacGiollabhui, June 5th and 6th?

MR. MacGIOLLABHUI: That should be fine. Look, I mean, it is Ms. Scharfstein's deposition.

I will just note this. One of the reasons for taking my deposition -- and because I'm litigating the case obviously I have -- I've unusually good recall of the events from over ten years ago -- but if you look at Ms. Scharfstein's letter she indicates or acknowledges that Mr. Dowd had limited involvement in the case and also has limited recollection. But, again, I'll let that play out however it will.

June 5th and June 6th, if those are to be the two dates, I have to confirm them with Mr. Dowd about this right away after we get off this call. But for me they're fine. I

just --

THE COURT: Can you call him right now and confirm?

MR. MacGIOLLABHUI: Yeah. I can do that. I can do that.

THE COURT: You can put us on hold while you do that.

MR. MacGIOLLABHUI: I didn't catch that, Your Honor.

THE COURT: You can put us on hold while you do that.

MR. MacGIOLLABHUI: Oh, very well. Thank you very much.

MS. SCHARFSTEIN: Your Honor, before he does that, may I just ask that we confirm the starting time with Mr. Dowd as well? 9:30 would be good for me, if that will work for everyone?

MR. MacGIOLLABHUI: It works for me. So let me -- let me call him and hopefully confirm in a moment or two.

THE COURT: But here's the thing, Mr. MacGiollabhui.

These dates are being set pursuant to my order granting a motion of a contempt.

MR. MacGIOLLABHUI: Right. Right.

THE COURT: So this isn't really optional. I'm giving you the courtesy of calling him and telling him that the Court is ordering that he be deposed on these dates.

MR. MacGIOLLABHUI: No. I understand that. No.

Your Honor, I absolutely understand that this is by way of courtesy and I thank you for it. And I know he will too.

So let me call him. I just want to make sure that there isn't something problematic ahead of time. So let me call him and let me -- let me -- to let him know that those are the dates that are being so ordered by the Court. And I will hopefully rejoin this call in a moment.

THE COURT: Okay. Thanks.

(Pause.)

MR. MacGIOLLABHUI: Judge Henry?

THE COURT: Yes.

MR. MacGIOLLABHUI: Yes. Sorry about that. So I did speak to him and I've let him know that those are the dates.

THE COURT: Okay. Ms. Scharfstein, is that acceptable to you?

MS. SCHARFSTEIN: Yes. Thank you.

THE COURT: Okay. So anything else that we need to address today?

MR. MacGIOLLABHUI: No. I don't think so, Your Honor.

MS. SCHARFSTEIN: No, thank you.

MR. MacGIOLLABHUI: Is June 6th going to be then the end of discovery date? Is that, or I guess possibly the following day?

THE COURT: That's a fair point. Hang on a second. By the end of that week, yeah.

MR. MacGIOLLABHUI: Very well.

THE COURT: And you need to file a letter by that Friday letting me know that discovery is officially closed. And whether you're interested in a settlement conference.

MR. MacGIOLLABHUI: Okay. I mean, yeah, I guess we'll cross that bridge when we come to it.

THE COURT: Correct.

Now, in terms of a start time on the 5th, Ms. Scharfstein?

MS. SCHARFSTEIN: I thought we had agreed on 9:30.

MR. MacGIOLLABHUI: Yes.

THE COURT: I wanted to make sure that that was on the record. Okay. June 5 at 9:30 a.m. So that when I put in -- when I put it in the order that it is there.

And would that also be the start time on June 6th if necessary?

MR. MacGIOLLABHUI: Yes.

MS. SCHARFSTEIN: That's fine for me. Yes.

Your Honor, I just wanted to note one more thing. The subpoena that was originally served on Mr. Dowd did have a request for documents. I think I've been over this with Mr. MacGiollabhui, but I just wanted to confirm that, you know, Mr. Dowd is aware of it so there will be no question at the

time of the deposition of additional documents emerging.

MR. MacGIOLLABHUI: Right. No. We are aware. I mean, it's something I asked him again on Monday. But I have, as I've indicated to Ms. Scharfstein when we spoke about it, I have the file. He doesn't have anything. And I produced the contents of it and there are no additional documents.

THE COURT: Does that address your concern, Ms. Scharfstein?

MS. SCHARFSTEIN: Yes. I mean, I don't know what's in the file or what may be maintained elsewhere. My only concern is that, and it appears that we now have a representation, that all the documents have been produced. And if so, that's fine with me.

THE COURT: All right. Thank you. Thank you both very much.

With that, we are adjourned. Everyone enjoy your weekend.

MR. MacGIOLLABHUI: You too, Your Honor. Thank you very much.

MS. SCHARFSTEIN: Thank you.

(Proceedings concluded)

I, CHRISTINE FIORE, court-approved transcriber and certified electronic reporter and transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Christine Fiore

______________________________ May 4, 2023

Christine Fiore, CERT