

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

**THE CITY OF NEW YORK**

**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

Susan P. Scharfstein
*Special Federal Litigation Division*
*212-356-2355*
sscharfs@law.nyc.gov

November 3, 2023

Honorable Nina R. Morrison *(by ECF)*
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

       Re:   <u>Kellner v. City of New York, et al.</u>, 17-cv-01268 (NRM) (MMH)

Dear Judge Morrison:

       I am an attorney in the office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, counsel for defendants City and the Estate of Charles J. Hynes in this action brought pursuant to 42 U.S.C. § 1983. I write to request a conference to address defendants' proposed motion to dismiss this action pursuant to Rule 56.

**A.**    **Background of This Action**

       In his Amended Complaint (AC), plaintiff alleges a federal claim for malicious prosecution against former District Attorney Hynes arising out of his prosecution on charges of conspiracy, attempted grand larceny by extortion, perjury, and criminal solicitation, commencing with plaintiff's indictment on April 11, 2011, and continuing until the charges against him were dismissed on March 7, 2014. Plaintiff also alleges a claim pursuant to <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978), against the City of New York.

       Plaintiff alleges that defendant Hynes conspired with others to overturn a conviction of a serial predator, Baruch Lebovits, who was connected to powerful and wealthy interests in the ultra-Orthodox Jewish community in Brooklyn and who was accused of molesting plaintiff's son (P.K.) and two other victims, referenced in this litigation as M.T. and Y.R. According to plaintiff, Hynes actively participated in extending favors to Lebovits in exchange for the political and financial support of his associates, while plaintiff was criminally charged based on false accusations that he had paid victims to implicate Lebovits in the crimes and made monetary demands in exchange for offering to influence the victims to recant.

       More specifically, plaintiff alleges that Hynes purposely excluded the Sex Crimes Bureau of the Kings County District Attorney's office (KCDA) and NYPD Detective Steven Litwin (who investigated and prosecuted Lebovits for his alleged crimes) from the investigation into plaintiff (by the Rackets Bureau) so that evidence known to Sex Crimes tending to exculpate

plaintiff would be unavailable to Rackets; tolerated witness tampering and intimidation; surreptitiously dismissed charges against Lebovits; coordinated with the Lebovits family to influence victims to recant and witnesses to change their stories and implicate plaintiff in a bribery scheme; counseled the Lebovits family on witness statements to gather as evidence; orchestrated pay-offs of Lebovits victims; and made damaging statements about plaintiff in the media. Plaintiff also alleges that the City, via Hynes as policymaker, set policies of deliberate indifference to witness tampering and of affording an opportunity to a convicted pedophile to undermine his conviction. (AC at ¶¶ 22, , 62).

**B.     The Court Should Grant Summary Judgment Dismissing This Action**

As a threshold matter, Hynes is entitled to absolute immunity for activities conducted in his prosecutorial role. See Imbler v. Pachtman, 424 U.S. 409, 410 (1976). This defense applies when a prosecutor performs advocacy functions, such as initiating and prosecuting a case. Shmueli v. City of N.Y., 424 F.3d 231, 237 (2005). Plaintiff lacks evidence to show that Hynes exceeded that role by knowingly participating in creating false evidence against him in an investigative phase. To the extent that prosecutorial immunity may not apply, Hynes is entitled to qualified immunity where he may have reasonably relied on information provided by members of the KCDA. See, e.g., Anthony v. City of N.Y., 339 F.3d 129, 138 (2d Cir. 2003).

A § 1983 claim for malicious prosecution requires, inter alia, that plaintiff prove an absence of probable cause. Mitchell v. City of N.Y., 841 F.3d 72, 79 (2d Cir. 2016). Probable cause is a complete defense to such a claim. Stansbury v. Wertman, 721 F.3d 84, 88-89 (2d Cir. 2013). A grand jury indictment creates a presumption of probable cause that may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence, or other bad faith conduct. Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003). A plaintiff bears the burden of rebutting that presumption. McClennan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006). Here, plaintiff cannot rebut the presumption of probable cause based on bad faith conduct in the grand jury, because grand jury proceedings are secret by law, see, e.g., Bayner v. Ruderfer, 234 F. Supp. 3d 574, 577 (S.D.N.Y. 2017) (citing N.Y.C.P.L. § 190.25(4), and plaintiff failed to obtain a court order during the discovery period allowing him to access grand jury material for the purposes of this case. In any event, there was ample evidence to support probable cause consisting of the statements and testimony of several witnesses and an audio recording of a May 2009 conversation between plaintiff and Lebovits's son, Meyer, in which it appeared that plaintiff was seeking to extort money from the Lebovits family in exchange for silencing Baruch Lebovits's victims.[1]

Further, plaintiff can offer no evidence to establish that Hynes was personally and directly involved in a violation of a constitutional right. The personal involvement of a

---

[1] The conversation was held in Hungarian Yiddish and Hebrew and included references to the Talmud. The KCDA had the recording translated in 2010. In July of 2013, members of KCDA's Rackets Bureau interviewed former Assemblyman Dov Hikind, an ally of plaintiff, at which time Hikind stated that he had listened to the recording and that, in his opinion, it contained phrases and expressions that could be interpreted incorrectly. Hikind thus advocated for dismissing the criminal charges against his friend. There is no evidence, however, that Hynes had the requisite fluency, listened to the recording, or personally reviewed the translation.

defendant in a constitutional deprivation is a prerequisite to an award of damages under § 1983. Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016). Personal involvement consists of direct participation in the deprivation of a right. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010). There is no special rule for supervisory liability. Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020). Rather, a plaintiff must show that the defendant has violated the constitution directly through his own individual actions, rather than merely being in the chain of command. Tangreti, 983 F.3d at 618 (citing Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). To satisfy this standard, plaintiff come forward with evidence of Hynes's personal participation while knowing that his conduct was illegal in light of the underlying facts. See Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001). There is, however, no evidence to show that Hynes directly and knowingly participated in any activity that could give rise to liability pursuant to § 1983. In fact, much of the evidence directly counters plaintiff's assertions of fact in the AC.

There is, for example, no evidence that Hynes purposely excluded Sex Crimes or Litwin from the Rackets investigation of plaintiff (in fact, ADAs from Sex Crimes and Rackets met with Hynes on March 16, 2011, prior to plaintiff's April 11, 2011 indictment, to discuss the Lebovits case, at which time Sex Crimes presented their view that Lebovits was guilty of the crimes with which he had been charged, and the respective bureaus exchanged information among themselves on multiple other occasions); tolerated witness tampering (ADA Gregory attempted to interview M.T., who was represented by his own counsel, and served subpoenas to obtain his attendance); surreptitiously dismissed criminal charges against Lebovits (among other things, the dismissals were discussed in court);[2] or knowingly took any steps to wrongfully prosecute plaintiff. While plaintiff alleges that Hynes made damaging statements about him in the media, the alleged statements were made at a press conference after plaintiff's arrest and on a radio show more than two years later on July 24, 2013. Not only is there no evidence that Hynes knowingly made false statements in the media, but any such statements are not remediable by way of a malicious prosecution claim.

Plaintiff's conspiracy theory – not separately set forth as a cause of action in the AC – fails because he has not developed proof that Hynes acted with others to undermine the Lebovits conviction by prosecuting plaintiff for soliciting false testimony and attempted extortion without probable cause. (See AC at ¶ 55). Plaintiff can offer no evidence to support that Hynes "directed" an "investigation" or played a "direct role" in any efforts to do so, such as by "manufacturing" evidence against plaintiff or seeking to undermine the conviction of Lebovits, (see AC at ¶ 55), a conviction which his office had, in fact, actively pursued and defended on appeal. Nor is there evidence that Hynes coordinated with the Lebovits family to influence victims to recant or witnesses to change their stories (one of whom, Y.R., did not change his story or recant), counseled the family of Lebovits (who was represented by no fewer than six accomplished lawyers) on what evidence to obtain, or coordinated a pay-off by the family to Y.R. (who agreed to continue his cooperation by testifying at a second trial). (See AC at ¶¶

---

[2] The decision as to whether and what charges to bring rests in the prosecutor's discretion. See, e.g., Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). A private party is not entitled to a criminal prosecution of another person. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); Staley v. Grady, 371 F. Supp. 2d 411, 415 (S.D.N.Y. 2005). Accordingly, no liability may arise for the prosecutor's discretionary decision to withdraw any charges against Lebovits.

35, 51).  Plaintiff thus cannot meet his burden to prove an agreement to act in concert to inflict an unconstitutional injury and an overt act in furtherance of that goal that caused damages to plaintiff.  See, e.g., Ciambrello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002).  Plaintiff's contentions – and this entire lawsuit – is premised in large part on plaintiff's misguided notion that he could not be guilty of attempting to influence witnesses or extortion if Lebovits were factually guilty of the sex crimes of which he had been accused.  In any event, plaintiff cannot pursue a conspiracy claim where, as here, he cannot establish a violation of an underlying constitutional right.  See, e.g., Da Mata v. City of N.Y., 21-cv-155 (KPF), 2023 U.S. Dist. LEXIS 2133, at *46 (S.D.N.Y. Jan. 5, 2023) (absent an underlying constitutional violation on which to base a § 1983 conspiracy claim, the conspiracy claim fails as a matter of law).

In reality, pressures on the Lebovits victims from their families and community loomed large.  Plaintiff has conceded that, he too, felt pressures separate and apart from anything emanating from Hynes.  He has acknowledged in testimony in this action that he did not wish for his son to testify against Lebovits at trial, as his son would have been required publicly to reveal the details of his abuse.  He attributes his children's compromised marriage prospects to the Orthodox community's awareness that his son was a sexual abuse victim and his own stance against powerful interests in the community that sought to conceal such abuse.  Significantly, Hynes had instituted the Kol Tzedek (Voice of Justice) program to combat just such pressures by affording Orthodox abuse victims support to equip them for the challenges of accusing predators in their community in the secular courts.

Plaintiff's policy claim against defendant City is equally unavailing.  The City cannot be held liable for the decisions of a district attorney's office regarding the handling of a prosecution.  Van de Kamp v. Goldstein, 555 U.S. 335, 345-48 (2009)).  In his role as prosecutor, the district attorney acts for the state.  Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988); see also D'Alessandro v. City of N.Y., 713 F. App'x 1, 8 (2d Cir. 2017) (Eleventh Amendment shields district attorney from suit attacking prosecutorial decisions).  A district attorney acts as municipal policymaker only when he or she acts in an administrative or managerial role.  See, e.g., Van de Kamp, 555 U.S. at 345-348 (acts taken related to a prosecutor's basic trial advocacy role are treated as prosecutorial decisions).  Accordingly, plaintiff may rely on Hynes' role as policymaker only as to investigative (not prosecutorial) policies within the KCDA.  Notwithstanding plaintiff's allegations, he can offer no evidence that Hynes maintained policies of deliberate indifference to witness tampering and intimidation of victims of pedophiles and their families in the Hasidic community or of affording an opportunity to a convicted pedophile to undermine his conviction by purposely excluding Sex Crimes or Litwin from the Rackets investigation into plaintiff to prevent exculpatory information from coming to light.

In light of the dearth of evidence to support either of plaintiff's claims, no reasonable jury could find in his favor and the Court should grant summary judgment dismissing this action in all respects.

Respectfully submitted,

/s/ Susan P. Scharfstein

Susan P. Scharfstein

cc: All counsel *(by ECF)*