**THE LAW OFFICE OF**
**NIALL MACGIOLLABHUÍ**

171 Madison Avenue, Suite 305
New York, New York 10016
T: 646-850-7516
F: 347-620-1395
niallmacg@macglaw.com

November 27, 2023

**<u>VIA ECF</u>**

Honorable Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: <u>Kellner v. City of New York, et al.</u>**
**Docket No. 17-cv-01268 (NRM) (MMH)**

Dear Judge Morrison:

I represent Plaintiff in the above matter and write in response to Defendants' letter to the Court dated November 3, 2023, Dkt. No. 85, requesting a conference to address their proposed motion for summary judgment.

As set forth in Plaintiff's accompanying Local Rule 56.1 Statement, he is a Hasidic resident of Borough Park. His entanglement with the criminal justice system began in 2008, when one of his sons was molested by Baruch Lebovits, whom he later learned was a known serial abuser of children in his community. After Plaintiff brought his son to the Kings County District Attorney's Office ("KCDA"), he was put in contact with Detective Steven Litwin, who asked Plaintiff if he could locate another victim of Lebovits. Plaintiff located two such victims, herein identified as M.T. and Y.R., and arranged for them to meet with Litwin. Lebovits was indicted in April 2008 in relation to Plaintiff's son and M.T., and a superseding indictment followed in November 2008, charging Lebovits with multiple felony counts in relation to both M.T. and Y.R. Counsel for Lebovits attempted to secure a non-jail disposition from the KCDA. In support of this effort, Lebovits was examined by a forensic psychiatrist named Dr. Goldstein, who prepared a report dated April 29, 2009, in which he stated the following in respect of the superseding indictment: "Mr. Lebovits is currently accused of multiple counts of charges of Sodomy, Criminal Sexual Act., Sexual Misconduct, Sexual Abuse, and Endangering the Welfare of a Child. The victims were underage boys. The sexual acts were all consensual without force or coercion, Mr. Lebovits's deviate sexual behavior was compulsive in nature. He had difficulty resisting temptation and controlling his sexual impulses at the time. The relief and gratification his behavior afforded him were short-lived and quickly followed by extreme guilt, contrition, and depression at his loss of

control." Dr. Goldstein Report (Pl. Ex 9) at 4-5. The report, along with a memorandum from counsel for Lebovits and a letter from Lebovits's treating psychiatrist, were submitted to the KDCA. However, the effort to secure a non-jail disposition was unsuccessful. DA Hynes had personally approved the existing offer of a plea of guilty by Lebovits to Sodomy in the Second Degree in relation to M.T. in exchange for a recommended sentence of 2 1/3 to 7 years (along with a plea to one of the counts relating to Y.R.), and he was personally unwilling to reduce the offer to a non-jail disposition.

The effort to secure a non-jail disposition having failed, Lebovits and his associates tried a different gambit, forcing M.T., by means of threats and a pay-off to his family, to end his cooperation with the prosecution. In November 2009, a month before Lebovits's trial was due to begin, an attorney named John Lonuzzi called ADA Gregory, the main prosecutor assigned to Lebovits's case from the KCDA Sex Crimes Bureau ("Sex Crimes"), and Detective Litwin, and told them that M.T. would not testify at trial. Some months later, M.T. called Litwin and asked to meet him; at their subsequent meeting, he told Litwin that "someone else had retained Mr. Lonuzzi but that he did not know who," that "he had been pressured and that he was afraid to say what had happened," and "had been told not to talk to [Litwin] or to go to the District Attorney's Office." Det. Litwin Affidavit (Pl. Ex. 11), ¶¶ 9-10. Litwin tried in vain to institute a witness tampering investigation, and Hynes was made aware of the circumstances of M.T.'s non-cooperation. Lebovits was unable though to prevent Y.R. testifying at trial, and, in March 2010, he was convicted of eight felony counts of Criminal Sexual Act in the Third Degree and sentenced to a term of imprisonment of 10 2/3 to 32 years.

In late April 2010, Arthur Aidala, lead counsel for Lebovits, approached Michael Vecchione, Chief of the KCDA Rackets Division ("Rackets"), and in early May 2010, he met with Hynes. He regarded both men as friends and mentors. Hynes agreed to open an investigation into Plaintiff in relation to another father, Simon Taub, one of whose sons was allegedly abused by Meyer Lebovits, a son of Baruch Lebovits, from whom Taub had been attempting to extort a financial settlement. Plaintiff had reported Taub's scheme to Litwin and, at the time Aidala met with Vecchione, it had been abandoned. After the meeting, Meyer Lebovits encouraged Taub to resume his scheme, leading to Taub's arrest on July 7, 2010. According to the KCDA review of Plaintiff's prosecution in 2014, "there is not a scintilla of evidence which indicates that Kellner engaged in any conversation, meeting, or any other activity that would link him to Taub's plot." ADA O'Donnell 3/4/14 Memo (Pl. Ex. 24) at 3. Still, the scheming continued. Rackets collaborated with an investigator hired by Lebovits to generate false allegations against Plaintiff. They manufactured a patently false affidavit two weeks after Taub's arrest from M.T., in which he now claimed to have been paid by Plaintiff to fabricate his abuse allegations against Lebovits (the same allegations to which Lebovits had confessed). The joint "investigation" conducted by Rackets and Lebovits continued until March 2011 but failed in its ultimate aim, a false recantation from Y.R. to go with the false recantation from M.T. Hynes and Vecchione decided nonetheless to "indict [Plaintiff] & see if Y.R. comes round." ADA Batsidis Tr. (Pl. Ex. 40) at 172:2-173:5. Plaintiff was arrested on April 12, 2011. Days later, Lebovits was released on bail pending his appeal. The case against Plaintiff continued for another two years, until M.T. was unable to maintain his supposed "recantation." Yet, even after the assigned Rackets prosecutors asked for the case to be dismissed, Hynes, in the words of 2014 review,

"shameful[ly] … allowed ADA Vecchione to talk him out of dismissing this case." ADA O'Donnell 3/3/14 Memo (Pl. Ex. 54) at 1. At the same time, despite a direct request for Brady material relating to Lebovits's effort to secure a non-jail disposition, Hynes personally contributed to a response which described the effort by counsel for Lebovits as "informal" only and concealed the above-referenced report from Dr. Goldstein, memorandum from Lebovits's counsel, and letter from Lebovits's treating psychiatrist. It was only after Hynes was resoundingly voted out of the office in 2013 that Plaintiff's criminal case was finally dismissed. It was only in the course of discovery in the present case that the report, memorandum, and letter were finally revealed.

Plaintiff's malicious prosecution claim is based on the fact that the cornerstone of his investigation and prosecution, namely M.T.'s claim that he was paid by Plaintiff to falsely accuse Lebovits, was known all along by Hynes to be a fabrication. The claim was manufactured during the investigative phase of the criminal process to which Plaintiff was subjected—i.e., the joint "investigation" authorized by Hynes with Lebovits's representatives—which occurred from April 2010 through March 2011. Hynes was personally involved throughout, from when Aidala met with him in May 2010 to when his office's Sex Crimes prosecutors demanded a meeting in March 2011 after they became aware of the effort to secure a "recantation" from Y.R. and thus capsize the Lebovits conviction. Furthermore, Hynes's course of action during this period is a sufficient basis for *Monell* liability. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) ("Such an action constitutes the act of the municipality and therefore provides a basis for municipal liability where it is taken by, or is attributable to, one of the city's authorized policymakers." (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 481–82 (1986))).

Defendants note in their letter that a grand jury indictment creates a presumption of probable cause "that may be rebutted only by evidence that the indictment was produced by fraud, perjury, the suppression of evidence or other bad faith conduct." *See* Def. Ltr. at 2 (citing *Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003)). It is difficult to conceive of a starker example of bad faith conduct than the deliberate concealment from the grand jury of Lebovits's confession.[1] Defendants alternatively claim that probable cause existed based on other manufactured, patently false allegations against Plaintiff and based on a conversation that Meyer Lebovits secretly recorded with Plaintiff in May 2009. Two translations of the conversation, which was conducted mainly in Yiddish, were obtained by the KCDA. Neither was provided to the grand jury. Both translations categorically support Plaintiff's innocence. Not only that, both translations categorically expose perjured grand jury testimony from Meyer Lebovits, who brazenly lied about the contents of the conversation.

Defendants summarize Plaintiff's claims as follows: "Plaintiff's contentions – and this entire lawsuit – is premised in large part on plaintiff's misguided notion that he could not be guilty of attempting to influence witnesses or extortion if Lebovits were factually guilty of the sex crimes of which he had been accused." *See* Def.

[1] Defendants also claim that Plaintiff cannot rebut the presumption of probable cause because he failed to obtain a court order allowing him access to the grand jury materials. However, the materials had already been obtained by Plaintiff during the course of his prosecution and, indeed, were disclosed by Plaintiff to Defendants during the course of discovery in this matter.

Ltr. at 4. Not so. Plaintiff's contentions are in fact premised in large part on the notion that Plaintiff could not be guilty of paying M.T. to fabricate allegations of being abused by Lebovits when Lebovits had already confessed to the abuse. Moreover, because Hynes knew that Lebovits had confessed, he knew that the allegations leveled by M.T. against Plaintiff (which, in words of a Rackets prosecutor, "resurrected" the investigation into Plaintiff) were false. Thus, Plaintiff submits that there is no possible basis here for summary judgment.

I thank the Court for its attention to this matter.

Respectfully,

Niall MacGiollabhuí
Niall MacGiollabhuí

cc: Susan P. Scharfstein, Esq.