UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

SAMUEL KELLNER,

Plaintiff,

v. Civil Action No:

THE CITY OF NEW YORK et al, 17-cv-1268(MKB)(SJB)

Defendant.

---

VIDEOTAPED DEPOSITION

---

WITNESS: Moshe Friedman

DATE: Thursday, December 1, 2022

START TIME: 2:02 p.m.
END TIME: 4:40 p.m.

REMOTE LOCATION: Remote Legal platform

REPORTER: Vanessa Van Wagner, CER-1602
JOB NO.: 13837

A P P E A R A N C E S

LAW OFFICE OF NIALL MACGIOLLABHUI
171 Madison Avenue, Suite 305
New York, New York 10016
By: MR. NIALL MACGIOLLABHUI, ESQUIRE
niallmacg@macglaw.com
Appearing for Plaintiff, Sam Kellner

NEW YORK CITY LAW DEPARTMENT,
OFFICE OF CORPORATION COUNSEL
100 Church Street
New York, New York 10007
By: MS. SUSAN SCHARFSTEIN, ESQUIRE
sscharfs@law.nyc.gov
Appearing for Defendants, City of New York & Patricia Hines

MILLER, LEIBY & ASSOCIATES PC
32 Broadway, 13th Floor
New York, New York 10004
By: MR. JEFFREY MILLER, ESQUIRE
jmiller@millerleiby.com
By: MR. DAVID LEWITTES, ESQUIRE
dlewittes@millerleiby.com
Appearing for Witness Moshe Friedman

ALSO PRESENT:
Sarah Schroeter, Notary Public

I N D E X O F T E S T I M O N Y


EXAMINATION OF MOSHE FRIEDMAN PAGE

By Mr. MacGiollabhui 8

# I N D E X O F E X H I B I T S

(available for download)


| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| 230 | 10.1.09 Article | 17 |
| 231 | 6.4.09 Article | 22 |
| 232 | 3.3.10 Excerpt | 30 |
| 56 | Batsidis Friedman Affidavit | 58 |
| 57 | Batsidis 8.13.10 | 60 |
| 23 | Visitor's Log | 72 |

FEDERAL STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties that the presence of the Referee be waived;

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to form, are reserved until the time of trial;

IT IS FURTHER STIPULATED AND AGREED that this deposition may be utilized for all purposes as provided by the Federal Rules of Civil Procedure;

AND FURTHER STIPULATED AND AGREED that all rights provided to all parties by the Federal Rules of Civil Procedure shall not be deemed waived and the appropriate sections of the Federal Rules of Civil Procedure shall be controlling with respect thereto.

FEDERAL REMOTE STIPULATIONS

IT IS HEREBY STIPULATED, by and between the attorneys of record for all parties to the above-entitled action, that:

Pursuant to Rule 30(b)(4) of the Federal Rules of Civil Procedure, this deposition will be conducted by remote videoconference with the oath being administered remotely and a court reporter creating an accurate written record; that, if necessary, the parties agree that each witness can be identified with picture identification;

No attorney, nor any party or witness, shall capture any still photographs, nor record, by video or audio, any part of these deposition proceedings;

Each attorney agrees to instruct their witness that there is to be no communication with anyone outside of the identified and participating group, by chat, text, email, or other means during the deposition;

There shall be no other person in the room with the witness during their deposition;

Any phone or electronic device in the room with a witness shall be identified and not read, referred to, or otherwise used during the witness' deposition, unless agreed to by all counsel on record.

P R O C E E D I N G S

THE REPORTER: Good afternoon. We are now on the record. Today's date is December 1st, 2022 and the time is approximately 2:02 p.m. today.

My name is Vanessa Van Wagner and I'm the officer designated by Remote Legal, 381 Park Ave South, New York, New York to take a record of this proceeding.

This is the deposition of Moishe Friedman taken in the matter of Samuel Kellner versus the City of New York et al, Civil Action Number 17-cv-1268(MKB)(SJB) filed in the United States District Court for the Eastern District of New York.

This deposition is being taken remotely on behalf of the plaintiff and is being conducted pursuant to the procedural rules and laws governing this matter. As such, all parties agree to this means of capturing the record, which may include recording by audio, audiovisual, or stenographic means, as if it were done by traditional in-person means.

Further, all parties agree that the deposition officer or person administering the oath may be authorized to administer the oath under the rules of the state where they reside.

Do all parties so stipulate?

MR. MACGIOLLABHUI: Yes, stipulated on

behalf of the plaintiff.

MS. SCHARFSTEIN: On behalf of defendants, I'll agree to that, with the caveat that I understand that this audiovisual recording is being taken under the supervision of Ms. Sarah Schroeter, who will be the custodian of the records, and that she's a notary authorized to administer oaths, and that the recording will be taken fully in compliance with Rules 28 and 30 of the Federal Rules of Civil Procedure. If that's the case, that's fine. If not, then I would object. So I'm just going to note that for the record.

THE REPORTER: Okay. Just to clarify, I did check with Remote Legal staff, and they say that it's the court reporter who's the custodian of recordings.

MS. SCHARFSTEIN: Okay. Then if the court reporter is not a notary, I would have to object.

MR. MACGIOLLABHUI: Okay. So this is an issue I think we will possibly have to address in the future, but I don't think it's going to prevent us going forward for now.

I will say, as well, that I have been in communication with the attorneys for Rabbi Friedman in terms of the recording that is made of this deposition, specifically the videotape recording, and a concern was

raised with me as to the video as opposed to the audio component and I have indicated to Rabbi Friedman's attorneys that there will be a single digital copy of the video. I'm not going to share it with anybody. I'm going to keep it in my possession at all times.

My client will want to view it, but he will view it at my office, and if I intend to use it for any other purpose, including by way of a court filing, that I will give advance notice of at least 10 days to Rabbi Friedman's attorneys. At this point in time, I don't even expect to use it -- the video -- for purposes of the court case, although that might change, but I certainly don't intend to use it for any other purpose.

MS. SCHARFSTEIN: I'm going to -- are you finished?

MR. MACGIOLLABHUI: Yes.

MS. SCHARFSTEIN: Okay. I'm going to have to object to that because it would be my position that Defendants have to have access to all of the same information as Plaintiff. So if there's an agreement between counsel for the witness and Plaintiff's counsel that Plaintiff's counsel will be able to refer to an audiovisual recording and Defendants will not be able to have access to it, then I have to object to that.

MR. MACGIOLLABHUI: Well, Ms.

Scharfstein, this agreement is solely as between myself or my client and Mr. Friedman and his attorneys. You're not bound by it in any way, so you're free to order a copy of the video and if you wish to enter into some agreement with Rabbi Friedman's attorneys you can do so, but you're not bound by any agreement here. Your rights --

MS. SCHARFSTEIN: Okay. That's fine. If I can have access -- if I can order a copy of the audiovisual recording and there's no restriction on that, then that's fine. We can go ahead on that basis, subject to my other objections.

MR. MACGIOLLABHUI: Okay. So Rabbi Friedman, good afternoon to you.

RABBI FRIEDMAN: Good afternoon.

THE REPORTER: Excuse me. Will the notary -- wait. We've gotten a little off track. I'm sorry.

MR. MACGIOLLABHUI: All -- excuse me, my mistake.

THE REPORTER: Will all counsel please identify themselves for the record?

MR. MACGIOLLABHUI: You know what? You know what, I have to admit I got distracted there. Have we sworn in the witness?

THE REPORTER: Not yet. That's why we're backing up a little bit.

MR. MACGIOLLABHUI: No. That's what I thought. I was getting ahead of myself.

THE REPORTER: Let's -- yes, that's okay.

MR. MACGIOLLABHUI: I apologize. It's after 2:00. I want to get everybody home. And so let us do that.

THE REPORTER: Okay. You're the noticing attorney.

MR. MACGIOLLABHUI: Yes. Let me begin. So my name is Niall MacGiollabhui and I'm attorney for Plaintiff here.

MS. SCHARFSTEIN: Susan Scharfstein. I represent the defendants, City of New York and Patricia Hines.

MR. LEWITTES: David Lewittes, counsel from Miller, Leiby & Associates and we represent the non-party witness, Rabbi Friedman.

THE REPORTER: Thank you. Will the notary please identify themselves for the record?

THE NOTARY PUBLIC: Good afternoon. My name is Sarah Schroeter, and I'm a notary public for Remote Legal.

THE REPORTER: Thank you. The notary will

now swear in the witness.

THE NOTARY PUBLIC: Good afternoon, Rabbi Friedman. Can he hear me?

RABBI FRIEDMAN: Speak a little louder, please.

THE NOTARY PUBLIC: All right. Would you please state and spell your name for the record?

RABBI FRIEDMAN: Moses Friedman.

THE NOTARY PUBLIC: And can you spell that for us, please?

RABBI FRIEDMAN: Spell, yes. M-O-S-E-S, last name is Friedman, F as Frank, R-I-E-D-M-A-N.

THE NOTARY PUBLIC: Thank you. I will now swear in the witness. Mr. Friedman, would you please raise your right hand?

Do you swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth?

RABBI FRIEDMAN: Yes. I affirm.

WHEREUPON,

M O S E S F R I E D M A N

having been called as a witness, being duly sworn by the notary public present, testified as follows:

THE NOTARY PUBLIC: Thank you.

THE REPORTER: Thank you. Counsel, you

may begin.

EXAMINATION

BY MR. MACGIOLLABHUI:

Q Thank you. Good afternoon again, Rabbi Friedman. As I think you know, my name is Niall MacGiollabhui, and I represent Sam Kellner in this case. And we're here this afternoon for me to ask you a number of questions in relation to the case. My first question is this: can you hear me properly?

A I hope so. Not the best, but I hear you.

Q Well, I hope -- I hope so, too. That's why I ask.

A But I hear you.

Q I say this to you as well, that any answer -- and this is for the benefit of the court reporter, any answer you give has to be verbal, meaning you have to speak your answer because it has to be written down. And you have to speak it as clearly as possible so that she can hear it because obviously, we're all at different locations here.

And in terms of my questions, if you can't hear it, please let me know and I'll speak a little louder. Or even beyond that, if you don't understand my question, let me know that, too, and I'll re-ask the question in a way that hopefully is understandable to

A Yes.
Q And what was the purpose of the meeting?
A I think --
MS. SCHARFSTEIN: Objection to the form.
THE WITNESS: I -- I think it was related to Kellner.
BY MR. MACGIOLLABHUI:
Q Well, what do you recall of the meeting?
A Beg pardon?
Q I said, what -- can you tell me what you recall of the meeting?
A I recall -- I recall him asking me what was the conversation with Kellner.
Q Well, at that time, did he represent Baruch Lebovits?
A I don't know. I think so. I don't know.
Q And what was the conversation that he asked you about?
A He wanted to hear the details from -- with Kellner.
Q But the details of what?
A Of my conversation with Kellner.
Q And what was that conversation?
A Kellner called me, and he came to my office and tells me that he has a big problem. His son was

victimized by Baruch Lebovits, and he picked him up with a car, I think.

The -- although -- he said specifically, although it was a misdemeanor, but Baruch Lebovits got -- got in trouble with other victims, too. And I control this whole case. And I negotiated with his family, about $250,000, which they agreed, original, and then they reneged on the deal. And he comes to me, maybe I could convince them to -- to honor the deal of $250,000.

Q And when he said that to you, that they reneged on the deal, did he explain how they reneged on the deal?

A They -- they said no. I don't know the details. That's what he told me, that somebody negotiated. And I remember he said somebody negotiated and first they agreed, and then they -- they reneged. They don't want to give them no money.

Q Okay.

A No other -- little bit that I -- that I remember exactly, but they reneged on the deal.

Q And when you say there were other victims -- how many other victims do you recall?

A I don't know. He told me there are other victims.

louder.

Q Excuse me. Excuse me. Yes. What you -- what you described there; this took place at the same meeting as the one we were talking about before, right?

A Right.

Q And in terms of when you went to the D.A.'s office, did you tell them that you also discussed these matters as well?

A I didn't -- I didn't get the question, please.

Q Yes. When you went to the D.A.'s office, did you tell them that at this meeting with Sam Kellner you also discussed the possibility of him obtaining advertising income for Der Yid?

A Yes.

Q Now, I'm going to return your attention to the document again. So I'm going to ask you to look at -- let me see the third bullet point. So you see it? It begins, "Kellner told Rabbi Friedman." You see that?

A Yes.

Q And that was a -- that's a reference to something we discussed earlier, in terms of him telling you what had happened to his son, right?

A Yes.

Q And I'm going to direct your attention, now, to the next bullet point. And I'm not going to read the

full thing, but I'll read part of it which states, "Kellner told him" and then "(Rabbi Friedman) that his son's case is only a misdemeanor, but that he could bring in another boy." You see that?

A Yes.

Q Now, that other boy is and I'm going to use the initials, Y.R., correct?

A Yes. Wait, wait. Which is?

Q And --

MR. MILLER: Just ask the question separately from using -- you had an introductory sentence about the initials and then you merged that with your question. Just make them into two separate ones so that his yes responds is to the right question.

MR. MACGIOLLABHUI: You know, I'm at a little bit of a loss. You know what? I'll ask the reporter just to, if possible, if she could split -- split it up in the way suggested.

THE REPORTER: I'm unclear on what your request --

MR. MILLER: May I just rephrase your question and then if you don't like it, he doesn't have to answer it that way?

MR. MACGIOLLABHUI: That's fine. That's fine. Just -- yeah.

MR. MILLER: Okay. It's just I think I heard it a little bit differently than the way you meant to say it. He's asking --

MR. MACGIOLLABHUI: No, no, that's fine. I know the connection is not always great at times. So let me -- let me try it again.

MR. MILLER: Rabbi, I believe that the Counsel's question was, when Sam Kellner referred to the fact that he could bring in another boy -- bring in another boy, was the other boy he referring to Y.R.? Is that your question, sir?

MR. MACGIOLLABHUI: Yes.

THE WITNESS: He didn't tell me a name.

BY MR. MACGIOLLABHUI:

Q And did he --

A Maybe he did. You know -- you know something? I don't remember exactly, but I remember he told me that there is another case which is -- as I remember, he told me a much serious case, but he controls the -- the case. If he gets --

Q And --

A -- if he gets paid, everything will be quiet.

Q What do you mean by that? Or what did you understand him to mean by that?

A That he controls this other victim. If he

gets money, whether he's going to give him a little money, something like that. He was hinting sort -- sort of, but he controls it. Those were the words that he used specifically.

Q So when he said this to you, he was indicating that if he received money from Baruch Lebovits that the other victim wouldn't go to the police?

A Right.

Q And other than this one victim --

A I don't know wouldn't go to police. It would be quiet. I don't know what stage it was, you know, but he told me he controls it, and everything will be quiet.

Q And did he -- did he refer to one other victim or more than one other victim?

A He told me one or two. I think that's what he told me, something like that. One or two.

Q And isn't it the case that the other victims, that their cases were already in court when he met with you in 2009?

MR. LEWITTES: Objection.

THE WITNESS: I -- I --

MS. SCHARFSTEIN: Objection.

THE WITNESS: -- didn't know at that time. I didn't know at that time where it stands and what stage it is and what -- what -- I'm just telling

you what he told me. And I didn't ask him details where it stands.

BY MR. MACGIOLLABHUI:

Q Now, you had said earlier that according to Mr. Kellner, Baruch Lebovits, or people on his behalf, had reneged on an agreement to pay him 250,000.

A Right.

MR. LEWITTES: Objection.

MS. SCHARFSTEIN: Objection.

BY MR. MACGIOLLABHUI:

Q And in terms of that particular piece of information, did Mr. Kellner tell you when they had reneged?

A No. He didn't tell me dates. You know, what do you mean "when"? He told me they reneged on the deal.

Q Well, when he came to see you, had they recently, as far as you understood, reneged on the deal?

A Right. Recently.

Q And this aspect of what he told you about the Lebovits's reneging on the deal, did you tell that to the D.A.'s office?

A I think -- I think so. Well, it should say here, but I told them.

Q Well, I don't want you to look at what's