United States District Court
for the
Eastern District of New York

________________________________

SAMUEL KELLNER,

Plaintiff,

v. Civil Action No:

THE CITY OF NEW YORK et al. 17-cv-1268 (MKB) (SJB)

Defendant.

________________________________

VIDEOTAPED DEPOSITION OF JOHN LONUZZI

DATE: Monday, October 17, 2022

TIME: 9:51 a.m.

REPORTED BY: Elene Sowl, CER-1604

JOB NO.: 12778

Conducted by videoconference via the Remote Legal platform.

A P P E A R A N C E S

ON BEHALF OF PLAINTIFF:

NIALL MACGIOLLABHUI, ESQUIRE
Law Office of Niall Macgiollabhui
171 Madison Avenue, Suite 305
New York, New York 10016
niallmacg@macglaw.com
(646) 850-7516

ON BEHALF OF DEFENDANT:

SUSAN SCHARFSTEIN, ESQUIRE
New York City Law Department, Office of the Corporation Counsel
100 Church Street
New York, New York 10007
sscharfs@law.nyc.gov
(212) 356-2355

ON BEHALF OF THE WITNESS:

ANDREW FALLEK, ESQUIRE
Fallek & Fallek, PLLC
305 East 86th Street, Suite 4 SW
New York, New York 10028
info@falleklaw.com
(212)797-4700

A P P E A R A N C E S (Continued)

ALSO PRESENT:

Laurie DePalma, Notary Public

INDEX


| EXAMINATION: | PAGE |
|---|---|
| By Mr. Macgiollabhui | 9 |


E X H I B I T S


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 212 | Lonuzzi Subpoena | 12 |
| 213 | Summons and Complaint | 17 |
| 202 | Transcript Excerpt | 24 |
| 214 | Detective Green-Jones Letter | 41 |
| 215 | M.T. Affidavit | 49 |
| 59 | 10/7/2012 Email | 71 |
| 220 | Audio Recording | 75 |
| 216 | M.T. Statements | 76 |
| 81 | 8/28/2012 Email | 80 |
| 217 | Mesamche Lev Board Members | 90 |
| 219 | Litwin Affidavit | 93 |

P R O C E E D I N G S

THE DIGITAL REPORTER: Good morning. We are now on the record. Today's date is October 17, 2022 and the time is approximately 9:51 a.m. Eastern Time. My name is Elene Sowl, and I am the officer designated by Remote Legal 381 Park Avenue South, New York, New York to take the record of this proceeding.

This is the deposition of John Lonuzzi taken in the matter of Kellner versus The City of New York et al, Civil Action Number 17-CV-1268 (MKB)(SJB) filed in the United States District Court for the Eastern District of New York.

This deposition is being taken remotely on behalf of the plaintiff and is being conducted pursuant to the procedural rules and laws governing this matter.

As such all parties agree to this means of capturing the record, which may include recording by audio, audiovisual or stenographic means, as if it were done by traditional in-person means.

Further, all parties agree that the deposition officer or person administering the oath may be authorized to administer the oath under the rules of the state where they reside.

Attorney Macgiollabhui, do you so

stipulate?

MR. MACGIOLLABHUI: Yes.

THE DIGITAL REPORTER: Attorney Scharfstein, do you so stipulate?

MS. SCHARFSTEIN: I'm sorry, what is it exactly that you're asking me to stipulate to?

THE DIGITAL REPORTER: You're stipulating to how we are capturing the record today.

MS. SCHARFSTEIN: Okay. I'll stipulate that the oath can be taken remotely. And the question is, who is being captured on the video? Is it just the witness?

THE DIGITAL REPORTER: Just the witness. Yes.

MS. SCHARFSTEIN: Okay. Thank you.

THE DIGITAL REPORTER: Okay. And Attorney Fallek, do you so stipulate?

MR. FALLEK: Yes.

THE DIGITAL REPORTER: Thank you. Would counsel please identify themselves with for the record starting with the noticing attorney?

MR. MACGIOLLABHUI: Yes, Niall Macgiollabhui for Plaintiff.

MS. SCHARFSTEIN: This is Susan Scharfstein. I represent Defendant, City of New York

and Patricia Hines as the representative of the estate of Charles -- of Charles Hines.

MR. FALLEK: Andrew Fallek for the non-party witness John Lonuzzi.

THE DIGITAL REPORTER: Will the notary please identify yourself for the record?

THE NOTARY PUBLIC: Good morning, Laurie DePalma with Remote Legal.

THE DIGITAL REPORTER: The notary will now swear in the witness.

THE NOTARY PUBLIC: Mr. Lonuzzi, please raise your right hand. Do you swear or affirm the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

MR. LONUZZI: Yes.

WHEREUPON,

J O H N L O N U Z Z I

having been called as a witness, being duly sworn by the notary public present, testified as follows:

THE NOTARY PUBLIC: Thank you.

THE DIGITAL REPORTER: Counsel, you may begin.

MS. SCHARFSTEIN: And before we begin, I just want to make a brief note for the record. By -- pursuant to court order, Plaintiff's questioning of the

witness is limited to 2 1/2 hours. Defendants questioning is not limited. Is the reporter going to be keeping the time?

THE DIGITAL REPORTER: Yes. We are scheduled to 1:00 p.m., correct?

MS. SCHARFSTEIN: Well, that the court order is that plaintiff is limited to 2 1/2 hours of questioning of the witness. That's what I'm referring to. I -- I don't know what Plaintiff's counsel has scheduled in terms of the reporter and I can't comment on that.

THE DIGITAL REPORTER: Okay, that actually would take --

MR. MACGIOLLABHUI: We all know what the limitation is.

MS. SCHARFSTEIN: Yes, and I want it on the record and I want to know if it's the court reporter who will be keeping time.

THE DIGITAL REPORTER: Yes. We are -- we're actually scheduled to 1:00 and that will take us to exactly 2 1/2 hours.

MS. SCHARFSTEIN: Well, that doesn't leave time for questioning by defendants, which may be necessary. So I -- I don't know you if you want to proceed, I just want to make sure that we're prepared to

comply with the court order which is 2 1/2 hours for Plaintiff.

MR. FALLEK: Why don't we all keep time and why don't we start and hopefully we'll get done in a timely fashion.

MS. SCHARFSTEIN: Okay. That's fine.

MR. FALLEK: I have 9:55.

MS. SCHARFSTEIN: Okay, so do I. Thank you.

THE DIGITAL REPORTER: Thank you. Go ahead.

MR. MACGIOLLABHUI: Very good.

EXAMINATION

BY MR. MACGIOLLABHUI:

Q Morning, Mr. Lonuzzi. Let me ask you, am I pronouncing your name correctly?

A Yes, you are. Good morning.

Q And as I think you know, my name is Niall Macgiollabhui. I represent the plaintiff, Sam Kellner in this matter. We're here this morning for me to ask you a number of questions in relation to the present lawsuit. In that regard, I'll start with a number of preliminary matters, the first one of which being, if there's a question I ask that you don't understand, let me know and I'll try and rephrase it in a way that is

Q And it -- does it run by calendar year or not?

A I believe, if memory serves me, it would have commenced at some point in early June of 2009 and it would have terminated at the end of May 2010 if I'm correct, give or take a week or two.

Q So when you were retained by M.T., first retained by him, that was a position that you held, right?

MS. SCHARFSTEIN: Objection.

MR. FALLEK: Objection as well.

THE WITNESS: I don't recall when I was retained by M.T.

BY MR. MACGIOLLABHUI:

Q Well, the particular portion of the -- of the excerpt I'm referring to -- you to, so again begins at the bottom of page 284 with, "Your Honor, I was called by John Lanuzzi," and then runs through page 285 and ends with, "That was my only conversation I had with him about this matter." Having reviewed what is said in that portion by Mr. Aidala, is there anything within it that is inaccurate?

MR. FALLEK: Objection as to form.

MS. SCHARFSTEIN: Objection.

THE WITNESS: My name is spelled correctly. I'm not sure why he would have mentioned my

affiliation with the Bar Association. I don't recall this telephone call with Mr. Aidala, so I don't know if it's accurate or not. I don't recall ever saying to Mr. Aidala in the context of this matter "I am calling to let you know I was retained by the family of, he named the complaint," and I don't recall that at all. I don't recall saying that I found out that Mr. Aidala's client was willing to take a disposition in the case. I don't recall that at all. I don't recall this portion on page 285 about M.T.'s mother and father preferring him not to be subjected to trial.

I -- I do know that M.T. did not want to be subjected to testifying at trial, but I don't recall this conversation with Mr. Aidala. And I don't recall saying to Mr. Aidala what he refers to here, "if your client is really willing to take a disposition in this case, it's their position that he not go forward with the District Attorney's Office." I don't recall that. I -- I don't recall anything that that Mr. Aidala recounts here. I don't recall that conversation.

BY MR. MACGIOLLABHUI:

Q And other than M.T., did you represent any members of M.T.'s immediate family?

A No.

Q Now I'm going to direct your attention to the

sure you can hear me as well as him, of course.

THE DIGITAL REPORTER: Yes. I appreciate that but yes, I am getting them all down.

MS. SCHARFSTEIN: Thank you.

MR. FALLEK: And I can hear you, I can't hear myself.

THE WITNESS: Was my representation of M.T. continuous with respect to which of these matters?

BY MR. MACGIOLLABHUI:

Q Well, with respect to any matter, meaning that during that period of time, so between March 2010, November 2012, was there any point during that period where you didn't represent M.T. with regard to any matter?

MS. SCHARFSTEIN: Objection.

MR. FALLEK: Objection as well.

THE WITNESS: My representation of M.T. in the context of the Baruch Lebovits matter was -- was very limited. There wasn't a lot that I did in that -- in that matter. There were some initial conversations with the DA's office. There was a meeting or two and then that was it. Then I believe at some point later we were contacted. You know, so as far as I was concerned, you know, my -- my role was -- was over. Then we were subsequently contacted by the DA's office and there was

a subsequent meeting with the DA's office. And then that was it and my role was over again. So I -- I don't know, you know, is -- if that's continuous or not. And there were -- there were periods of time where -- where I -- I rendered services for M.T. and then everything went quiet, dormant and then had to do something else, and then it went quiet and dormant again.

MR. MACGIOLLABHUI: And --

THE WITNESS: That continuous? I don't know.

BY MR. MACGIOLLABHUI:

Q Now, isn't it the case that you were paid by a third party to represent?

MR. FALLEK: Objection.

THE WITNESS: I -- I was paid by a third person or -- or entity. Yes.

BY MR. MACGIOLLABHUI:

Q And what was the name of that person or entity?

A I have no recollection.

Q And the person or entity that paid you, did that person or entity ask you to represent M.T.?

MS. SCHARFSTEIN: Just note my objection as to form.

THE WITNESS: I -- if -- if recollection

serves me I was -- I was initially contacted by M.T.'s brother who came into my office with M.T. and they together asked me or arranged a consultation to discuss what -- what the -- what the need was. Eventually, it was M.T. who -- who retained me. And his -- and my fee was paid by a third person or party with the knowledge, understanding and consent of -- of M.T. and that's all I recall.

BY MR. MACGIOLLABHUI:

Q Well, did you -- and -- at any time -- withdrawn.

When you say it was paid by a third party, how did you receive that particular payment? In what form?

MS. SCHARFSTEIN: Objection.

THE WITNESS: My recollection is a check.

BY MR. MACGIOLLABHUI:

Q And who gave you the check?

A My recollection is that the check was given to me in my office by M.T.'s brother or uncle. That's the best of my recollection. I did meet with M.T., I met with M.T.'s brother, and I met with M.T.'s uncle in connection with my retention, and one or -- or all of them gave me a check.

Q And now in terms of M.T., did you at any time