UNITED STATES DISTRICT COURT
COUNTY OF EASTERN DISTRICT OF NEW YORK
-------------------------------------------x
SAMUEL KELNER,

Plaintiff,

Index No.: 17-CV-1268

- against -

THE CITY OF NEW YORK and PATRICIA L. HYNES, ADMIN. OF THE ESTATE OF CHARLES J. HYNES,

Defendant.
-------------------------------------------x

Video Deposition
Sayville, New York

April 14, 2020
10:00 a.m.

DEPOSITION of ANTHEA BRUFFEE, a Non-Party Witness, taken by the Adverse Parties herein, pursuant to the Federal Rules of Civil Procedure and Notice, before Lisa J. Lugo, a Stenotype Reporter and Notary Public within and for the State of New York.

A P P E A R A N C E S:

LAW OFFICE OF NIALL MACGIOLLABHUI
Attorney for Plaintiff

171 Madison Avenue, Suite 305
New York, NY 10016
BY: NIALL MACGIOLLABHUI , ESQ.

KINGS COUNTY DISTRICT ATTORNEY
Attorney for Non-Party Witness

350 Jay Street
Brooklyn, New York 11201
BY: A.D.A. JOHN CARROLL, ESQ.

HONORABLE SYLVIA O. HINDS-RADIX
CORPORATION COUNSEL
Attorney for City of New York
100 Church Street
New York, New York 10007

BY: SUSAN SCHARFSTEIN, ESQ.

S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties herein, that filing, sealing and certification, and the same are, hereby waived.

IT IS FURTHER STIPULATED AND AGREED that all objections except as to the form of the question, shall be reserved to the time of the trial.

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed and sworn to by an officer authorized to administer an oath, with the force and effect as if signed and sworn to before the Court.

xxxxx

A N T H E A B R U F F E E,

a Non-Party Witness herein, after having first been duly sworn by Lisa J. Lugo, a Notary Public in and for the State of New York, was examined and testified under oath as follows:

MS. REPORTER: Would you please state your name for the record.

THE WITNESS: Anthea Bruffee.

MS. REPORTER: Please state your office address.

THE WITNESS: 350 Jay Street, Brooklyn, New York 11201.

MR. MACGIOLLABHUI: So, I have been recording these depositions subject to objection on your part, Susan. I'm going to press record and then in terms of the record, you can make your objections, Susan, to it. As I've indicated on each prior occasion, it's not for use in court, not for use by the way of evidence. It's for my own purposes by way of

back-up because this has been done remotely and we had certainly in the first deposition, we had connectivity issues.

And again, I know, Susan you've put your objection on the record on each occasion and I'll expect that you will do likewise here.

So, I'm pressing record as we speak. You know that, before we do that. So, Ms. Lugo, I need -- I thought I was set up here as host, which means I can't share my screen either.

So, can we pause for a moment and I need either you or your office just to set me up as host here.

MS. REPORTER: Sure, let me call them.

(A brief recess was taken.)

MR. CARROLL: Niall, now that we're recording, I just want to put something, just to let you guys be aware of something.

A. Bruffee

Anthea, in preparing, you know, one of the exhibits you sent over, the Baruch Lebovits' meetings. Anthea just wrote a couple of things next to it to remind her of things like when the Kelner indictment happened and when certain things on the case happened.

And she said that her ability to remember stuff, she doesn't remember right now will be, you know, she wouldn't be able to really remember when things happened without it.

So I said, okay, fine, let me -- we scanned it and Zach is going to send it to both of you.

So, it's just basically what you sent me, but it has little handwritten notes on it.

MR. MACGIOLLABHUI: That's fine.

MS. SCHARFSTEIN: Are there exhibits sent for this particular deposition because I don't believe I received any?

A. Bruffee

MR. MACGIOLLABHUI: No, I mean, you know, I haven't -- all right, bear with me.

What I did, Susan, was this. I hadn't actually prepared exhibits. I just -- I had sent John and Zach a number of document that I expected to use. As it happens, they are the ones I am using but I hadn't identified them as exhibits, but I have done so now.

So, let me just see if I can sign in and share them with you, Susan.

MS. SCHARFSTEIN: Okay. Are they extensive?

MR. MACGIOLLABHUI: Yeah, I think there's about 25 or so. They're nearly all one page.

MS. SCHARFSTEIN: Okay.

MR. MACGIOLLABHUI: Yeah, I think there's 5 of them that are longer than a page or two. Just bear with me and let me see if I can --

A. Bruffee

just bear with me, hold on.

MS. REPORTER: The first Federal Stips that I have that I've used is:

It is hereby stipulated and agreed by and between the attorneys for the respective parties herein, that filing, sealing and certification, and the same are, hereby waived.

MS. SCHARFSTEIN: I'll agree. Oh, I'm sorry, we have to go one by one. I'll agree to that. Niall, John?

MR. MACGIOLLABHUI: That's fine with me too.

MR. CARROLL: I'll agree.

MS. REPORTER: It is further stipulated and agreed that all objections except as to the form of the question, shall be reserved to the time of the trial.

MS. SCHARFSTEIN: Agreed, from my standpoint.

MR. MACGIOLLABHUI: I'm going to

A. Bruffee

defer to what the Federal Rules say. The Federal Rules say something different.

MS. REPORTER: These are the ones that I've used.

MR. CARROLL: I can agree that most of my objections will likely be to form, but there maybe places and there have been during the depositions in this case where I have objected and instructed my clients not to answer because it would reveal some kind of privilege or Grand Jury secrecy, which is a Felony in the State of New York for a prosecutor to reveal.

MS. SCHARFSTEIN: I think that is the same as the Federal Rules so I'll go with your way on that.

MS. REPORTER: Then the last --

MR. MACGIOLLABHUI: Look, I mean, you know, what I would say is I'm fine too. I just think the Federal Rules say something

A. Bruffee

different, but I have no objection. We're stipulating to that particular stip, that's fine with me too.

MS. SCHARFSTEIN: John, that doesn't mean that you can't object to whatever you want, it just means you don't have to at this time.

MR. MACGIOLLABHUI: Right.

MS. REPORTER: And then the last part I have is: It is further stipulated and agreed that the within deposition may be signed and sworn to by an officer authorized to administer an oath, with the force and effect as if signed and sworn to before the Court.

That's the Federal Rules that I have and then I have the video Stips.

MS. SCHARFSTEIN: I'm fine with that last one. John and Niall, do you agree?

MR. MACGIOLLABHUI: That's fine.

MR. CARROLL: Yes.

MS. REPORTER: So now the video

A. Bruffee

Stips: The attorneys participating in this deposition acknowledge that I am not physically present in the deposition room and that I will be reporting this deposition remotely.

They further acknowledge that, in lieu of an oath administered in person, I will administer the oath remotely, pursuant to Executive Order Number 202.7 dated March 19, 2020.

The parties and their counsel consent to this arrangement and waive any objections to this manner of reporting.

Please indicate your agreement by stating your name and your agreement on the record.

MR. MACGIOLLABHUI: Niall Macgiollabhui for Plaintiff, I'm agreeing to that.

MS. SCHARFSTEIN: Susan Scharfstein for Defendant, agreed.

MR. CARROLL: John Carroll for the non-party witness and I agree.

A. Bruffee

MR. CARROLL: We're on the record now. I just want to put on the record that my client is appearing here pursuant to a subpoena, you know, she is not a party to this matter.

The subpoena clearly states that she has been commanded to appear here and give testimony in this deposition.

The subpoena also states that the Court for the District where compliance is required, may hold in contempt, a person who having been served, failed without adequate excuse to obey the subpoena or an order related to it.

And I just want to make it clear to the court reporter that the Kings County District Attorney's office is not ordering a copy of the -- we have not contracted with you and we have entered into no contract with you. We are not ordering a copy of the

A. Bruffee

transcript from you and we're not paying for the transcript.

Although, I am now putting Niall on notice that, you know, pursuant to, you know, Anthea being able to read it and correct it I, you know, for him to provide us with a, you know, copy of the transcript.

MR. MACGIOLLABHUI: I understand, John, that as you indicate, you were making a request under the Federal Rules for your witness or your client, I should say, to be provided with a copy for review and that I will do. I will provide it to you.

MR. CARROLL: Thank you.

MR. MACGIOLLABHUI: As a taxpayer, I'm also glad that you're looking out for our interests.

MS. SCHARFSTEIN: Niall, do you want to go ahead or should I?

MR. MACGIOLLABHUI: You can go ahead, Susan.

A. Bruffee

MS. SCHARFSTEIN: Okay. Just a few preliminary comments for the record from the Defendants.

First of all, I want to note my objection to Plaintiff's counsel audio recording this deposition.

I understand that it's an audio recording and not a video, is that correct, counsel?

MR. MACGIOLLABHUI: Yes. So, as I indicated on the last occasion, the recording on Zoom is, once it's made, it converts into both audio and video files.

I'm retaining the audio files, not video files.

MS. SCHARFSTEIN: Okay. So, we'll go ahead with that subject to objection and my ability to raise this issue, if necessary, with the Court at a future date.

I don't believe that it's proper pursuant to Rules 28 and 30 in the Federal Rules of Civil Procedure, but

A. Bruffee

I certainly don't want to hold up the deposition. And particularly since we have a non-party witness here.

And I understand that Plaintiff's counsel has agreed that if he changes his position that the audio recording is to be held solely for his reference and not to be used for any other purpose, including in evidence in this case, he will let me know before he uses it for any such other purpose so that I will have an opportunity to raise it with the Court before it happens.

I also wanted to note that I too have had difficulties with the court reporting service and their aggressive billing practices, not this reporter, but the prior one that was used by Plaintiff's counsel.

And I just want to note that although obviously it does not apply to this deposition, in all cases in which my clients are deposed, I will

A. Bruffee

expect that in addition to reviewing my right, my client's right to review and sign the transcript, that Plaintiff's counsel will be provided a copy at no cost to my client because that is the practice in this Court.

Lastly, I, I'm sure that the witness has been advised of this, but since it's become a bit of an issue in other depositions, I just want to know that I would ask the witness kindly pause before answering each question so that I have an opportunity to object, if necessary, on behalf of my clients.

I understand that there's going to be temptation to want to move the deposition along and get through what potentially maybe a long day, but my clients do have a right to object before the answer is given.

So I would appreciate your courtesy and cooperation in that

regard.

THE WITNESS: How long do you want the pause to be?

MS. SCHARFSTEIN: Just enough so someone can speak. And also, if you keep in mind, your attorney and I may both be objecting to the same question and we have to do it in turn so that the reporter can take everyone down.

I think within a few minutes of the deposition, you'll get a pretty good idea of how much time is necessary.

And I thank you for that, for your cooperation.

MR. MACGIOLLABHUI: I think that was only an issue during the last deposition, which was of your former colleague, Ms. Bruffee, Ms. Jaus, who had a tendency on occasion to speak quickly.

And I think we all -- well, I certainly drew certain conclusions

A. Bruffee

from when she speeded up her answers. But nonetheless, I won't dwell upon that.

Ms. SCHARFSTEIN: Niall, I don't think this editorializing testimony is necessary or appropriate -- You can draw your own conclusions --

MR. MACGIOLLABHUI: Fair enough, fair enough, counsel. I'll save it for the jury then.

MS. SCHARFSTEIN: But I don't think that's the only deposition, at least from my perspective.

MR. MACGIOLLABHUI: I'll also save her remarkable memory failures for the jury too.

But anyway, in terms of the point you made though Susan, as to the transcript, it is my understanding that under the Federal Rules, I don't believe you're automatically entitled to a copy. But whatever the practice is, I'm happy to abide by it.

A. Bruffee

I certainly am -- what I do not want is a situation where you're put to unnecessary cost or the City is put to unnecessary costs.

So, if there's a particular practice, I will certainly follow that. And you understand --

MS. SCHARFSTEIN: Niall, all I want is the transcripts of my clients' deposition, that's all I'm asking for.

MR. MACGIOLLABHUI: Oh, I see, okay. That's fine, that's fine.

So, in terms of what do you expect today? I mean Ms. Bruffee is not your client. So, what are you expecting?

MS. SCHARFSTEIN: That's correct, she's not my client.

MR. MACGIOLLABHUI: Oh, I see. Okay. Any client you're automatically entitled once you request a copy of the transcripts.

So, I guess, without further

ado, maybe we'll get started.

**EXAMINATION

BY MR. MACGIOLLABHUI:

Q Ms. Bruffee, as I think you know, my name is Niall Macgiollabhui, I represent Sam Kelner in this matter and we are here this morning for me to ask you questions.

First of all, let me say, it's very nice to meet you in person.

A Thank you.

Q We spoke in the past. We corresponded a little bit by email, but I guess at least for what passes for in person these days, it's very nice to meet you, nice to see you face-to-face.

I have a number of preliminary questions I run through at the beginning of every deposition so I'm going to do that here.

The first one of which is to ask whether you're under the influence of any medications or anything else that might affect your ability to provide truthful and accurate testimony today?

A No.

A. Bruffee

Plaintiff's 165, you'll see, and there's a handwritten notation underneath the portion we just discussed across from May 18th, 2011 just above March 18, 2011 and to the right which says, "D.A. meeting" and then a question mark, do you see that?

A Yes, yes, I see that.

Q And is that your handwriting?

A It is.

Q And is it your recollection that you may have met around that time so this is March of 2011, with Mr. Hynes?

MR. CARROLL: Objection.

MS. SCHARFSTEIN: Objection.

A The reason that's in there is that there was one meeting that I remember vividly, but I can't remember when it was. It was a meeting. It was after I talked to Amy Feinstein, who was the first assistant.

And I had the impression, and I'm not sure where I got it from, that the 19th floor was getting information that maybe Mr. Lebovits wasn't guilty as convicted.

The D.A. used to be a defense

A. Bruffee

counsel, he was very sensitive to that issue.

And I think I might have asked if this was the meeting that I asked Amy if she would cause a meeting with the D.A. to be created at which the appeals people, the trial people would talk to Mr. Hynes and explain that we believed that Mr. Lebovits in fact was guilty and in fact had done the same thing to other people. Just so that he had kind of our side of the story.

And during that, I remember it because we had the meeting, at the beginning he said where is the Rackets Bureau Chief, Mike Vecchione. We can't have a meeting without him too. So he came down.

And I remember Vecchione saying something like well, he might have touched him, but it wasn't what the victim said. And Hynes saying, but I thought you said he was an innocent man. I remember that so vividly.

So I don't know, was trying to figure out when that meeting was because I remember Mr. Hynes was surprised. And I think he maybe got a different view of the case after that.

A. Bruffee

Q Meaning he got a different view of the case from you and from Sex Crimes?

A Correct.

Q Now --

A Henna White was at that meeting. She was the liaison to the Hasidic community and she had told Amy that, I believe, he had done this before to other people.

Q Now, when you say she told Miss Feinstein that, did she tell her at that particular meeting?

A No. That was hearsay.

Q Oh, I see. But your understanding was that she had said that to Miss Feinstein on a prior occasion?

A Yes.

Q Now, I just want to make sure that you're familiar with the naming convention that we're using for the victims in this deposition where we're referring in terms of the Baruch Lebovits case, to the three Complainants, as victim number one, whose initial are M.T.; victim number two whose initials are P.K.; and victim number three, initials are Y.R., "R" as in

A. Bruffee

Q If you can read through the bottom of that page and let me know when you're at the bottom and I'm going to scroll to the following page.

MR. CARROLL: Do you want her to read it out loud or to herself?

MR. MACGIOLLABHUI: No, read it to herself.

A (Reading document.) Okay, well.

Q And I'm scrolling down to the second page and I'm going to ask you just to read the first two paragraphs.

A (Reading document.) Okay.

Q Now, at that time in July 2010, so this would have been about four months after the Baruch Lebovits' conviction.

Do you recall whether you were aware of an investigation that your office was carrying out at that time into Sam Kelner?

MS. SCHARFSTEIN: Objection.

A The first I knew about such an investigation was that Rhonnie Jaus called me and asked me to go to a meeting that Mike Vecchione had asked her and Miss to go to and she was

A. Bruffee

asking me to go to.

I guess I was their legal liaison at the time. And we went and he disclosed to all of us that there was this investigation that they had and he was telling them as a courtesy because they were doing a criminal, what ended up as a criminal prosecution with regard to a shake down and it had implications for our case.

MS. SCHARFSTEIN: Move to strike. I'm sorry, is the witness finished or continuing?

A No, that was the first that I had heard about that. I was not involved in Rackets cases at all.

MS. SCHARFSTEIN: Move to strike as nonresponsive.

Q In terms of that exchange that you've described involving Mr. Vecchione. As best you can recall, was that before you received the Notice of Bail Application that we discussed in the course of your earlier testimony?

MS. SCHARFSTEIN: Objection.

A I think it was before.

Q And do you know if it was in 2011 or