Certified Copy



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------X
SAMUEL KELLNER,

PLAINTIFF,

-against- Case No.: 17-cv-1268

THE CITY OF NEW YORK and
PATRICIA L. HYNES, Administrator of
the ESTATE OF CHARLES J. HYNES,

DEFENDANTS.
---------------------------------------------X

DATE: January 25, 2023
TIME: 11:16 a.m.

VIRTUAL DEPOSITION of the Plaintiff, SAMUEL KELLNER, taken by the Defendant, pursuant to an Order and to the Federal Rules of Civil Procedure, held at the above date and time, before Julie Parisi, a Notary Public of the State of New York.

A P P E A R A N C E S:

LAW OFFICES OF NIALL MACGIOLLABHUI, ESQ.
Attorneys for the Plaintiff
171 Madison Avenue
New York, New York 10016
BY: NIALL MACGIOLLABHUI, ESQ.
HON. SYLVIA O. HINDS-RADIX
NEW YORK CITY LAW DEPARTMENT
CORPORATION COUNSEL
Attorneys for the Defendants
100 Church Street
New York, New York 10007
BY: SUSAN SCHARFSTEIN, ESQ.
File #: 2017-018324
Control #: 23-0246

* * *

F E D E R A L S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED by and between the counsel for the respective parties herein that the sealing, filing and certification of the within deposition be waived; that the original of the deposition may be signed and sworn to by the witness before anyone authorized to administer an oath, with the same effect as if signed before a Judge of the Court; that an unsigned copy of the deposition may be used with the same force and effect as if signed by the witness, 30 days after service of the original & 1 copy of same upon counsel for the witness.

IT IS FURTHER STIPULATED AND AGREED that all objections except as to form, are reserved to the time of trial.

* * * *

S A M U E L  K E L L N E R, called as a witness, having been first duly sworn by a Notary Public of the State of New York, was examined and testified as follows:

EXAMINATION BY

MS. SCHARFSTEIN:

Q. Please state your name for the record.

A. Samuel Kellner.

Q. Please state your address for the record.

A. 1071 51st Street, First Floor, Brooklyn, New York 11219.

Q. Mr. Kellner, as you may know my name is Susan --

MR. MACGIOLLABHUI: Susan, before you get started just in terms of housekeeping matters. So it is -- there is a Court Order but there was no Notice I just want to confirm stenographic means that it's --

MS. SCHARFSTEIN: Okay, these preliminaries should take place before I start my questioning so.

MR. MACGIOLLABHUI: Susan, you never sent me a Notice so I don't know --

MS. SCHARFSTEIN: We don't need a Notice because there is a Court Order, but what do you want to know whether --

MR. MACGIOLLABHUI: The Court Order doesn't

he came along and we all sat there. A person comes out, we were sitting in the waiting room, and he says my name is Chris Laline I'm ADA I want to talk to Victim 2. Usher White stood up he wanted to go in and the lawyer told him take a seat, you're not coming in, I'm the lawyer, you're not coming in. So he was there with my son for quite a while and then he says --

Q. Mr. Kellner, the point is you did get to speak to an ADA?

A. Yes.

Q. And the Modesty Group and Mr. Usher facilitated that, they put you in touch with ADA Laline, correct?

A. Correct, to Hanna and Hanna put me in touch to Chris Laline.

Q. And Hanna White explained to you that the DA's office had limited resources and they were interested in letting the victim and their families know what was involved so that they would only go forward forewarned and if they were serious about it?

A. If they're serious about it.

Q. So now you're in touch with the ADA, which was your goal the entire time, and the ADA spoke with your son, correct?

A. Correct. Then he calls me in.

Q. And then you spoke with the ADA?

A. He called us in, me, Usher, he called us in and he said I got good news and bad news. The good news it's only a misdemeanor.

Q. That was the good news or the bad news?

A. Good news. The bad news we're not taking the case. I said, why. He said it's only a misdemeanor, we're not taking the case, have a nice day, we're not taking the case.

Q. To this point you still didn't know exactly what had happened, what Mr. Lebovits had done to your son?

A. No, no.

Q. And ADA Laline spoke to your son about what had happened?

A. He knew because he told it's a misdemeanor, I didn't know what a misdemeanor is but he told me it's a misdemeanor, I know it's bad, that is the good news. The bad news is we're not taking the case, I'm very sorry.

Q. So it was good news in the sense that what had been done to your son was a lower level, but it was bad news in the sense that the DA's office wasn't going to pursue it, and was it explained to you why the DA's office wasn't going to pursue it?

A. I was told either by Litwin or by him that since he's 60 years of age, you know, a misdemeanor no jury will put him away and he's going to probably get a deal and

walk, that's all, it's a misdemeanor.
Q. You were explained that either by ADA Laline or Detective Litwin, you're not sure which?
A. Right.
Q. So the obstacle was that they didn't believe that there would be any jail time for Mr. Lebovits as a result?
A. There won't be no prosecution even.
Q. And the reason they didn't want to prosecute is that they didn't think they could get a meaningful penalty?
A. The age was the very big factor, that since he's 60 years of age, a misdemeanor --
Q. I thought you said he was 15, was he 15 or 16?
MR. MACGIOLLABHUI: Lebovits.
A. No Lebovits was 60 years of age.
Q. I'm sorry, you're talking about Mr. Lebovits, okay, because he was an older man?
A. It's only a misdemeanor, this guy is 60 years of age he's going to say nothing happened, we're not going to prosecute the case.
Q. So did you ever learn whether there were any witnesses to what happened?
A. There wasn't, there was only one person in the car which they took the age and that person was let off before, even though he lives much farther away. He went first to that person's house and then he was supposably was