# EXHIBIT 10

EXHIBIT
PLTF 19 2/23/22 (DS)
exhibitsticker.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM PART 15

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

BARUCH LEBOVITS,

Defendant.

AFFIRMATION

Kings County
Indictment Number
11393/2008

MISS GREGORY, an attorney admitted to practice in the State of New York and an Assistant District Attorney in the County of Kings, affirms the following to be true under the penalties of perjury:

1. I affirm the following statements based on personal knowledge gained as the trial prosecutor in the above-case and on information and belief based on the records and files of the Kings County District Attorney's Office.

The Defense Disclosure of the Kellner Extortion Allegations

2. On May 5, 2009, I and defense counsel in the above-case: Lawrence Goldman, Elizabeth Johnson, and Arthur Aidala, were present in Part 20 of the Kings County Supreme Court in front of Judge McKay. At the bench, defense counsel informed the Judge and myself of a development concerning this case. We all went into a court conference room and had a lengthy

discussion. The defense attorneys informed the judge and myself of their allegations against Samuel Kellner, the father of PK (the complaining witness in Kings County Indictment Number 2600/2008, another case in which the defendant was accused of sexually abusing a teenaged boy).

3. During this May 5, 2009 conference, defense counsel said that Kellner had approached the defendant's family and told them that he would have all of the criminal cases against the defendant dropped in exchange for $250,000. The defense attorneys also said that Kellner had approached the Satmar Rebbe's secretary and repeated the same offer. One of the defense attorneys noted that Kellner had stated that all of the victims were telling the truth, but that they needed the money. I made contemporaneous notes on the back of my dated Status Sheet (copies appended).

4. I then asked whether the defense was going to bring these allegations to law enforcement. Defense counsel responded that they had not yet decided how they were going to proceed, but that they were considering their options, including bringing the matter to the attention of the Kings County District Attorney's Office Rackets Division. Judge McKay then granted the defense a lengthy adjournment, to June 17, 2009, for further investigation into this matter.

5. A few days later, I heard from either Lawrence Goldman or Elizabeth Johnson, who informed me that Kellner had approached the defendant's son, Meir Lebovits, in person on May 6, 2009 and over the phone on May 7, 2009. Kellner allegedly told Meir that he could make the case go away. I made contemporaneous notes of this message (copy appended).

6. The case was on again in Part 20 in front of Judge Foley on June 17, 2009. The case was adjourned to July 21, 2009 for further investigation.

7. On July 21, 2009, the case was on in Part 20 in front of Judge Gary. Defense counsel informed me and the court that they had decided that, at that time, the defense were not going to go to law enforcement with the allegations against Kellner. On information and belief, the defense did not do so until after defendant's conviction in the present case.

<u>The Claims of Three of the Defendant's Sexual Abuse Victims</u>

8. In March of 2008, sixteen-year-old PK came to the Kings County District Attorney's Office regarding allegations of sexual abuse of PK by the defendant, which ultimately resulted in the defendant's being charged under Kings County Indictment Number 2600/2008, with Sexual Abuse in Third Degree and Endangering the Welfare of a Child.

9. On October 4, 2010, this Court granted the People's motion to dismiss Kings County Indictment Number 2600/2008,

regarding the defendant's crimes against PK. The dismissal was sought neither because PK had recanted nor because the People did not believe that PK had been sexually abused by the defendant. Rather, the People moved to dismiss this indictment in an exercise of discretion, because PK's father's apparent attempts to settle the case for money had compromised the People's ability to successfully prosecute the misdemeanor case in which his son was a victim.

10. In March of 2008, twenty-year-old MT came to the Kings County District Attorney's Office regarding allegations of sodomy and sexual abuse by the defendant which had occurred between the time that MT was twelve and sixteen years old. On multiple occasions in 2009, I met with MT and discussed the allegations of abuse committed against MT by the defendant. I found MT's claims of his sodomy and sexual abuse by the defendant to be credible.

11. On November 4, 2009, I met with MT in my office. I informed him that the case had been set down for trial on December 3, 2009. MT was cooperative and told me that he would be ready to testify at the trial. That was the last time I spoke to MT.

12. Toward the end November 2009, I was contacted by an attorney, John Lonuzzi. He informed me that he represented MT and that MT would no longer be cooperating with the prosecution

of the case against the defendant. Mr. Lonuzzi informed me that the pressure of the case was causing MT severe stress and that he was suffering from a variety of psychological issues. Mr. Lonuzzi added that if called to the stand, MT would plead his fifth amendment privilege against self-incrimination because parts of MT's grand jury testimony "might" have been embellished. I spoke with Mr. Lonuzzi and arranged multiple appointments to speak with him and MT in person; however, all of these appointments were canceled.

13. A Detective Investigator from my office served subpoenas at MT's home on December 2, 2009, December 20, 2009, January 6, 2010, and May 27, 2010, for MT to appear in court. MT did not comply with these subpoenas and never appeared in court. I was never able to speak with MT to confirm what Mr. Lonuzzi had told me about MT's reasons for becoming uncooperative after twenty-one months of full cooperation with the Kings County District Attorney's Office, including MT's detailed sworn testimony before the Grand Jury as to the defendant's abuse of MT.[1]

---

[1] Kings County Indictment Number 11393/08 had charged defendant with twenty-seven counts of Sodomy in the Second Degree, four counts of Sodomy in the Third Degree, and one count of Criminal Sexual Act in the Third Degree regarding MT.

14. During colloquy at the current trial on March 3, 2010, defense counsel, Arthur Aidala, represented to this Court that at some point previously, Mr. Lonuzzi had called Mr. Aidala to say that Mr. Lonuzzi had been retained by the family of a complainant [MT] because the family had found out that defendant "was willing to take a disposition in this case, and the mother and father of this complainant would prefer him not to be subjected to a trial, and therefore if [defendant was] really willing to take a disposition in this case, it's their position that he not go forward with the District Attorney's Office. [Mr. Aidala continued that Mr. Lonuzzi had said that he would] be in touch with the DA's Office and handle it with them" (T. 284-85).

15. I responded to Mr. Aidala's representations that "I had a conversation with that same attorney on the telephone, and that is not what he represented to me. Nothing about an offer and [about] the guy liking the case to go away if someone would plead guilty. In fact, he wasn't going to testify if called to the stand. He would plead the Fifth. That's what the attorney told me. And I made multiple attempts to meet with him and his client to no avail. I was not told [what defense counsel outlined in paragraph 14 above]" (T. 285).

16. In November of 2008, twenty-year-old YR came to the Kings County District Attorney's Office regarding allegations of

felony sexual abuse by the defendant, which had occurred when YR was sixteen years old. On multiple occasions in late 2009 and early 2010, I met with YR and discussed the allegations of sexual abuse committed against YR by the defendant. I found his claims of abuse to be credible. YR never told me either that the defendant had not sexually abused him or that he had been paid to make allegations against the defendant. YR testified against the defendant at trial in the above-case, and by its verdict, the jury found beyond a reasonable doubt that on multiple occasions, the defendant had sexually abused YR.

<u>The Claims of Two of Defense Witness Ashkenazi's Sexual Abuse Victims</u>

17. Before Detective Steve Litwin's trial testimony on March 5, 2010, Detective Litwin came to my office at the Kings County District Attorney's Office. In the course of Detective Litwin's trial preparation, I mentioned that defendant had put Beryl Ashkenazi on his witness list in the present case. Detective Litwin then informed me that sometime in the past, he had interviewed a young man, YE, regarding sexual abuse by Ashkenazi. Detective Litwin had determined that the case could not be prosecuted because the acts alleged were beyond the statute of limitations. Therefore, he did not bring these charges to the attention of the Kings County District Attorney's

Office, and until March 4, 2010, I was unaware of the allegations against Beryl Ashkenazi.

18. In the early morning of March 4, 2010, Detective Litwin went to the homes of two alleged sexual abuse victims of Ashkenazi. Detective Litwin separately interviewed twenty-five-year-old YE and twenty-two-year-old HD, about allegations of sexual abuse by Beryl Ashkenazi. YE informed Detective Litwin that he had been sexually abused by Ashkenazi when YE was thirteen and HD informed Detective Litwin that he had been sexually abused by Ashkenazi when HD was fifteen years old. Detective Litwin took contemporaneous notes of his interviews of YE and HD and gave me a copy of these notes during defendant's trial, before the defense case.

19. Detective Litwin never told me -- before, during or after the trial in the present case -- that either YE or HD had ever said that he was not molested by Beryl Ashkenazi. Indeed, after the above interviews which occurred during the trial in the present case, Detective Litwin gave me his contemporaneous

notes of interviews with YE and HD, which corroborated the information in paragraph 17 above.

Dated: Brooklyn, New York
July 8, 2011

Miss Gregory
Assistant District Attorney
(718) 250-2779

PART 20
STATUS SHEET

DATE: May 5, 2009

BUREAU: SEX CRIMES

ADA: Miss Gregory
PHONE: 3779

INDICTMENT NUMBERS: 2600/2008 + 11393/2008 superceded indictment
GREY ZONE 66TH Precinct

DEFENDANT: **BARUCH LEBOVITS**

DEFENSE ATTYS: Elizabeth Johnson + Arthur Aidala

CHARGES: **Sodomy 2°, Sodomy 3°, Criminal Sexual Act 3, Sexual Abuse 3°, EWC**

PLEA OFFER: **Sodomy 2° + 2⅓ - 7**

CRIMINAL HISTORY: First Arrest

---

**ON FOR:**

- ☐ **D/C to submit PPI to Court**
- ☐ **Consented to hearings: None, no statements and parties are known to each other.**
- ☐ **Bail Status**
  Bail is currently $100K/$100K on 11393/2008 $35K/35K on 2600/2008. **D is out.**
  Reasons for bail to remain the same
  (1) The defendant has now been indicted
  (2) There has been no change in circumstance.
- ☐ **No DNA Testing Required**

---

**ESSENTIAL FACTS:** Defendant = 57yr old male. c/w 1= 20yr old male, c/w 2=16yr old male
Defendant is a known Rabbi in the community c/w 3= 20yr old male

8/15/2000 – 9/30/2004: D would put his penis in CW 1's anus and mouth, and put his mouth on CW 1's penis. Incidents took place at the temple, at D's office and home, and in D's car.

3/23/2004 – 2/22/2005: D would put his mouth on CW 3's penis, D would touch CW 3's penis with his hand and CW 3 would touch D's penis with his hand
**[CHARGES CONTAINED IN SUPERSEDED INDICTMENT 11393/2008]**

2/12/2008, CW 2 received a car ride from the D, while D was driving he put his hand on CW 2's penis. CW 2 outcried to his parents the following day.
**[COUNTS 66 + 68 on Indictment 2600/2008]**

---

**ADDITIONAL NOTES FOR PART ADA:**

**FOOPS EXPIRE: 8/24/09 cw2 6/8/09 cws 1+3**

People's offer remains jail

NEXT DATE: 6/17/09 CHARGED TO: Confert

ON FOR: Further Investigate **Part ADA:** M. Gregory

DISPOSITION:

Xoops on 11393/2008

SK Approached family
$250K to drop case

---

last week SK Approached
Satmar's Rabbi's Secretary
offers to drop case for $
& 250K

Rabbi ~~Friedman~~
Friedman

All telling the truth
but SK needs $

Friday 5/7

– Laurence Goldman
Elizabeth Johnson
212.997.7499

↔ Meyer / Meir Lebovits – Δ's son — Penn 5/6 plane 5/7 last night
Kellner approached outside house
could make case go away

[redacted]