# EXHIBIT 11

EXHIBIT
PLTF 27 2/23/22 (DS)
exhibitsticker.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM PART 15

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

BARUCH LEBOVITS,

Defendant.

AFFIDAVIT

Kings County
Indictment Number
11393/2008

STEVEN LITWIN, a detective in the New York City Police Department assigned to the Brooklyn Special Victims Squad, deposes and states under the penalties of perjury that:

1. I make the following statements based upon personal knowledge and/or on information and belief, based on the records and files of the New York City Police Department.

## My Investigation Regarding PK

2. On March 5, 2008, I met with PK who told me that on February 12, 2008, he went on a school trip to Lakewood, New Jersey when he was sixteen years old. PK told me that he and a friend accepted a car ride from the defendant after having trouble getting home on a city bus. PK knew the defendant from his neighborhood. The defendant dropped PK's friend off first. PK said that then, when PK and the defendant were alone in the car, the defendant touched his hand to PK's penis. A day or two

later, PK told his mother and then his father. I found PK's claims to be extremely credible. At no point did PK ever tell me that his allegations of sexual abuse by the defendant were not true.

3. On the same day, March 5, 2008, I met with PK's father. I informed him that the crimes his son was alleging against the defendant were misdemeanors and that it was possible that the defendant might not get any jail time if he was convicted for such crimes. PK's father was disappointed. He told me that within their community, there were many more victims of sexual abuse committed by the defendant, but that many of the victims would not speak with the police about the abuse.

<u>My Investigation Regarding MT</u>

4. On March 6, 2008, PK's father brought then twenty-year-old MT to my office. I met with MT who told me that the defendant had sexually abused and then sodomized him from the time PK was twelve until he was sixteen years old. The first incident had occurred between late August and the middle of September of 2000, inside a synagogue in the ritual bath. During that incident, the defendant had touched his hand to MT's penis.

5. MT also told me that a short time later, in September of 2000, inside the defendant's car, the defendant had touched ______

his hand to and put his mouth on MT's penis. In November of 2000 after MT's Bar Mitzvah, the defendant drove him to a house or office in Borough Park where the defendant anally sodomized MT. From November 2000 through March of 2003, on multiple occasions, the defendant anally sodomized MT, put the defendant's mouth on MT's penis, and put the defendant's penis in MT's mouth.

6. MT said that the last incident occurred in early October of 2004, inside a synagogue in the ritual bath, where the defendant touched his hand to MT's penis and anally sodomized MT. I found all of MT's claims extremely credible.

7. As the investigation and case continued, I met with MT and his father to discuss the case. MT and his father were cooperative with the investigation.

8. Toward the end November 2009, I received a telephone message from an attorney, John Lonuzzi. On this message, Mr. Lonuzzi said that he now represented MT; that MT would no longer be cooperating with the prosecution against the defendant because MT was not in good health and felt very stressed over having to testify; and that I should have no further contact with MT.

9. Some months later and before defendant's trial in the present case, MT telephoned me and asked me why I had not called him. I told him that Mr. Lonuzzi had told me not to speak with

him. MT then told me that he had not retained this lawyer but that someone else had. MT asked to speak with me and arranged to meet me the following day. MT told me his family could not know that he had contacted me. His father did not want him to talk to me.

10. The following day, I met MT in a coffee shop in Park Slope, Brooklyn. He told me again that he had not retained the lawyer, Mr. Lonuzzi. MT said that someone else had retained Mr. Lonuzzi but that he did not know who had done so. MT said he had been pressured and that he was afraid to say what had happened. MT said that he had been told not to talk to me or to go to the District Attorney's Office.

<u>My Investigation Regarding YR</u>

11. On September 16, 2008, PK's father brought YR to my office. I met with YR who told me that the defendant had sexually abused him when YR was sixteen years old. The first incident occurred sometime between March of 2004 and May of 2004. In that incident, YR and a friend accepted a ride from the defendant. YR was in the front seat with the defendant when the defendant touched his hand to YR's penis.

12. YR told me that a few days after the first incident, again inside the defendant's car, the defendant touched his hand to YR's penis. In the following months, the defendant continued to touch YR's penis with the defendant's hand. He also began to

put his mouth on YR's penis. The defendant would ask YR to perform oral sex on the defendant, but YR would refuse. YR did touch the defendant's penis with his hand. The sexual abuse continued through approximately September of 2004. The defendant continued to have sexual contact with YR after YR turned seventeen until approximately July of 2006.

13. I found all of YR's claims to be extremely credible. YR never told me that his claims of the defendant's sexual abuse of YR were either untrue or exaggerated.

<u>My Investigation Regarding YE and HD</u>

14. In March of 2010, before my trial testimony in this case, A.D.A. Gregory told me that Beryl Ashkenazi was on the defense witness list. I then told her that I had had a previous interview with YE at my office regarding sexual abuse by Ashkenazi. I initially met with YE concerning his allegations about Beryl Ashkenazi, sometime after my September 2008 meeting with YR (<u>see</u> my appended contemporaneous notes of YE interview, with redactions of YE's birthdate, address, and telephone numbers). I found YE's claims to be extremely credible but was unable to conclude the investigation with an arrest because the statute of limitations had expired regarding Ashkenazi's crimes against YE.

15. After my trial preparation with A.D.A. Gregory, on March 4, 2010 at 1:00 a.m., I spoke with twenty-five-year-old YE

at his home. YE told me that when he was thirteen years old, Beryl Ashkenazi had touched his hand to YE's penis on two occasions. YE also told me that at least once, Beryl Ashkenazi had put his penis to YE's mouth. These incidents took place inside a school. I again found YE's claims of sexual abuse to be credible.

16. On March 4, 2010 at 2:00 a.m., I spoke with HD at his home. HD was then twenty-two years old. HD told me that when he was fifteen years old, on multiple occasions, Beryl Ashkenazi had touched Ashkenazi's knee to HD's groin and had touched Ashkenazi's hand to HD's penis. These incidents took place inside a school that HD attended and at which Beryl Ashkenazi worked. I found HD's claims to be extremely credible but was unable to conclude the investigation with an arrest because the statute of limitations had expired regarding Ashkenazi's crimes against HD.

17. Neither HD nor YE ever told me that their claims that Ashkenazi had sexually abused them were untrue. Indeed, HD told me that he had witnessed Ashkenazi touch YE's penis over his clothing, in the stair well of the school.

18. During my March 4, 2010 interviews of HD and YE, I took contemporaneous notes, but did not draft a DD-5 of these interviews because their cases were beyond the statute of limitations (<u>see</u> attached 2-pages of contemporaneous notes, with

redactions of HD and YE's birthdates, work and home addresses, and telephone numbers).

19. On March 5, 2010, the day after my March 4, 2010 interviews of HD and YE and during defendant's trial in the above-case, I turned over to A.D.A. Gregory copies of all of my notes regarding my interviews with HD and YE.

Dated: Brooklyn, New York
July 7, 2011

Steven Litwin
Detective
Brooklyn Special Victims Squad
New York City Police Department

LINDA BREEN
NOTARY PUBLIC, State of New York
No. 02BR4732111
Qualified in New York County
Commission Expires August 31, 20 14

Sworn to me this 7th day
Of July, 2011

FRIEND OF [redacted]

[redacted]

[redacted] [redacted]

TURNED 13 ON 10/22/97

STARTED IN EARLY 1998, APPROX MARCH

TURNED 18 ON 10/22/2002

5 YRS from 18th B.D. is 10/22/2007

PERP

· BERYL ASHKENAZI

2ND PERP

[redacted] TURNED 16 ON 10/22/2000

[redacted]

3/4/10 0100

[redacted]

2nd FLOOR OF YESHIVA
c/o 700 WYTHE AVE + WILLIAMSBURG ST WEST
BINYAN AUSWEECHER

2x – ASHKENAZI TOUCHED c/v's PENIS
1-2 x – ORAL SEX, PENIS TO MOUTH c/v

DURING EXTRA STUDY

c/v CONFRONTED BERYL AS TO WHY HIS UNCLE WOULDN'T LET YANKY BACK IN SCHOOL FOR THE SUMMER – "WHY DIDN'T YOUR UNCLE LET ME BACK IN SCHOOL, I DID EVERYTHING YOU WANTED ME TO DO?"

ABOUT 2-3 MOS AGO, YANKY SPOKE TO BERYL AT SYNAGOGUE AT 6 LEE AVE. TO ASK FOR HELP IN GETTING A JOB. BERYL ASKED IF HE WAS CLEAN. YANKY SAID THAT HE'S IN A PROGRAM AT C.I.H. BERYL ASKED YANKY IF HE THINKS THE STORY ABOUT ~~[illegible]~~ RABBI LEBOVITS AND [redacted] IS ~~[illegible]~~ TRUE AND IF HE THOUGHT THAT [redacted] WAS BEING HONEST.

3/4/10 0200

[redacted]

(ATTENDED 1 YEAR)

- WHEN [redacted] WAS 15, IN EARLY 2002, ATTENDED MUNKACS YESHIVA ON 14TH AVE & 47 ST. BERYL ASHKENAZI WAS A TEACHER THERE. BERYL SPOKE TO [redacted] ALONE IN THE PRINCIPAL'S OFFICE. HE SAID THAT HE WAS TRYING TO HELP HIM BECAUSE THE PRINCIPAL WAS TRYING TO THROW [redacted] OUT OF SCHOOL. BERYL GOT CLOSE TO [redacted] & TOUCHED HIS KNEE TO [redacted] GROIN WHILE PUTTING HIS FACE CLOSE TO [redacted] FACE. [redacted] KNOCKED BERYL'S KNEE AWAY. BERYL SAID THAT HE WAS TRYING TO HELP HIM.

- SEVERAL MORE OCCASIONS, AT LEAST 5. ONE AFTER PURIM, 2 BEFORE SUMMER, 2 x DURING CAMP. BERYL WOULD BRING [redacted] TO A ROOM ALONE. BERYL TOUCHED ~~[illegible]~~ HERSCHY'S PENIS WITH HIS HAND (OVER CLOTHES) 2-3 TIMES. THE OTHER TIMES WAS HIS KNEE.

[redacted] ALWAYS RESISTED, ~~[illegible]~~ VERBALLY, PHYSICALLY.

[redacted] SAW BERYL TOUCH [redacted] PENIS IN THE STAIRWELL, OVER CLOTHES. BERYL ASKED MOSHE, "WHY IS IT WET".