# EXHIBIT 54

[redacted]

**MEMORANDUM**

EXHIBIT
Plaintiff's 168 4/22/22 KK

To: Kenneth P. Thompson
Mark Feldman

From: Kevin O'Donnell

Date: March 3, 2014

Re.: People v. Samuel Kellner, Ind. 2538-2011

---

[redacted].

This memo is written in conjunction with the attached January 16, 2014 memo from ADAs Joseph Alexis and Nicholas Batsidis. The Alexis-Batsidis memo does not explicitly recommend a course of action. However, both ADAs recommended dismissal of the Kellner case last June. [redacted] It is shameful that former DA Hynes allowed ADA Vecchione to talk him out of dismissing this case. Equally reprehensible is Vecchione's decision to have Detective Steven Litwin referred to IAB. This memo will refrain from further commenting on the utterly disgraceful conduct exhibited by former ADA Vecchione.

[redacted]

The two core witnesses in the case against Samuel Kellner are [redacted] and Meyer Lebovits. For the reasons stated in the Alexis-Batsidis memo, [redacted] has absolutely no credibility as a witness. Not only were his statements wildly inconsistent, he has admitted to being a long-term drug and alcohol abuser with a psychiatric history. [redacted] stated that he is not sure who molested him and that it may have been Baruch Lebovits. This is just one of many absolutely ludicrous statements that demonstrate that [redacted] is not worthy of belief.

The level of meddling with [redacted] by or on behalf of the Lebovits family demonstrates the extent that they will go to sabotage the case against their father. It is clear to me, that since his arrest, the goal of the Lebovits family has been to do whatever possible (legal or otherwise) to exonerate Baruch Lebovits. Baruch Lebovits' son, Chaim Lebovits, has been described as having virtually unlimited wealth. With those vast resources, the Lebovits family has expended enormous amounts of money furthering their father's cause. Since Baruch Lebovits was convicted, the Lebovits family has redoubled their efforts.

For example, the Lebovits family arranged for the Baruch Lebovits' victim who testified at trial, [redacted] to be taken to Florida under the guise of making a documentary film related to sexual abuse victims. While in Florida, [redacted] was plied with drugs and alcohol and filmed answering questions about Samuel Kellner as well as his victimization at the hands of Baruch Lebovits. Throughout all the filming, [redacted] did not make any statements that were inconsistent with his prior statements or his trial testimony.

In my interview with Meyer Lebovits, he admitted that the Florida trip was planned and discussed together with the Lebovits family, their private investigator, and with defense counsel Dershowitz and Aidala present. The trip was financed by the Lebovits family.

The Lebovits defense team has also provided the KCDA with a series of sworn statements. These affidavits contain a variety of uncorroborated, seemingly baseless accusations. Some of those affidavits have made wildly unbelievable accusations against Det. Litwin. Before I turn to Meyer Lebovits, I note that NYPD Internal Affairs recently closed their investigation into Det. Litwin as unsubstantiated.

**<u>Additional background</u>:**

After Baruch Lebovits was convicted, his attorney, Arthur Aidala asked the KCDA Conviction Integrity Unit to review the case. Former Unit Chief, ADA John O'Mara, declined that request. Mr. Aidala then went to former Rackets Chief, ADA Michael Vecchione, and arranged a meeting.

After that meeting, which took place on April 27, 2010 in ADA Vecchione's office, the Rackets Bureau opened a case. Also on April 27, 2010, KCDA Detective Investigators interviewed Baruch Lebovits' son, Chaim Lebovits. At no time during either the meeting or the interview did anyone mention any specific actions by Kellner. During the interview, Chaim Lebovits claimed that the Lebovits family turned down the Taub-Kellner offer to settle the case. I view this claim as suspect in light of the later admission that the Lebovits family paid $30,000 to Wolf Wertzberger. This payment is discussed more below.

It wasn't until approximately one month later that anyone mentioned any specific actions by Kellner. On May 24, 2010, Meyer Lebovits first claimed that Kellner sent several individuals to Meyer in 2009 asking for money in exchange for dropping the case. Meyer said that Kellner sent Wolf Wertzberger to negotiate a deal but that negotiations never got to the payment stage. After negotiations with Wertzberger failed, Kellner **then** sent Taub.

[redacted]

[redacted]

**Simon Taub's extortion plot**

Taub pled guilty to his indictment over the People's objection so his guilt has been clearly established. Taub was never interviewed by law enforcement except on the day of his arrest. Taub never implicated Kellner in any criminal activity. Part of Taub's post-arrest statement was that Meyer Lebovits had molested his son as well as Kellner's son. Taub exculpates Kellner when he stated that he (Taub) solicited a number of unidentified individuals to speak to Meyer about these allegations and that he requested a financial settlement from Meyer. When asked about Kellner's involvement, Taub said that once Taub received the money from Meyer, Kellner was going to bring the money to the District Attorney's Office as proof of Meyer's guilt.

Chaim Lebovits attempted to implicate Kellner, included emailing Taub to say he wasn't going to meet "if he [Taub] can't promise that K [Kellner] will show up too." Despite the Lebovits family's specific attempts to implicate Kellner in the Taub plot, there is no proof that Kellner was acting with Taub in an attempt to extort money from Meyer Lebovits. On the contrary, two emails in June 2010 from Chaim Lebovits indicate that Kellner was not involved. The two emails state, "Guess he [Taub] doesn't have Kellner yet" and "Looks like he [Taub] is having problems to 'deliver' [Kellner]."

There is no evidence that Kellner engaged in any conversation or other activity that would link him to Taub's plot. Additionally, Taub's admission that he sent individuals to Meyer to settle sexual abuse allegations is a fact that may tend to exculpate Kellner with respect to the charges in the indictment and is a major point that can be exploited by Kellner's defense counsel at a trial on those charges.

**The Genesis of the Kellner case**

After the Lebovits family's attempt to implicate Kellner in Taub's extortion plot failed, they were able to have the KCDA refocus its attention on Kellner by bringing a series of affidavits to the KCDA. The timing of the two most relevant affidavits, from [redacted] and Moshe Friedman, is notable in that they were dated 8 days and 15 days after Taub alone was arrested.

As discussed above, [redacted] is in no way a credible witness. As such, I will not discuss his affidavit. One of the other affidavits is worth mentioning. In that affidavit (and in a subsequent in-person interview), a young man named [redacted] claimed that Det. Litwin asked him to falsely accuse Berly Ashkenazi (a defense witness at the Baruch Lebovits trial) of sexually abusing him. According to Det. Litwin, [redacted] said he was sexually abused by Berly Ashkenazi. [redacted] now claims that he was abused by another adult male and that Det. Litwin told him to falsely implicate Berly Ashkenazi. [redacted] made a strikingly similar baseless accusation against Det. Litwin. Needless to say, I do not believe [redacted] accusations against Det. Litwin.

**Moshe Friedman**

[redacted].

I view this testimony as suspect for two reasons. The first reason is based on Moshe Friedman's position in the Satmar Hasidic world. Friedman had the role of gabbai (personal assistant) to the late Rabbi Moshe Teitelbaum. Rabbi Teitelbaum was the world leader of Satmar Hasidim from 1980 until his death in 2006. In his role as gabbai, Friedman became a political power broker in New York. Additionally, Friedman is the owner of Der Yid, the largest weekly Yiddish language newspaper in the world with a reported world-wide weekly circulation of 75,000.

The second reason is that Friedman is Baruch Lebovits' first cousin. This fact, not disclosed by Friedman, was brought to the attention of the KCDA by Kellner's attorney as well as by media accounts of the Kellner case. The thought that one of the most prominent leaders in the Satmar community worldwide would be Sam Kellner's errand boy in a plot to extort his first cousin out of $250,000 is patently absurd.

[redacted]

Dealing with the above in seriatim, Meyer's testimony that Kellner demanded a specific amount of money is misleading. The implication is that Kellner demanded money but did not attach a dollar amount to that demand. Although clearly stated in the Alexis-Batsidis memo, it is worth repeating, Kellner never demanded money in the recorded conversation.

During Meyer's testimony (and during KCDA interviews), he stated that Kellner claimed that he "controls" all three cases and that he "controls" [redacted] and [redacted] There is absolutely no such language or any similar language used in any portion of the recorded conversation. There is repeated reference to the witnesses not testifying or not going forward with the case. However, such references are devoid of any language to suggest that any lack of cooperation is controlled or caused by Kellner.

Meyer's testimony regarding a fourth victim being brought as a federal case is also misleading. In the recorded conversation, Kellner specifically states that he is **not** going to federal court. Kellner stated that one rabbi suggested that Kellner take his son's own case to federal court because there is a higher conviction rate federally compared to state court. Kellner told Meyer that he didn't go for a federal case because he had already been bad-mouthed in the community and that he'd "get mine once more. There would be a stink about me all over town." It is abundantly clear from reading the transcript, no claim of going to federal court with any victim is ever expressed.

The only reference to Nuchem Rosenberg in the transcript is one line where Kellner states that he can get Nuchem to take Baruch Lebovits off of Nuchem's "satellite." Lebovits' side claims that this one line is proof of criminal conduct. I disagree.

There are multiple references throughout the transcript that Kellner wants to avoid publicity. The line about Nuchem Rosenberg was said in the context of discussing other cases in the Satmar community that have received media coverage. An alternate view of Kellner's line is that both he and Lebovits will benefit from less publicity. There is clearly no monetary reference in the transcript surrounding this one comment about Nuchem Rosenberg.

[redacted]

Overall, the transcript of the recorded conversation is ambiguous and open to multiple interpretations. It is clearly not the smoking gun that is was made out to be. In my experience, such an equivocal piece of evidence is marginally useful at trial.

An example of an ambiguity is the use of the words "sit down" which appear at least a dozen times throughout the transcript. I have reviewed portions of the transcript with Meyer Lebovits and he agrees that the English words "sit down" are an accurate translation of the Yiddish words spoken in the recorded conversation.

Meyer Lebovits claims that the words "sit down" refer to paying extortion money. The Kellner side claims the same words refer to Baruch Lebovits not going to a rabbinical court. Because both claims are plausible, finding an extortion plot from the words contained in the transcript is an extremely difficult task.

**<u>My interview of Meyer Lebovits</u>**

[redacted]g.

With respect to the first alleged coconspirator, Leizer Wolf Hager, Meyer Lebovits was very vague. In my interview, Meyer did not mention **any** of the conduct he

[redacted]. Meyer did not attribute any criminal conduct to either Hager or to Kellner through Hager. He simply stated that Kellner told Hager [redacted]

Meyer also did not allege any criminal conduct by another alleged coconspirator, Yidal Wolf, either independently or on Kellner's behalf.

[redacted].

**<u>Conclusion</u>**

[redacted]

[redacted]

[redacted]

[redacted]