# EXHIBIT 57

EXHIBIT
Plaintiff's 169 4/22/22 KK
exhibitsticker.com

DISTRICT ATTORNEY
KINGS COUNTY
350 JAY STREET
BROOKLYN, NY 11201-2908
(718) 250-2000
WWW.BROOKLYNDA.ORG

Kenneth P. Thompson
District Attorney

# MEMORANDUM

To: Kenneth P. Thompson
Mark Feldman

From: Kevin O'Donnell

Date: March 4, 2014

Re.: People v. Samuel Kellner, Ind. 2538-2011

---

I recommend that the case against Samuel Kellner be dismissed in the interests of justice. [redacted] This memo contains some of the reasons for my recommendation.

This memo is written in conjunction with the attached January 16, 2014 memo from ADAs Joseph Alexis and Nicholas Batsidis. The Alexis-Batsidis memo does not explicitly recommend a course of action. However, both ADAs recommended dismissal of the Kellner case last June. I[redacted]

My recommendation is based on my review of the Kellner and Simon Taub case files, conversations with counsel for Baruch Lebovits (including a meeting with Alan Dershowitz, Nathan Dershowitz, and Arthur Aidala), conversations with counsel for Samuel Kellner, conversations with ADAs Alexis, Batsidis, Miss Gregory, Anthea Bruffee, and Michelle Weber, a meeting with three Rabbis in Monroe, New York, and an interview of Meyer Lebovits.

The two core witnesses in the case against Samuel Kellner are [redacted] and Meyer Lebovits. For the reasons stated in the Alexis-Batsidis memo, [redacted] lacks all credibility as a witness. Not only were his statements wildly inconsistent, he admitted to being a long-term drug and alcohol abuser with a psychiatric history. In a June 26, 2013 interview, [redacted] stated that he was not sure who molested him and that it may have been Baruch Lebovits. This is just one of many

inherently unreliable statements he made that demonstrate that [redacted] is not worthy of belief.

The level of meddling with [redacted] perpetuated by or on behalf of the Lebovits family demonstrates the extent to which the Lebovits family was willing to go to sabotage the case against their father. It is apparent, that since Lebovits' arrest, the goal of the Lebovits family has been to do whatever possible (legal or otherwise) to exonerate Baruch Lebovits. Baruch Lebovits' son, Chaim Lebovits, has been described as having virtually unlimited wealth. With those vast resources, the Lebovits family has expended enormous amounts of money furthering their father's cause. Since Baruch Lebovits was convicted, the Lebovits family has redoubled their efforts.

For example, the Lebovits family arranged for the Baruch Lebovits' victim who testified at trial, [redacted] to be taken to Florida under the guise of making a documentary film related to sexual abuse victims. While in Florida, [redacted] was plied with drugs and alcohol and filmed answering questions about Samuel Kellner as well as his victimization at the hands of Baruch Lebovits. [redacted]

In my interview with Meyer Lebovits, he admitted that the Florida trip was planned and discussed together with the Lebovits family, their private investigator, and with defense counsel Dershowitz and Aidala present. The trip was financed by the Lebovits family.

The Lebovits defense team also provided the KCDA with a series of sworn affidavits. These affidavits contain a variety of uncorroborated and self-serving accusations. Some of those affidavits have made wholly incredible accusations against Det. Litwin.[1]

**Additional background:**

After Baruch Lebovits was convicted, his attorney, Arthur Aidala asked the KCDA Conviction Integrity Unit to review the case. Former Unit Chief, ADA John O'Mara, declined that request. Mr. Aidala then went to former Rackets Chief, ADA Michael Vecchione, and arranged a meeting. On April 27, 2010, Mr. Aidala met with ADA Vecchione and two KCDA detective investigators in ADA Vecchione's office.

After that meeting, the Rackets Bureau opened an investigation into the alleged attempted extortion plot by Simon Taub and Kellner. Also on April 27, 2010, KCDA Detective Investigators interviewed Baruch Lebovits' son, Chaim Lebovits. During the interview, Chaim Lebovits claimed that the Lebovits family turned down a purported offer made by Taub and Kellner to settle the case. This claim made by Chaim Lebovits is suspect in light of Meyer Lebovits' later admission that the Lebovits family paid $30,000 to Wolf Wertzberger.[2] Importantly, at no time during the meeting or interview did

---

[1] The NYPD Internal Affairs Bureau recently closed their investigation into Det. Litwin as unsubstantiated.
[2] This payment is discussed more below.

anyone, including Chaim Lebovits, mention any specific criminal acts committed by Kellner.

Approximately one month after the April 27, 2010 meeting, Kellner was accused of engaging in criminal activity. Specifically, on May 24, 2010, Meyer Lebovits first claimed that Kellner sent two individuals to Meyer in 2009 asking for money in exchange for dropping the case against Baruch Lebovits. Meyer further stated that Kellner sent Wolf Wertzberger to Meyer to negotiate a deal, but that negotiations never got to the payment stage. After negotiations with Wertzberger failed, Kellner then sent Taub to Meyer to negotiate a payment of money in exchange for dropping the case.

[redacted]

**Simon Taub's extortion plot**

Taub was indicted for Attempted Grand Larceny 2° by Extortion and pled guilty to his indictment. He was sentenced to a term of probation over the People's objection. Notably, Taub was never interviewed by law enforcement except on the day of his arrest. During that interview, Taub never implicated Kellner in any criminal activity. Part of Taub's post-arrest statement was that Meyer Lebovits had molested his son as well as Kellner's son. Taub further exculpated Kellner when he stated that he (Taub) solicited a number of unidentified individuals to speak to Meyer about these allegations and that he requested a financial settlement from Meyer. When asked about Kellner's involvement, Taub stated that once Taub received the money from Meyer, Taub and Kellner were going to bring the money to the District Attorney's Office as proof of Meyer's guilt. Taub did not explain what he meant by "proof of Meyer's guilt."

Chaim Lebovits attempted to implicate Kellner as part of Taub's extortion plot, by emailing Taub to say he wasn't going to meet "if he [Taub] can't promise that K [Kellner] will show up too." Despite the Lebovits family's specific attempts to implicate Kellner in the Taub plot, there is no proof that Kellner was acting with Taub in an attempt to extort money from Meyer Lebovits. On the contrary, two emails sent in June 2010 from Chaim Lebovits to a KCDA detective investigator indicate that Kellner was not involved. The two emails state, "Guess he [Taub] doesn't have Kellner yet" and "Looks like he [Taub] is having problems to 'deliver' [Kellner]."

Accordingly, there is not a scintilla of evidence which indicates that Kellner engaged in any conversation, meeting, or any other activity that would link him to Taub's

---

[3] In addition to Wolf Wertzberger and Simon Taub, Meyer testified that Kellner also sent Leizer Wolf Hager, Yakov Leizer Horowitz, and Yidal Wolf.

extortion plot. Additionally, Taub's admission that he sent individuals to Meyer to settle sexual abuse allegations is a fact that may tend to exculpate Kellner with respect to the charges in the indictment against Kellner.

**The Genesis of the Kellner case**

After the Lebovits family's attempt to implicate Kellner in Taub's extortion plot failed, they were able to have the KCDA refocus its attention on Kellner by providing a series of affidavits to the KCDA. The timing of the two most relevant affidavits, from [redacted] and Moshe Friedman, is notable in that they were dated eight days and fifteen days, respectively, after Taub was arrested. Moshe Friedman is discussed below.

As discussed above, [redacted] lacks credibility as a witness. Accordingly, his affidavit is not worth mentioning. One of the other affidavits, however, is noteworthy. In an affidavit made by a young man named [redacted], and in a subsequent in-person interview with ADA Batsidis, [redacted] claimed that Det. Litwin asked him to falsely accuse Berly Ashkenazi (a defense witness at the Baruch Lebovits trial) of sexually abusing him. According to Det. Litwin, [redacted] stated in an interview with him that he [redacted] was sexually abused by Berly Ashkenazi. When speaking to ADA Batsidis, [redacted] claimed that he was sexually abused by another adult male and that Det. Litwin told him to falsely implicate Berly Ashkenazi. [redacted] made a strikingly similar baseless accusation against Det. Litwin. Based upon all of the surrounding circumstances, [redacted] accusations against Det. Litwin lack credibility.

**Moshe Friedman**

[redacted]

His testimony is suspect for two reasons. The first reason is based upon Moshe Friedman's position in the Satmar Hasidic world. Friedman had the role of gabbai (personal assistant) to the late Rabbi Moshe Teitelbaum. Rabbi Teitelbaum was the world leader of Satmar Hasidim from 1980 until his death in 2006. In his role as gabbai, Friedman became a political power broker in New York. Additionally, Friedman is the owner of Der Yid, the largest weekly Yiddish language newspaper in the world with a reported world-wide weekly circulation of 75,000.

The second reason is that Friedman is Baruch Lebovits' first cousin. This fact, never disclosed by Friedman, was brought to the attention of the KCDA by Kellner's attorney as well as by media accounts of the Kellner case. It is highly unlikely that one of the most prominent leaders in the Satmar community worldwide would assist Sam Kellner in a plot to extort his first cousin out of $250,000.

**The recorded conversation between Meyer Lebovits and Samuel Kellner**

The KCDA hired a Yiddish translator who produced a 156-page transcript of an April 2009 recorded conversation between Meyer Lebovits and Samuel Kellner. [redacted]

[redacted]

[redacted]"

Dealing with the above in seriatim, [redacted] The implication is that Kellner demanded money, but did not attach a dollar amount to that demand. Although clearly stated in the Alexis-Batsidis memo, it is worth repeating that Kellner never demanded money in the recorded conversation.

[redacted] (and during KCDA interviews), he stated that Kellner claimed that he "controls" all three cases and that he "controls" Torenheim and Rubenstein. There is absolutely no such language or any similar language used in any portion of the recorded conversation. There are repeated references to the witnesses not testifying or not going forward with the case. However, such references are devoid of any language to suggest that any lack of cooperation was controlled or caused by Kellner.

Meyer's [redacted] regarding a fourth victim being brought as a federal case is also misleading. In the recorded conversation, Kellner specifically stated that he was **not** going to federal court. Kellner stated that one rabbi suggested that Kellner take his own son's case to federal court because there is a higher conviction rate in federal court compared to state court. Kellner told Meyer that he didn't go for a federal case because he had already been bad-mouthed in the community and that he'd "get mine once more. There would be a stink about me all over town." It is abundantly clear from reading the transcript that Kellner never stated that he was going to refer any claim of sexual abuse to the federal authorities.

The only reference made by Kellner about Nuchem Rosenberg in the transcript is in one line where Kellner stated that he could get Nuchem to take Baruch Lebovits off of

[4] Notably, KCDA had this transcript of the Kellner–Meyer recorded conversation [redacted]

Nuchem's "satellite." Lebovits' side claims that this one line is proof of criminal conduct. I disagree.

There are multiple references throughout the transcript that Kellner wanted to avoid publicity. The line about Nuchem Rosenberg was stated in the context of discussing other cases in the Satmar community that received media coverage. An alternate view of Kellner's line is that both he and Lebovits would benefit from less publicity. There is no monetary reference in the transcript surrounding this one comment about Nuchem Rosenberg.

[redacted] No such statement is contained in the recorded conversation.

Overall, the transcript of the recorded conversation is ambiguous and open to multiple interpretations.[5] [redacted]

**My interview of Meyer Lebovits**

[redacted]

With respect to the first alleged co-conspirator, Leizer Wolf Hager, Meyer Lebovits was very vague. [redacted] Meyer did not attribute any criminal conduct to either Hager or to Kellner through Hager. He simply stated that Kellner told Hager that he needed money.

With respect to the second alleged co-conspirator, Yakov Leizer Horowitz, Meyer was also vague. Meyer did not attribute any criminal conduct to either Horowitz or to Kellner through Horowitz. At this point in the interview with Meyer, he had yet to articulate any criminal activity committed by anyone. Out of a sense of fairness, I specifically asked Meyer to describe the connection between Horowitz and Kellner so that I could discern the crimes he was alleging Kellner engaged in. Meyer merely stated

---

[5] An example of an ambiguity is the use of the words "sit down" which appear at least a dozen times throughout the transcript. I have reviewed portions of the transcript with Meyer Lebovits and he agreed that the English words "sit down" are an accurate translation of the Yiddish words spoken in the recorded conversation. However, Meyer Lebovits claims that the words "sit down" refer to paying extortion money. The Kellner side claims that those same words mean that Baruch Lebovits did not go to a rabbinical court. Because both interpretations are plausible, finding an extortion plot from the words contained in the transcript is an extremely difficult task.

that Horowitz told him that Kellner "wants you should settle with him." [redacted]

Meyer also did not allege any criminal conduct by another alleged co-conspirator, Yidal Wolf, either independently or on Kellner's behalf.

I asked Meyer about the $30,000 payment to Wolf Wertzberger. [redacted] When I discussed this topic with Meyer last week, he could not recall who gave the money to Wertzberger, when, where, or how the money was delivered, or where the money came from. When I asked if payment was made in cash, Meyer answered "yes." However, he didn't know what denominations of bills were used or how the money was packaged. He seemed to have no recollection of this substantial payment yet he was very clear and repeated a few times that Wertzberger had not returned the $30,000.

**Conclusion**

[redacted]

Based upon developments since this case was indicted, the two core witnesses against Samuel Kellner, [redacted] and Meyer Lebovits, are now so compromised that they are unworthy of belief.

My recommendation for dismissal is based on my firm belief that there is no way for the People to sustain their trial burden of proving the defendant's guilt beyond a reasonable doubt. My opinion on the actual guilt or innocence of Mr. Kellner is not as clear.

Toward the end of their memo, ADAs Alexis and Batsidis wrote, "We strongly suspect that the Lebovits family and some working on their behalf have very unclean hands regarding this matter."

[redacted]