UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

SAMUEL KELLNER,

Plaintiff,

17 CV 1268 (NRM) (MMH)

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

---------------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**MURIEL GOODE-TRUFANT**
ACTING CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007
By: Brian Francolla
Hannah Faddis
*Senior Counsels*
Special Federal Litigation Division
(212) 356-3527/2486

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ........ iii

POINT I PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW ........ 1

POINT II CHARLES HYNES IS ENTITLED TO ABSOLUTE IMMUNITY OR, AT A MINIMUM, QUALIFIED IMMUNITY. ........ 5

POINT III ANY CLAIM FOR CONSPIRACY FAILS AS A MATTER OF LAW. ........ 6

POINT IV PLAINTIFF HAS FAILED TO DEMONSTRATE THE REQUISITE PERSONAL INVOLVEMENT OF CHARLES HYNES FOR ANY OF HIS CLAIMS. ........ 8

POINT V PLAINTIFF'S CLAIMS AGAINST THE CITY OF NEW YORK FAIL AS A MATTER OF LAW. ........ 8

**CONCLUSION** ........ 9

# TABLE OF AUTHORITIES

**Page(s)**

Anthony v. City of N.Y.,
339 F.3d 129 (2d Cir. 2003) ........................................................................................ 6

Mejia v. City of New York,
119 F. Supp. 2d 232 (E.D.N.Y. 2000) ........................................................................... 4

Taylor v. City of New York, 19 Civ. 6754 (KPF),
2022 U.S. Dist. LEXIS 43520 (S.D.N.Y. Mar. 11, 2022) ........................................... 8

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In opposition to defendants' motion for summary judgment, plaintiff has failed to come forward with sufficient evidence to establish any of the following: (1) that former District Attorney Hynes ("Hynes") initiated or continued his prosecution; (2) that there was a lack of probable cause for his prosecution; (3) that anyone – let alone Hynes – acted with malice; (4) that he was subjected to a conspiracy spearheaded by Hynes; (5) that Hynes was personally involved in any purported constitutional violation against him; and (6) that the City of New York is liable for any constitutional violation arising out of his prosecution. Instead, plaintiff's opposition is fueled by speculation, unsupported inferences and factual assertions based upon magazine and/or newspaper articles. For the reasons set forth herein, defendants' motion for summary judgment should be granted in full.

## POINT I

## PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW

Plaintiff cannot point to any admissible evidence to establish that Hynes initiated or continued his prosecution, that there was a lack of probable cause to prosecute him or that his prosecution was initiated or continued with malice. For these reasons, plaintiff's claim for malicious prosecution fails as a matter of law.

### A. Plaintiff Cannot Show That Charles Hynes Initiated Or Continued A Criminal Proceeding Against Plaintiff

Plaintiff addresses this prong of his malicious prosecution claim on pages 18 and 19 of his opposition. See Pl's Opp., pp. 18-19. Notably, however, this portion of plaintiff's opposition fails to even mention Hynes – a failure that is emblematic of the utter lack of evidence in the record to establish that he personally initiated or continued the prosecution of plaintiff. Id.

More generally, plaintiff argues that M.T.'s sworn affidavit was not only false, but known to be false from the outset of plaintiff's prosecution. Id. According to plaintiff, M.T.'s affidavit was known to be false in light of the PPI that was submitted on behalf of Baruch Lebovits in his unsuccessful attempt to obtain a non-jail disposition. Specifically, plaintiff argues that, "[s]ince supplying falsified evidence in substantial furtherance of a criminal action is sufficient to constitute the initiation of a criminal proceeding, the malicious prosecution claim was commenced in August 2010." Id. Even assuming for purposes of the instant briefing that M.T.'s affidavit was false, plaintiff does not even argue, let alone point to admissible evidence in support of any such argument, that Hynes knew that to be the case at any point including, relevant to the instant claim, when plaintiff's prosecution was commenced.

Putting aside the absence of any legal authority to establish that the contents of the PPI constituted a "confession" as plaintiff argues (id. at p. 18), there is zero evidence in the record that Hynes was even aware of the PPI, let alone the specific contents of it. The cited record establishes only that ADA Gregory obtained a copy of the PPI, that she discussed it with her supervisor (ADA Jaus) and that, after it was submitted, the offer to Lebovits did not change. Response to Plaintiff's 56.1 Statement, ¶¶ 157-160. Indeed, according to the cited record, plaintiff's counsel asked ADA Feinstein, "[i]sn't it the case the Mr. Hynes was not persuaded by the arguments set forth in this memorandum as to why Mr. Lebovits should receive a non-jail offer?" Id. at ¶¶ 159-160. In response, ADA Feinstein stated, "[t]he offer didn't change, I don't whether he was - - what his state of mind was at the time." Id. Missing from the evidentiary record cited, as well as the evidentiary record generally based upon the undersigned's review of same, is any admissible evidence that Hynes was made aware of the PPI or its contents. That is so despite

the fact that plaintiff deposed numerous witnesses who were in direct contact with Hynes during the relevant time period.

Because there is no evidence to establish that Hynes knew M.T.'s affidavit was false – since there is no evidence in the record he was ever made aware of the PPI – plaintiff's argument that Hynes initiated the criminal proceeding against him must fail. Accordingly, for this reason alone, plaintiff's malicious prosecution claim fails as a matter of law.

**B. Plaintiff Cannot Show There Was A Lack Of Probable Cause**

For similar reasons, plaintiff's argument that probable cause "was also wholly lacking" must fail. Pl's. Opp., p. 19. Again, plaintiff's position is that "the initiation of the prosecution by evidence known to be false suffices to rebut the presumption" of probable cause created by plaintiff's indictment. Id. The "known false evidence," according to plaintiff, was specifically that "M.T.'s affidavit was known to have been fabricated." Id. However, without admissible evidence to establish that Hynes knew any of the evidence put before the grand jury was false, including M.T.'s affidavit, this theory of liability cannot survive summary judgment.

As defendants noted in their moving papers, there was ample evidence to support probable cause beginning with statements of Rabbi Moshe Friedman, M.T. and Meyer Lebovits all of whom testified under oath implicating plaintiff. In opposition, plaintiff argues that "[t]he internal review of Plaintiff's prosecution described the various affidavits given to the KCDA in August 2010 as containing 'a variety of uncorroborated and self-serving accusations,' including 'wholly incredible accusations against Det. Litwin.'" Pl's. Opp., p. 20. Eye-witness testimony is often uncorroborated and in some instances, can be self-serving. Neither of these factors necessarily establish a lack of probable cause nor does plaintiff cite to any legal authority to the contrary. Read in its entirety, the dismissal memorandum does not establish that, in the opinion of its author, ADA O'Donnell, there was no probable cause to commence the prosecution of

plaintiff. To the contrary, ADA O'Donnell testified as part of this lawsuit, that he believed that plaintiff was factually guilty of some or all of the crimes with which he had been charged and that as of the time he wrote the dismissal memo on March 4, 2014, he did not believe the case could be proven beyond a reasonable doubt. Defs'. 56.1, ¶¶ 133-134. In other words, the dismissal memo, factoring in events subsequent to the commencement of plaintiff's prosecution, found that various aspects of the statements that established probable cause to prosecute were later called into question based on newly obtained evidence as the prosecution proceeded. Relevant to plaintiff's malicious prosecution claim, the existence or lack of probable cause is measured at the time of the commencement of the judicial proceeding, i.e., at the time of plaintiff's arraignment or indictment. Mejia v. City of New York, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000). Here, plaintiff cannot establish that probable cause was lacking at that time.

To the extent plaintiff's entire lawsuit is premised on the culpability of Hynes, he is not even mentioned in the dismissal memo. In that regard, to the extent ADA O'Donnell is critical of anyone's role in the prosecution of plaintiff, it was ADA Vechhione who is not a party to this case. Moreover, focusing on plaintiff's claim that the contents of the PPI rendered the entire basis to prosecute plaintiff as false from the onset of his prosecution, it is literally not mentioned at all in the dismissal memo, let alone as a factor for why the case could no longer be proven beyond a reasonable doubt or, relevant to plaintiff's malicious prosecution claim, never should have been brought in the first place.

Regarding the PPI, even if Hynes was aware of it, plaintiff's opposition fails to explain how the contents of same constituted a confession by Lebovits. Clearly, the admissions contained in the PPI were made in the context of Lebovits' unsuccessful attempt to obtain the best possible deal during a plea negotiation while he was being prosecuted. When that failed, Lebovits

declined to plead guilty and instead maintained his not guilty plea up through trial. If those prosecuting Lebovits were barred from using any of his admissions in the PPI against him during his own prosecution, it is legally and factually unclear why plaintiff would be permitted to rely on same in the prosecution of the instant civil matter to definitively establish that Lebovits confessed to what he was accused of having done.

Last, even assuming for the purposes of this motion that Hynes was aware of the contents of the PPI, and that same constituted a legal confession by Lebovits, plaintiff's opposition fails to explain how that would render the allegations against him non-criminal. In a general sense, plaintiff was prosecuted in response to evidence that he sought money in exchange for a promise to manipulate witness testimony in Lebovits' favor. Whether Lebovits was ultimately guilty, in whole or in part, would not render the allegations against plaintiff any less criminal. Accordingly, for all these reasons, plaintiff cannot establish a lack of probable cause.

**C. Plaintiff Cannot Establish Actual Malice**

Plaintiff's argument that there was actual malice on the part of Hynes is premised on the lack of probable cause generally as well as the falsification of evidence. Regarding the former, as noted, <u>supra</u>, plaintiff has failed to establish a lack of probable cause at the time his prosecution was commenced. Similarly, regarding the latter, there is no evidence that Hynes falsified evidence or was aware that anyone else did in connection with plaintiff's prosecution. For these reasons, plaintiff fails to establish actual malice.

## POINT II

## CHARLES HYNES IS ENTITLED TO ABSOLUTE IMMUNITY OR, AT A MINIMUM, QUALIFIED IMMUNITY

Plaintiff's entire argument for why Hynes is not entitled to absolute immunity is limited to two sentences. Pl's. Opp., p. 29. First, plaintiff argues that "Hynes is not entitled to

absolute immunity because Plaintiff's malicious prosecution claim is based on conduct that occurred during the investigatory (rather than judicial) phase of the criminal process. Id. Absent, however, is any argument, let alone admissible evidence, to establish that Hynes was involved in said "conduct," assuming it even occurred, or that he played any role whatsoever in any investigatory phase. Second, plaintiff argues that "Hynes was performing investigative functions normally performed by the police." Id. Again, other than simply asserting that conclusion, plaintiff's opposition is devoid of any admissible evidence to support it or even so much as an argument for what specifically Hynes did. Based on the evidentiary record, at most, Hynes performed the type of role in connection with plaintiff's prosecution that within this Circuit equates to absolute immunity – in accordance with the legal authority defendants relied on in their moving papers with regard to this issue.

Plaintiff further argues that Hynes would not be entitled to qualified immunity on the grounds that he initiated a prosecution he knew to be false. As noted supra, there is no evidentiary basis to conclude that Hynes initiated plaintiff's prosecution nor did so knowing it was based on fabricated evidence. To the contrary, to the extent that absolute prosecutorial immunity may not apply, Hynes would be entitled to qualified immunity since, at most, he may have reasonably relied on information provided by members of the KCDA. See, e.g., Anthony v. City of N.Y., 339 F.3d 129, 138 (2d Cir. 2003).

## POINT III

## ANY CLAIM FOR CONSPIRACY FAILS AS A MATTER OF LAW

Plaintiff's conspiracy claim fails because he has not presented evidentiary proof that Hynes acted with others to undermine the Lebovits conviction by prosecuting plaintiff for soliciting false testimony and attempted extortion without probable cause. In opposition, plaintiff fails to point to any admissible evidence that would establish a conspiracy under § 1983.

According to the evidentiary record, counsel for Lebovits, Arthur Aidala, met with ADA Vecchione on April 27, 2010, and then Hynes on May 5, 2010, and May 6, 2010, respectively. Pl's. Opp., p. 23. Regarding the April 27, 2010 meeting, Aidala provided evidence to ADA Vecchione, as well as Detective-Investigator Stephanie Green-Jones, that implicated plaintiff in criminality. See Pl's. Ex. 14. Later that same day, Aidala produced Chaim Lebovits for an interview about the alleged extortion attempt by plaintiff. Id. There is zero evidence in the record that anything untoward took place during the April 27, 2010 meeting.

Turning to Aidala's meetings with Hynes, there is nothing in the record to even suggest what the meetings were about or what was said therein. More generally, there is no evidence in the record to establish that Vecchione, or anyone, ever spoke with Hynes about opening any investigation into plaintiff. As plaintiff's opposition concedes, Vecchione did not recall any meetings with Hynes about plaintiff prior to June 2013. There is also no evidence in the record that Hynes' approval was required to open any investigation into plaintiff. To the extent Hynes, Vecchione and Aidala may have been friendly or maintained personal relationships amongst each other, that does not equate to a conspiracy.

Last, plaintiff's conspiracy theory falls apart because it is again premised on the unsupported contention that "Hynes was fully aware that M.T.'s supposed recantation was false, since he had been personally unwilling to offer Lebovits a non-jail disposition in 2009 when counsel submitted the PPI containing Lebovit's confession." Pl's. Opp., p. 26. The evidentiary record only establishes that Hynes was unwilling to offer Lebovits a non-jail disposition – a decision that could have been made for any number of reasons. The evidentiary record does not, however, establish the basis for that decision nor, crucially, has any witness testified to the fact

that Hynes was personally made aware of the PPI and its contents. For all of these reasons, plaintiff has failed to establish that Hynes was involved in a conspiracy to violate his constitutional rights.

## POINT IV

## PLAINTIFF HAS FAILED TO DEMONSTRATE THE REQUISITE PERSONAL INVOLVEMENT OF CHARLES HYNES FOR ANY OF HIS CLAIMS

Plaintiff argues that "[f]or purposes of showing personal involvement by Hynes in the deprivation of Plaintiff's constitutional rights, it is sufficient to show that he authorized the initial investigation into Plaintiff in May 2010, and the resumption of that investigation in August 2010, based on M.T.'s fabricated affidavit." Pl's. Opp., p. 26. That argument fails because plaintiff has not shown that Hynes authorized anything in connection with plaintiff. Unlike the authority plaintiff relies on to support his contention, Taylor v. City of New York, 19 Civ. 6754 (KPF), 2022 U.S. Dist. LEXIS 43520, *30-31 (S.D.N.Y. Mar. 11, 2022), there is absolutely no evidence in the record herein of any approval from Hynes regarding the prosecution of plaintiff. For all these reasons, plaintiff has failed to demonstrate that Hynes was personally involved in any of his claims.

## POINT V

## PLAINTIFF'S CLAIMS AGAINST THE CITY OF NEW YORK FAIL AS A MATTER OF LAW

Defendants largely rely on the arguments set forth in their original moving papers and note simply that plaintiff's opposition fails to articulate any factual basis for why defendant City would be liable for Hynes' conduct or even what the alleged conduct was. Plaintiff's opposition simply states that "[t]he conduct at issue of Hynes occurred during the investigative phase of the criminal process" without any further elaboration. Pl's. Opp., p. 30. This argument, unsupported by any admissible evidence, is plainly insufficient to create an issue of fact that

survives summary judgment. Accordingly, any claim against defendant City also fails as a matter of law.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motion, together with such costs, fees and other further relief as the Court deems just and proper.

Dated: New York, New York
October 31, 2024

**MURIEL GOODE-TRUFANT**
Acting CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-3527/2486

/s/
By: ___________________________
Brian Francolla
Hannah Faddis
*Senior Counsels*
Special Federal Litigation Division

cc: all counsel of record